UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| BARBARA FEINMAN and GARRETT M. GRAFF, | ) ) ) ) |  |
| Plaintiffs, | ) ) |  |
| v. | ) ) | Civil Action No. 09-2047 (ESH) |
| FEDERAL BUREAU OF INVESTIGATION, *et al.*, | ) ) ) ) |  |
| Defendants. | ) ) |  |

## MEMORANDUM OPINION

Plaintiffs Barbara Feinman and Garrett M. Graff have filed a class action against the Federal Bureau of Investigation ("FBI"), the Executive Office for United States Attorneys ("EOUSA"), and the U.S. Department of Justice ("DOJ"), alleging that defendants have violated the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706. This matter is before the Court on defendants' partial motion to dismiss plaintiff Feinman for lack of standing and Count I in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(1). For the reasons discussed herein, the Court will grant defendants' motion.

### BACKGROUND

The sole question before the Court is whether Feinman has standing to sue under FOIA and the APA for claims arising from a FOIA request made by a non-party, Catherine Beirne, who allegedly assigned all rights and interest in that request to Feinman. Accordingly, the Court's discussion of the factual background will be limited to the allegations relating to Feinman's claims.

1

As alleged in the complaint, Feinman is "a representative of the news media as that term is defined by the FOIA statute." (*See* Compl. ¶ 3.) The complaint does not explain Beirne's relationship to Feinman, but on April 13, 2009, Beirne faxed a FOIA request to the FBI, seeking records regarding a suspected terrorist, Qari Ismail. (*Id.* ¶ 17.) On April 17, the FBI wrote to Beirne and returned her request "on the basis that the FBI required the submission of proof of death or a signed privacy waiver from Qari Ismail before it would begin processing the request for records." (*Id.* ¶ 18.) The FBI's letter explained that absent proof of Ismail's death or a signed privacy waiver, any responsive records about him would be categorically exempt from disclosure "as unwarranted invasions of privacy" under FOIA Exemption 6 and 7(C). (*Id.*) The letter was accompanied by a Privacy Waiver and Certification of Identity form, but the letter "failed to accord Beirne any rights to an administrative appeal of the FBI's refusal to process the FOIA request." (*Id.*)

Several months later on August 27, 2009, Feinman submitted two letters to the FBI. (Compl. ¶ 19.) One was signed by Beirne and stated that she had assigned "her rights and interests in the FOIA request to Feinman." (*Id.*) The second letter was signed by Feinman and stated that Feinman had accepted the assignment. (*Id.*)

Plaintiffs' complaint was filed on October 30, 2009. Count I asserts that Feinman has a legal right under FOIA "to obtain the information she seeks," that the FBI has unlawfully denied that right, and that Feinman has "constructively exhausted any or all necessary administrative remedies." (Compl. ¶¶ 20-21.) Count VI, as it relates to Feinman, asserts that the FBI violated the APA through policies that allow FOIA personnel (1) to categorically "refuse to process searches for records pertaining to foreign nationals absent proof of death or a signed privacy waiver" and (2) to refuse to process any such request without informing the requesters that they

have the right to administratively appeal the denial. (*See id.* ¶¶ 45-46.)[1] Feinman seeks, *inter alia*, an order requiring defendants to disclose the requested records, a declaration that defendants' alleged policies violate their statutory and regulatory obligations, and an order requiring the FBI to discontinue the alleged policies.

Defendants moved to dismiss on December 16, 2009, arguing that the Court lacks subject matter jurisdiction over Feinman's claims. Specifically, defendants contend that Feinman lacks standing to seek disclosure of documents under FOIA because her name "did not appear on the original request that is the subject of Count I," and because she "cannot assert standing based on someone else's FOIA request." (Mot. to Dismiss at 2.) Similarly, defendants argue that Feinman lacks standing to raise Count VI's claim under the APA because she has not suffered an injury-in-fact as a result of the alleged policies. (*Id.* at 2-3.)

