UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| BARBARA FEINMAN and <br> GARRETT M. GRAFF, <br><br> Plaintiffs, <br><br> v. <br><br> FEDERAL BUREAU OF <br> INVESTIGATION, *et al.*, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | Civil Action No. 09-2047 (ESH) |

## MEMORANDUM OPINION

Plaintiff Garrett M. Graff has filed a class action complaint against the Federal Bureau of Investigation ("FBI"), the Executive Office for United States Attorneys ("EOUSA"), and the U.S. Department of Justice ("DOJ"), alleging that defendants have violated the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706.[1] This matter is before the Court on plaintiff's motion for partial summary judgment on Count Six and defendants' motion to dismiss for lack of jurisdiction or, in the alternative, for summary judgment on Count Six. For the reasons discussed herein, the Court will grant defendants' motion to dismiss for lack of jurisdiction and deny plaintiff's motion.

## BACKGROUND

As alleged in the complaint, Graff currently serves as the editor for *The Washingtonian Magazine* and is a "representative of the news media," as that term is defined by 5 U.S.C. § 552(a)(4)(A)(ii) for purposes of determining administrative fees. (Compl. ¶ 4.) His claims arise

---

[1] The Court previously dismissed plaintiff Barbara Feinman and her claims for lack of standing. *See Feinman v. F.B.I.*, 680 F. Supp. 2d 169, 176 (D.D.C. 2010), *mot. to certify for interlocutory appeal denied*, No. 09-CV-2047, 2010 WL 962188 (D.D.C. Mar 15, 2010).

1

from two requests for information that he submitted under FOIA. One request, which he made to the EOUSA, sought information regarding "the investigation, capture, and prosecution" of former Panamanian general Manual Noriega. (Pl.'s Mot. for Partial Summ. J. ("Pl.'s Mot."), Ex. 1 ("Noriega Request") at 1.) The other request, which he made to the FBI, sought information "regarding the FBI's investigation into and role in the 1987 rendition of Royal Jordanian Flight 402 hijacker and Amal Organization militiaman Fawaz Younis." (*Id.*, Ex. 6 ("Younis Request") at 1.)

I. THE FOIA REQUESTS

    A. The Noriega Request

By letter dated January 23, 2009, Graff made the following request to the EOUSA:

> I am requesting copies of any documents or communications, including but not limited to logs, reports, messages, wires, cables, teletypes, and external or internal memorandums about the investigation and/or capture of General Noriega, as well as his later prosecution, trial, and appeals. Specifically, I'm requesting any and all materials relating to the involvement of Robert S. "Bob" Mueller III, then an official with the U.S. Department of Justice in Washington, DC, in the Noriega investigation, capture, prosecution, trial, and appeals. This request should include the period from June 1989 to June 1993, inclusive.
>
> As a member of the news media, and considering that this request is made in the public interest, I am hereby requesting a waiver of all associated fees. Disclosure of the requested information to me is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in my commercial interest.
>
> If you deny any part of this request, please cite each specific reason that you think justifies your refusal to release the information and notify me of appeal procedures available to me under the law.

(Noriega Request at 1.)

On January 30, 2009, the EOUSA responded to Graff:

> You have requested records concerning a third party . . . . Records pertaining to a third party generally cannot be released absent express authorization and consent of the third party, proof that the subject of your request is deceased, or a clear demonstration that the public interest in disclosure outweighs the personal privacy

> interest and that significant public benefit would result from the disclosure of the requested records. Since you have not furnished a release, death certificate, or public justification for release, the release of records concerning a third party would result in an unwarranted invasion of privacy of personal privacy and would be in violation of the Privacy Act, 5 U.S.C. § 552a. These records are also generally exempt from disclosure pursuant to subsections (b)(6) and (b)(7)(C) of the Freedom of Information Act, 5 U.S.C. § 552. . . .
>
> Should you obtain the written authorization and consent of the third party for release of the records to you, please submit a new request for the documents accompanied by the written authorization. A form is enclosed to assist you in providing us the authorization and consent of the subject of your request. . . .