## ANALYSIS

## I.   LEGAL STANDARDS

### A.   Motion to Dismiss for Lack of Jurisdiction

On a motion to dismiss pursuant to Rule 12(b)(1), plaintiff bears the burden of establishing by a preponderance of the evidence that the court has subject matter jurisdiction. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The Court must accept all factual allegations in the complaint as true and give plaintiff the benefit of all reasonable inferences from the facts alleged. *See Jerome Stevens Pharm., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253-54 (D.C. Cir. 2005). A court may dismiss for lack of subject matter jurisdiction only if "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Richardson v. United States*, 193 F.3d 545, 549 (D.C. Cir. 1999)

---

[1] Counts II, III, IV, and V are not at issue because they are based on FOIA requests submitted by plaintiff Graff.

(quoting *Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1086 (D.C. Cir. 1998)).  Moreover, where a court's subject matter jurisdiction is called into question, the court may consider matters outside the pleadings to ensure it has power over the case.  *Teva Pharm., USA, Inc. v. U.S. Food & Drug Admin.*, 182 F.3d 1003, 1008 (D.C. Cir. 1999).

### B.   Standing

"Article III of the United States Constitution limits the judicial power to deciding 'Cases and Controversies.'"  *In re Navy Chaplaincy,* 534 F.3d 756, 759 (D.C. Cir. 2008) (quoting U.S. Const. art. III, § 2).  "[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III."  *Lujan*, 504 U.S. at 560.  Standing requires, *inter alia*, that a plaintiff demonstrate that she has suffered an "injury in fact," *i.e.*, the invasion of a legally protected interest that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."  *Id.* (internal quotation marks omitted).

"The Supreme Court has recognized that 'Congress may enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute.'"  *Zivotofsky ex rel. Ari Z. v. Sec'y of State*, 444 F.3d 614, 617 (D.C. Cir. 2006) (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 n.3 (1973)).  This Court's subject matter jurisdiction thus "extends only so far as Congress provides by statute."  *Commodity Futures Trading Comm'n v. Nahas*, 738 F.2d 487, 492 (D.C. Cir. 1984).  "When a federal court reaches beyond its statutory grant of subject-matter jurisdiction, its judgment is void."  *Id.*  "A party must therefore affirmatively allege in his pleadings the facts showing the existence of jurisdiction, and the [C]ourt must scrupulously observe the precise jurisdictional limits prescribed by Congress."  *Id.* at 492 n.9.

## II.     FEINMAN LACKS STANDING

### A.     Count I

Defendants argue that Feinman may not sue under FOIA as the assignee of someone else's rights, because it is well established that standing under FOIA is limited to the person who made the initial request. Feinman counters that neither FOIA nor case law precludes the assignment of rights, and courts have observed in other contexts that standing to raise a claim can be established by way of an assignment of rights. This appears to be a question of first impression. Ultimately, the Court concludes that the case law and sound policy support defendants' position.

FOIA provides that upon any request for records that complies with certain requirements, a public agency "shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3). When an agency determines that it will not comply with the request, it must "immediately notify *the person making such request* of such determination and the reasons therefor, and of the right of such person to appeal to the head of the agency any adverse determination . . . ." *Id.* § 552(a)(6)(A)(i) (emphasis added). Thus, the statute "'creates a private cause of action for the benefit of persons who have requested certain records from a public agency and whose request has been denied. . . . [I]t confers a right on "any person" to receive those records, subject to published regulations regarding time, place, fees, and procedure.'" *Halperin v. Cent. Intelligence Agency*, 629 F.2d 144, 153 (D.C. Cir. 1980) (quoting *United States v. Richardson*, 418 U.S. 166, 204 (1974) (Stewart, J., dissenting)). The denial of this right to request "specific information" constitutes an injury-in-fact for standing purposes, "because [the requester] did not get what the statute entitled him to receive." *Zivotofsky*, 444 F.3d at 617-18.