(*See* Pl.'s Mot., Ex. 2 at 1; *see also id.* at 3 (enclosed Certification of Identity form.) The letter also explained that Graff could appeal the denial to the DOJ's Office of Information and Privacy ("OIP"). (*Id.* at 2.)

On February 24, 2009, Graff wrote a letter to OIP appealing the denial. (*See* Pl.'s Mot., Ex. 3.) In addition to restating the above-quoted paragraphs from his original request, Graff asserted that because Noriega is "a prisoner of war currently in the custody of the United States, [his] permission to access files regarding his case should not be a hindrance to the disclosure of information to such a compelling public interest." (*Id.* at 1.) Graff further stated that he intends "to use this information to contribute significantly to public understanding of the operations or activities of the government with regard to Mr. Noriega's case," and that Noriega "is not privy to the personal privacy rights afforded through the Freedom of Information Act because he is not a U.S. citizen." (*Id.*)

By letter dated September 8, 2009,[2] OIP affirmed the EOUSA's decision, stating that

> EOUSA properly withheld the information in its entirety because it is protected from disclosure under the Freedom of Information Act pursuant to:
>
> 5 U.S.C. § 552(b)(6), which concerns material the release of which would

---
[2] Previously, on March 6, 2009, OIP wrote to Graff in order to acknowledge receipt of his appeal and to explain that OIP was facing "a substantial backlog of pending appeals" but would notify Graff of its decision as soon as possible. (Pl.'s Mot., Ex. 4.)

3

constitute a clearly unwarranted invasion of the personal privacy of third parties; and

5 U.S.C. § 552(b)(7)(C), which concerns records or information compiled for law enforcement purposes the release of which could reasonably be expected to constitute an unwarranted invasion of the personal privacy of third parties.

(Pl.'s Mot., Ex. 5 at 1.) The letter gave no other grounds for affirming the denial of Graff's request. (*See id.*)

### B. The Younis Request

By letter dated April 8, 2009, Graff made the following request to the FBI:

I am requesting copies of any documents or communications, including but not limited to logs, reports, messages, teletypes, wires, cables, and external or internal memorandums about capture and forced extradition of Younis on September 13, 1987.

This request should include the period from March 1, 1986 to October 4, 1989, inclusive. This request includes but is not limited to rendition preparations, apprehension and transit, as well as prosecution preparations for trial in United States District Court. This request should include the role of the Federal Bureau of Investigation, the Central Intelligence Agency, and the Hostage Rescue Team in apprehending Younis overseas and bringing him back to the United States to stand trial.

As a member of the news media, and considering that this request is made in the public interest, I am hereby requesting a waiver of all associated fees. Disclosure of the requested information to me is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in my commercial interest.

If you deny any part of this request, please cite each specific reason that you think justifies your refusal to release the information and notify me of appeal procedures available to me under the law.

(Pl.'s Mot., Ex. 6 ("Younis Request") at 1-2.)

The FBI responded to Graff in an April 10, 2009 letter:

We are unable to response to your Freedom of Information/Privacy Acts (FOIPA) request for records maintained by the FBI concerning **Fawaz Younis.**

Before we are able to proceed with responding to your request for records pertaining to another individual(s), we require that you submit either proof of

> death or a privacy waiver from the subject (s) of your request. . . . Without proof of death or a privacy waiver, the disclosure of third-party information contained in law enforcement records, should they exist, is considered both a clearly unwarranted invasion of privacy pursuant to Exemption (b)(6), 5 U.S.C. § 552(b)(6), and an unwarranted invasion of personal privacy, pursuant to Exemption (b)(7)(C), 5 U.S.C. § 552(b)(7)(C).
>
> Enclosed is a Privacy Waiver and Certification of Identity form. . . . The subject of your request should complete this form and then sign it or prepare a document containing the required descriptive data and have it notarized. The original privacy waiver; notarized authorization with the descriptive information and a legible, original signature; or proof of death must be provided to the FBI before an accurate search of our records can be conducted.
>
> This response should not be considered an indication of whether or not records responsive to your request exist in FBI files.