Although "the identity of the requester" is generally "immaterial" to "the exercise of the

rights provided by the Act," "the nature of an entity *suing* under the FOIA is not without relevance . . . ." *Military Audit Project v. Casey*, 656 F.2d 724, 730 n.11 (D.C. Cir. 1981) (emphasis added). For example, courts have held that a plaintiff whose name does not appear on a FOIA request lacks standing to challenge its denial, because she has not made a formal request within the meaning of the statute and therefore "has not administratively asserted a right to receive [the documents] in the first place." *McDonnell v. United States*, 4 F.3d 1227, 1236-37 (3rd Cir. 1993); *accord MAXXAM, Inc. v. F.D.I.C.*, No. 98-CV-989, 1999 WL 33912624, at *2 (D.D.C. Jan. 29, 1999) (dismissing for lack of standing because attorney "made the FOIA request in its own name" and plaintiff's name did not appear on request, and noting that "plaintiff's attorney, but not plaintiff, [was] the real party-in-interest" under Federal Rule of Civil Procedure 17); *The Haskell Co. v. Dep't of Justice*, No. 05-CV-1110, 2006 WL 627156, at *2 (D.D.C. Mar. 13, 2006) (dismissing case for lack of standing because FOIA request was "submitted solely by" plaintiff's attorney and plaintiff was "not the real party in interest"). This Court has also repeatedly observed that even if a plaintiff is mentioned in the original request, she would still lack standing if the request was not clearly made "on [her] behalf" or otherwise failed to state her interest in the request. *See, e.g.*, *Three Forks Ranch Corp. v. Bureau of Land Mgmt.*, 358 F. Supp. 2d 1, 3 (D.D.C. 2005) (holding that corporation lacked standing to bring FOIA claims where underlying request was made by corporation's attorney, but it was "not clear" that request was made "on behalf of" corporation); *SAE Productions, Inc. v. F.B.I.*, 589 F. Supp. 2d 76, 80 (D.D.C. 2008) (finding that corporation lacked standing where original request was made by its corporation's president, who "did not adequately indicate that the FOIA Requests at issue here were made on the behalf of Plaintiff"); *see also Haskell*, 2006 WL 627156, at *2 ("Nowhere in its correspondence with [the agency] did [the attorney who made

6

the request] identify [the plaintiff] as an interested party or co-requester."); *cf. Brown v. EPA*, 384 F. Supp. 2d 271, 276-77 (D.D.C. 2005) (holding that plaintiff had standing to challenge denial of attorney's FOIA request that was expressly made on plaintiff's behalf).

Here, there is no allegation that Beirne's original request also named Feinman, whether as a co-requester, an interested party, or in some other capacity. Instead, Beirne appears to have made the original request solely in her own name. Only later did Feinman assert that she had a stake in the request as an assignee of Beirne's rights and interests in it.

Feinman argues that FOIA and its legislative history are "devoid of anything approaching clear, unambiguous language prohibiting an assignment" (Opp'n to Mot. to Dismiss at 11; *see also id.* at 6), and that in general, assignees can have standing to bring an assigned claim. *See, e.g.*, *Vt. Agency of Natural Res. v. United States*, 529 U.S. 765, 773 (2000) (observing that False Claims Act "can reasonably be regarded as effecting a partial of the Government's damages claim" to *qui tam* relator, whose own standing to bring suit "is to be found in the doctrine that the assignee of a claim has standing to assert the injury in fact suffered by the assignor"). This may be true, but it does not answer the question of whether FOIA in particular should be interpreted so as to *permit* assignment. *Cf. id.* at 774-78 (observing that "the long tradition of *qui tam* actions in England and the American colonies" was "particularly relevant" to interpreting the meaning of Article III's case-or-controversy requirement). If anything, the cases discussed above suggest that FOIA should not be interpreted so as to let plaintiffs "free-ride" on a requester's administrative exhaustion if the plaintiff did not participate in the underlying request.