(*See* Pl.'s Mot., Ex. 7 at 1; *see also id.* at 2 (Privacy Waiver and Certification of Identity form.)[3] Unlike the EOUSA letter denying Graff's Noriega request, the FBI's denial of his Younis request did not inform him whether or how he could appeal the denial. (*See generally id.*)

On April 17, 2009, Graff wrote a letter to OIP appealing the denial. (*See* Pl.'s Mot., Ex. 8.) In addition to restating the above-quoted paragraphs from his original request, Graff asserted that because Younis was deported to Lebanon after being convicted in the United States and serving half of his 30-year prison sentence, "Younis's permission to access files regarding his case should not be a hindrance to the disclosure of information to such a compelling public interest." (*Id.* at 1.) As with his Noriega appeal, Graff further stated that he intends "to use this information to contribute significantly to public understanding of the operations or activities of the government with regard to Mr. Younis's case," and that Younis "is not privy to the personal privacy rights afforded through the Freedom of Information Act because he is not a U.S. citizen." (*Id.*) The FBI asserts that it has no record of receiving this administrative appeal. (Defs.' Mot. to Dismiss or, in the Alternative, for Summ. J. & Opp'n to Pl.'s Mot. ("Defs.' Mot."), Ex. 3

---

[3] The letter also enclosed a copy of "the FBI File Fact Sheet," a one-page document explaining, as a general matter, the contents of an FBI "file." (*See* Pl.'s Mot., Ex. 7 at 3.)

("Gilbert Decl.") ¶ 2.) This appears to be due to the fact that, according to defendants, the Younis request was administratively closed upon the issuance of the initial April 10 denial, "as a result of an administrative error . . . ." (*Id.*, Ex. 2 ("Argall Decl.") ¶ 6 & Ex. C at 1.)

## II. THE INSTANT LITIGATION

Graff filed suit on October 30, 2009. Counts Two through Five of the complaint allege that defendants' denials of Graff's requests violate FOIA,[4] while Count Six – the subject of the instant motions – alleges that the EOUSA and FBI have violated the APA. According to Count Six, defendants are required to "first process the request and, if responsive records are identified, then may seek to withhold records under the appropriate FOIA Exemptions." (Compl. ¶ 43.) It alleges that defendants have "implemented an internal policy permitting FOIA personnel to refuse to process searches for records pertaining to foreign nationals absent proof of death or a signed privacy waiver" (*id.* ¶ 45), notwithstanding the OIP director's public statements "that FOIA does not permit a categorical requirement that privacy waivers be submitted for foreign nationals in order to process a request for records." (*Id.* ¶ 44.) Count Six further asserts that (1) neither FOIA nor defendants' own regulations and policies authorize such a policy, or, (2) in the alternative, even if defendants' regulations authorize such policies, "these regulations constitute an unreasonable interpretation of the statutory obligations imposed by the FOIA" and do not merit the judicial deference accorded by *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). (*Id.* ¶¶ 42, 47.) Thus, Count Six alleges, defendants have violated the APA because their categorical refusals to process Graff's requests are arbitrary, capricious, abuses of discretion, and in violation of FOIA or internal regulations. (*Id.* ¶ 49.) In

---

[4] Count One was dismissed in its entirety because it pertained only to plaintiff Barbara Feinman, who was dismissed for lack of standing. *See supra* note 1. Counts Three and Four, which are not presently at issue, allege that the DOJ National Security and Criminal Divisions also unlawfully denied Graff's Noriega-related requests. (*See* Compl. ¶¶ 29-35.)

addition, Count Six alleges that FOIA and defendants' regulations require that FOIA requesters be notified of their right to administratively appeal an adverse determination (such as a decision to withhold a requested record), but that the FBI does not provide this notification. (*Id.* ¶¶ 41, 46.) Graff seeks, *inter alia*, a declaration that it is "unlawful [to] implement[] . . . a policy that requires FOIA requestors seeking responsive records pertaining to a foreign national to first provide proof of death or a signed privacy waiver from the particular foreign national before processing of that request would commence," as well as an order enjoining defendants from giving effect to such a policy. (*Id.* at 13 ¶¶ (3)-(4).)