Feinman responds that the above cases do not address assignments, and that the assignability of a FOIA claim is in fact directly supported by *Sinito v. Dep't of Justice*, 176 F.3d 512 (D.C. Cir. 1999). There, the D.C. Circuit held that a cause of action seeking the disclosure

of records under FOIA can survive the death of the original requestor. *See id.* at 513. However, *Sinito* is distinguishable. Unlike Beirne, the plaintiff in *Sinito* had also made the underlying FOIA request, and the D.C. Circuit's reasoning emphasized the unique considerations that arise when the original requester has *already* commenced litigation. "An original requestor *who goes to court* to compel disclosure by the agency has a stake in the legal action which transcends that of 'any person' who might seek the FOIA document. He has invested time, and in all likelihood money, in the action." *Sinito*, 176 F.3d at 515 (emphasis added). By contrast, Beirne did not invest any time, money, or other effort into pursuing this litigation. At most, according to the complaint, she sent one letter to the FBI and signed another letter that Feinman subsequently submitted to the agency. Beirne never acquired a stake in her FOIA claim that might counsel against letting her investment of litigation resources go to waste.

*Sinito* also rejected the argument that "anyone [must] be allowed to step into the deceased plaintiff's shoes," because "federal courts have institutional interests of their own in regulating the substitution of qualified parties even if a cause of action survives the death of the original plaintiff." 176 F.3d at 515; *see also id.* ("[W]e are dealing here not with a vast pool of potential FOIA applicants, any of whom might seek to take Thomas Sinito's place in the litigation."). This interest in "institutional regularity" is served by Federal Rule of Civil Procedure 25(a), which *expressly permits* a court to order substitution of the "proper parties" upon a litigant's death. *Id.* at 515-16; *see* Fed. R. Civ. P. 25(a)(1). In certain situations, there may be rights in a FOIA claim that are particular to a specific requester-plaintiff and which would survive her death, such as privacy or reputational interests in the disclosed information or the right to recover attorney's fees under the statute. *See id.* at 516-17. *Sinito* concluded that the only "proper party" under Rule 25 would be the decedent's "legal representative" or "successor," because this would

ensure the protection of the decedent's estate's rights in the claim. *See id.* at 517.[2]  In the case at bar, however, not only is Rule 25 irrelevant because Beirne did not initiate this litigation, but there is no allegation that she was incapable of protecting her rights by suing on her own behalf, or that the relationship between Beirne and Feinman is such that Feinman would protect Beirne's interests if their interests diverge. *Cf. McDonnell*, 4 F.3d at 1238 n.6 (noting that a single "passing reference" to the plaintiff in the FOIA correspondence underlying the lawsuit "does not sufficiently identify him with the person making the request to confer on him standing").

In short, unlike previous cases where the plaintiff claims to act *on behalf of* the original requester, Feinman purports to act in her own right, as Beirne has apparently divested herself of all "rights and interests" in her FOIA request. Neither the Court nor the parties have located any cases on point, but strong policy concerns counsel against permitting assignments.

First, although the identity of a FOIA requester is typically irrelevant to the request, there are important exceptions to that rule. Feinman concedes that a requester's identity "is relevant when determining applicable fees to be assessed." (Opp'n at 9 n.5.) For example, FOIA permits agencies to charge fees for document search, duplication, and review when the records are requested for commercial use, but agencies may only collect duplication fees if the request is made by a "representative of the news media." *See* 5 U.S.C. § 552(a)(4)(A)(ii)(I) & (II); *Hall v. C.I.A.*, 437 F.3d 94, 97 (D.C. Cir. 2006). To permit the assignment of pre-litigation FOIA rights could undermine this statutory distinction between categories of requesters by allowing

---

[2] In *Sinito*, the original requester's son had sought to be substituted as a plaintiff. The Court of Appeals observed that he "could not have joined his father's original lawsuit," because the decedent "did not bring a lawsuit under FOIA to acquit a right *that was also violated as to his son*. In addition, the FOIA requires each requestor to exhaust administrative remedies, and [the son] unquestionably did not do so." *Id.* at 516 (emphasis added; citation omitted). Instead, the Court remanded for consideration of whether the son was his father's legal representative. *See id.* at 517.