In a letter dated February 19, 2010, the FBI advised Graff that it had erroneously closed his Younis request in April 2009 after issuing the initial denial; that the matter was reopened upon discovery of the error; that the FBI was currently "searching the indices to its Central Records System for the information [Graff] requested"; and that it would inform him of the results "as soon as possible." (Argall Decl., Ex. C at 1.) Around this time, the FBI also determined that Younis is "a public figure of current notoriety" and that it would provide Graff with "public source information even in the absence of a public interest, privacy waiver, or proof of death." (Defs.' Statement of Material Facts as to Which There is No Genuine Dispute ("Defs.' SMF") ¶ 14; *see also* Pl.'s Response to Defs.' SMF ¶ 14 (not disputing defendants' asserted facts).) On February 26, the FBI wrote to inform Graff that it was granting his request for a fee waiver, because he had asserted (1) that "the disclosure of the requested information will contribute to the understanding of the general public, . . . and that [he] has the ability and intention to disseminate the information to the public," and (2) that "the disclosure is likely to contribute 'significantly' to public understanding of government operations or activities[.]" (Argall Decl., Ex. D at 1.)

On March 8, 2010, Graff moved for partial summary judgment on Count Six, arguing that defendants' actions violate the APA, and that his APA claim cannot be rendered moot by defendants' agreement "to now waive their respective requirements for signed privacy waivers or proofs of death and begin processing the FOIA requests at issue in this litigation." (Mem. of P. & A. in Supp. of Pl.'s Mot. ("Pl.'s Mem.") at 9.) On March 30, defendants cross-moved for partial summary judgment or, in the alternative, for dismissal of Count Six under Federal Rule of Civil Procedure 12(b)(1), on the ground that FOIA provides an adequate remedy for defendants' alleged practices and therefore precludes judicial review under the APA and deprives the Court of jurisdiction over Count Six. (*See* Mem. in Supp. of Defs.' Mot. ("Def.'s Mem.") at 2.)

## ANALYSIS

**THE COURT LACKS JURISDICTION OVER COUNT SIX.**

Defendants argue that Count Six's APA claim should be dismissed because the APA only subjects agency action to judicial review if "there is no other adequate remedy in a court," 5 U.S.C. § 704, and because FOIA already "provides for relief similar to that sought by Graff through his APA claim . . . ." (Defs.' Mem. at 14.) Graff counters that APA review is not precluded, because "FOIA does not provide an alternative form of relief that is of the 'same genre' as the APA relief" that he seeks. (Pl.'s Opp'n to Def.'s Mot. ("Pl.'s Opp'n") at 6 (quoting *Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009).) The Court agrees with defendants.[5]

"[I]n determining whether an adequate remedy exists, [the D.C. Circuit] has focused on whether a statute provides an independent cause of action or an alternative review procedure."

---

[5] Graff concedes that his "challenge to the FBI's failure to notify requesters of their right to an administrative appeal has been rendered moot in light of the stipulations in the Argall Declaration attesting to the FBI's modified policy." (Pl.'s Opp'n at 8; *see* Argall Decl. ¶ 11.) The Court's analysis therefore only addresses Graff's contention that defendants' alleged policies of refusing to search for responsive documents about third parties violate the APA.

*El Rio Santa Cruz Neighborhood Health Center, Inc. v. U.S. Dep't of Health & Human Servs.* ("*El Rio*"), 396 F.3d 1265, 1270 (D.C. Cir. 2005). "[W]here a statute affords an opportunity for *de novo* district-court review [of an administrative denial], the [C]ourt [of Appeals] has held that APA review was precluded because 'Congress did not intend to permit a litigant challenging an administrative denial . . . to utilize simultaneously both [the review provision] and the APA.'" *Id.* (quoting *Envtl. Def. Fund v. Reilly*, 909 F.2d 1497, 1501 (D.C. Cir. 1990)). Thus, "the alternative remedy need not provide relief identical to relief under the APA, so long as it offers relief of the 'same genre.'" *Garcia*, 563 F.3d at 522 (quoting *El Rio*, 396 F.3d at 1272). "In evaluating the availability and adequacy of alternative remedies, however, the court must give the APA 'a hospitable interpretation such that only upon a showing of clear and convincing evidence of a contrary legislative intent should the courts restrict access to judicial review.'" *Id.* (quoting *El Rio*, 396 F.3d at 1270)).