requesters who need not pay certain fees to "share" their status, via assignment, with potential plaintiffs who would otherwise be required to pay those fees. In addition, assignments would complicate FOIA administrators' adherence to the principle that disclosure exemptions based on privilege protections should not be invoked against "first-party" requesters who are the very persons protected by the privilege. *See Sinito*, 176 F.3d at 516-17; *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 771 (1989). If a first-party requester assigned her claim to a third party before the agency has made its disclosure determination, FOIA personnel would risk litigation if they subsequently determined that privacy or similar exemptions should be invoked against the third-party assignee.

Second, pre-litigation assignments would multiply opportunities for mistake and mischief, particularly since FOIA requests need not be made with the assistance of counsel. For example, an individual who informs an agency that she is the assignee of a requester's FOIA rights may be incorrect for a number of reasons. For instance, an individual – or even a non-existent entity, *cf. Military Audit Project*, 656 F.2d at 730 n.11 – could seek to thwart an adversary's search for information by claiming falsely to have been assigned a previous requester's FOIA rights. If FOIA administrators took such claims at face value, the earlier requester could find herself improperly excluded from the FOIA process, perhaps without even knowing it. Conversely, it would be unreasonable to expect overburdened FOIA administrators to verify the validity of an assignment by determining whether it complies with local law and reflects the original requester's actual intent.[3] *Cf. Three Forks Ranch,* 358 F. Supp. 2d at 3 ("It is

---

[3] It would also seem improper for administrators or courts to presume an assignment's validity, because courts already refuse to presume a commonality of rights and interests even where the plaintiff is the client of the attorney who made the original request. *See, e.g.*, *Three Forks Ranch*, 358 F. Supp. 2d at 3; *Haskell*, 2006 WL 627156, at *2; *Unigard Ins. Co. v. Dep't of Treasury*, 997 F. Supp. 1339, 1342 (S.D. Cal. 1997) (holding that plaintiff lacked standing to

unreasonable to expect overburdened FOIA administrators to interpret whether a request is being made by the individual writing the request letter, by someone else mentioned in the letter, or both.").

The Court concludes that the agency's burden to verify the validity of an assignment in each instance is greater than the minimal burden on any given assignee to make her own FOIA request. Just as *Sinito* sought to promote "institutional regularity" by placing restrictions on who could step into a deceased FOIA plaintiff's shoes, 176 F.3d at 515, this Court concludes that institutional regularity at the administrative level weighs against permitting pre-litigation assignments of FOIA rights where, as here, there is no indication (1) that the requester is unable to pursue her own litigation or (2) that the original requester shares the same interests and purposes as the plaintiff-assignee. As a result, the Court concludes that Feinman lacks standing to assert a claim under FOIA.

### B.     Count VI

Feinman's claim under the APA presumes that the FBI's conduct with respect to its FOIA obligations and policies has injured Feinman in some way. However, Feinman lacks standing to assert a claim under FOIA. Because the complaint does not allege that Feinman made any other FOIA request or suffered some other injury, she cannot claim any injury-in-fact. *Cf. Zivotofsky*, 444 F.3d at 617. Accordingly, she lacks standing to assert an APA claim.

### CONCLUSION

For the foregoing reasons, defendants' partial motion to dismiss is granted. Feinman will be dismissed as a plaintiff for lack of standing, and Count I will be dismissed with prejudice. A

---

bring FOIA suit where its lawyer had made original request but only the name of the attorney and his law firm appeared on the request, and where his request never stated "that he represents [the plaintiff], or any other party, in making the request").

separate order accompanies this Memorandum Opinion.

/s/
ELLEN SEGAL HUVELLE
United States District Judge

Date:  January 26, 2010