This Court and others have uniformly declined jurisdiction over APA claims that sought remedies made available by FOIA. *See, e.g.*, *Kenney v. U.S. Dep't of Justice*, 603 F. Supp. 2d 184, 190 (D.D.C. 2009) (finding that FOIA precluded APA claim that defendant improperly withheld records that were responsive to plaintiff's FOIA request); *People for the American Way Found. v. Nat'l Park Serv.*, 503 F. Supp. 2d 284, 308-09 (D.D.C. 2007) (same); *Edmonds Inst. v. U.S. Dep't of the Interior*, 383 F. Supp. 2d 105, 111-12 (D.D.C. 2005) (finding that FOIA precluded APA claim that agency "failed to respond to [the plaintiff's] FOIA requests within the twenty working dates required by statute"); *see also, e.g.*, *Walsh v. U.S. Dep't of Veterans Affairs*, 400 F.3d 535, 537-38 (7th Cir. 2005) (finding that FOIA precluded APA claim that sought relief for agency's late production of records); *Columbia Riverkeeper v. Fed. Energy Regulatory Comm'n*, 650 F. Supp. 2d 1121, 1125-26 (D. Or. 2009) (dismissing FOIA plaintiff's

claims under APA seeking adequate search and release of responsive documents).

Graff attempts to distinguish these cases by arguing that "the circumstances in which the courts have found relief under the APA to be precluded by FOIA involved challenges to an agency's substantive determinations, not a challenge to a uniform agency procedure." (Pl.'s Opp'n at 4.) In other words, Graff insists that his APA claim "is not challenging the Defendants' substantive determinations that any responsive records are categorically exempt under subsection (b)(6) and (b)(7)(C) as unwarranted invasions of privacy." (*Id.* at 5.) Rather, it purportedly challenges defendants' "procedural policies that authorize making that substantive determination one way or the other prior to processing the request." (*Id.*)

This distinction is unpersuasive. Because FOIA "imposes no limits on courts' equitable powers in enforcing its terms," *Payne Enters., Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988), the Court finds that if Graff were to prevail on Counts Two and Five, the statutory and equitable remedies available to him under FOIA would provide the same relief from the alleged policies as would the APA. *See, e.g.*, *Essential Info. Inc., v. U.S. Info. Agency*, No. 96-CV-1194, 1996 WL 968472, at *3-*4 (D.D.C. Nov. 27, 1996) (dismissing APA claim that agency arbitrarily and capriciously interpreted statute to justify withholdings under FOIA Exemption 3, where agency had 20-year practice of relying upon that interpretation, because "FOIA provides an express cause of action and an equitable remedy for plaintiff's claims").

FOIA provides that "each agency, upon *any* request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, *shall* make the records promptly available to any person," subject to certain exceptions, 5 U.S.C. § 552(a)(3)(A) (emphases added), and nine enumerated exemptions. *See id.* § 552(b)(1)-(9). The statute also confers upon this Court

"jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." *Id.* § 552(a)(4)(B). Applying these principles to the instant case, FOIA requires that defendants "shall" make available the records that Graff has requested, unless they are subject to any exceptions or exemptions. If the Court were to conclude that the EOUSA and FBI have improperly denied the Noriega and Younis requests, then Graff would prevail on Counts Two and Five of the complaint.[6]

Moreover, within the context of Counts Two and Five, Graff can also challenge the validity of defendants' policies of categorically refusing to search for documents, without resort to the APA. The Court's consideration of Counts Two and Five will necessarily require consideration of whether defendants acted consistently with FOIA in refusing to search for responsive records or to state whether any such records existed. *See Nation Magazine*, 71 F.3d at 887-88, 895 (rejecting agency's categorical refusal under Exemption 7(C) to confirm or deny

---

[6] "[T]he mere fact that records pertain to an individual's activities does not necessarily qualify them for exemption [on privacy grounds]. Such records may still be cloaked with the public interest if the information would shed light on agency action." *Nation Magazine, Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 894-95 (D.C. Cir. 1995). Graff's requests seek, *inter alia*, "all materials relating to the involvement of Robert S. 'Bob' Mueller III . . . in the Noriega investigation, capture, prosecution, trial, and appeals" (Noriega Request at 1), and information about "the role of" the FBI and other government entities "in apprehending Younis overseas and bringing him back to the United States to stand trial." (Younis Request at 1.) Thus, Graff does not necessarily seek documents about Noriega or Younis personally or their conduct, but rather about the *government's* conduct towards them.

Graff's request is therefore unlike the typical FOIA request that raises privacy concerns because it seeks disclosure of "information *identifying* private citizens mentioned in law enforcement records," *Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 661 (D.C. Cir. 2003) (emphasis added), such as "the identities of and information provided" by cooperating witnesses or "the names and identifying information of . . . third parties of investigative interest to the FBI or other law enforcement agencies . . . ." *Fischer v. U.S. Dep't of Justice*, 596 F. Supp. 2d 34, 46-47 & n.17 (D.D.C. 2009). Nor does Graff's request about the government's conduct necessarily seek "the names and identifying information" of agency investigators and support personnel. *Id.*

existence of investigatory records pertaining to H. Ross Perot's offers to assist Customs Service in preventing importation of illegal drugs, and requiring "a more particularized approach" in responding to the plaintiff's FOIA request); *see also id.* at 896 ("[W]e do not read [*SafeCard Services, Inc., v. SEC*, 926 F.2d 1197 (D.C. Cir. 1991),] as permitting an agency to exempt from disclosure *all* of the material in an investigatory record solely on the grounds that the record includes some information which identifies a private citizen or provides that person's name and address. Because such a blanket exemption would reach far more broadly than is necessary to protect the identities of individuals mentioned in law enforcement files, it would be contrary to FOIA's overall purpose of disclosure, and thus is not a permissible reading of Exemption 7(C)."). If the Court were to find that defendants' *policies* of categorical refusal served to "'hinder the release of non-exempt documents'" by unjustifiably denying requests that "'fully complied with the administrative scheme,'" the evidence could also support an exercise of the Court's power to declare those policies unlawful. *Payne*, 837 F.2d at 495 (quoting *Long v. IRS*, 693 F.2d 907 (9th Cir. 1982)); *see also id.* at 495-96 (remanding to district court for entry of declaratory judgment and consideration of injunctive relief regarding agency's violation of FOIA through practice of refusing requests for bid abstracts on contracts, because under particular facts presented, agency's unlawful conduct was "sufficiently outrageous" to warrant equitable relief).[7]

Accordingly, the relief available under FOIA is of the "same genre" as the relief available under the APA. *Garcia*, 563 F.3d at 522. Because there is no "uncertainty [about] the

---

[7] FOIA provides an additional statutory mechanism for sending a message to the agency that it is acting in violation of law. Where "the circumstances surrounding [an improper] withholding raise questions whether agency personnel acted arbitrarily or capriciously with respect to the withholding," a court may issue a written finding to that effect, which would require "the Special Counsel [to] promptly initiate a proceeding to determine whether disciplinary action is warranted against the officer or employee who was primarily responsible for the withholding. . . . The administrative authority shall take the corrective action that the Special Counsel recommends." 5 U.S.C. § 552(a)(4)(F)(i).

availability of a remedy" under FOIA for the wrongs that Graff has alleged, APA review is precluded. *El Rio*, 396 F.3d at 1272-73; *see also id.* at 1274-75. Count Six must be dismissed.[8]

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss Count Six is granted and plaintiff's motion for partial summary judgment is denied. Count Six will be dismissed for lack of subject matter jurisdiction. A separate order accompanies this Memorandum Opinion.

/s/
ELLEN SEGAL HUVELLE
United States District Judge

Date: May 26, 2010

---

[8] Because Count Six is dismissed on the grounds that the availability of relief under FOIA precludes APA review, the Court does not reach defendants' arguments that their policies are reasonable or that Graff's challenges to those policies are moot.

13