UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |   |
|---|---|---|
| BARBARA FEINMAN and GARRETT M. GRAFF, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 09-2047 (ESH) |
| FEDERAL BUREAU OF INVESTIGATION, *et al.*, | ) ) ) ) | |
| Defendants. | ) ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Garrett M. Graff has filed a class action complaint against the Federal Bureau of Investigation ("FBI"), the Executive Office for United States Attorneys ("EOUSA"), and the U.S. Department of Justice ("DOJ"), alleging that defendants have violated the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. This matter is before the Court on plaintiff's motion to certify the class, as well as his motion for leave to amend the complaint. For the reasons discussed herein, the Court will deny the class certification motion but will grant the motion for leave to amend.

## BACKGROUND

Since this is the third motion that has been before the Court, it is not necessary to repeat the facts and procedural history which are set forth in *Feinman v. F.B.I.*, 680 F. Supp. 2d 169 (D.D.C. 2010) (dismissing plaintiff Barbara Feinman and Count One for lack of standing), *mot. to certify for interlocutory appeal denied*, No. 09-CV-2047, 2010 WL 962188 (D.D.C. Mar 15, 2010), and *Feinman v. F.B.I.* ("*Feinman II*"), No. 09-CV-2047, 2010 WL 2102326 (D.D.C. May 26, 2010) (dismissing Count Six for lack of subject matter jurisdiction). Instead, the Court will

1

limit its discussion to those facts that relate to the two pending motions.

**I.     THE FOIA REQUESTS**

Plaintiff Graff currently serves as the editor for *The Washingtonian Magazine* and is a "representative of the news media," as that term is defined by 5 U.S.C. § 552(a)(4)(A)(ii), for purposes of determining administrative fees. (Compl. ¶ 4.) In January 2009, he submitted a FOIA request to the EOUSA for information regarding "the investigation, capture, and prosecution" of former Panamanian general Manual Noriega. (*Id.* ¶ 22; *see also* Pl.'s Mot. for Partial Summ. J. ("Pl.'s SJ Mot."), Ex. 1 at 1.) The request stated that disclosure of this information would be in the public interest "because it is likely to contribute significantly to public understanding of the operations or activities of the government . . . ." (Pl.'s SJ Mot., Ex. 1 at 1.) The EOUSA denied Graff's request on the grounds that he had provided neither (1) "express authorization and consent of the third party," *i.e.*, Noriega, (2) "proof that the subject of [the] request is deceased," nor (3) "a clear demonstration that the public interest in disclosure outweighs the personal privacy interest and that significant public benefit would result from the disclosure of the requested records." (*Id.*, Ex. 2 at 1.) The denial letter stated that release under those circumstances "would result in an unwarranted invasion of personal privacy," and that the records were "generally exempt from disclosure" pursuant to FOIA Exemptions 6 and 7(C). (*Id.*)

In April 2009, Graff submitted a separate FOIA request to the FBI for information regarding "the FBI's investigation into and role in the 1987 rendition of Royal Jordanian Flight 402 hijacker and Amal Organization militiaman" Fawaz Younis. (Compl. ¶ 36; *see also* Pl.'s SJ Mot., Ex. 6 at 1.) This request also stated that disclosure of this information would be in the public interest "because it is likely to contribute significantly to public understanding of the

operations or activities of the government . . . ." (Pl.'s SJ Mot., Ex. 6 at 1.) The FBI denied Graff's request solely on the grounds that he had not provided either proof of Younis's death or a privacy waiver, without addressing the question of public interest justification. (*See* Pl.'s SJ Mot., Ex. 7 at 1.) The FBI's denial stated that it could not process his request until he provided either proof of death or of consent, and that release without such proof would be considered an unwarranted invasion of privacy under Exemptions 6 and 7(C). (*Id.*)

The original complaint, which was filed on October 30, 2009, alleges that defendants denied his requests pursuant to unlawful EOUSA and FBI policies that "requir[e] the submission of privacy waivers or proof of death before agreeing to process requests seeking records pertaining to foreign nationals." (Compl. ¶¶ 6-7; *see id.* ¶¶ 26, 37.)[1] He also alleges that these claims are representative of a class of similarly situated FOIA requesters (*see id.* ¶ 10), and that common questions of law and fact relating to each class member include "whether the defendants' policy to refuse to process FOIA requests for records without submission of proof of death or a privacy waiver is unlawful . . . ." (*Id.* ¶ 12.) He seeks equitable relief, including a declaration that the EOUSA and FBI policies are unlawful, an order enjoining defendants from

---

[1] Based on the previously filed cross-motions for partial summary judgment, it is undisputed that from the time of Graff's Noriega request through the present, it has been the EOUSA's practice, upon receiving a request for information about a third party, not to search for responsive records unless the requester provides proof of death, a privacy waiver, or sufficient public interest justification. (*See* Defs.' Cross-Mot. for Partial Summ. J. ("Defs.' SJ Mot."), Statement of Material Facts as to Which There Is No Genuine Issue ("SMF") ¶ 1.) It is also undisputed that at the time of Graff's Younis request, it was the FBI's practice to require a requester seeking information about a third party "to provide either a privacy waiver or proof of death in order for the FBI to process the request." (*Id.* ¶ 2.) Despite a policy modification after this lawsuit was filed, it remains the FBI's general policy not to search for records responsive to a request regarding a third party unless the requester provides a privacy waiver, proof of death, or sufficient public interest justification. (*Id.* ¶ 3.) If the requester demonstrates that the third party "is a public figure . . . who has attained current notoriety," the FBI will search for responsive records but will withhold all non-public source information under Exemptions 6 and 7(C). (*Id.*)

3

giving effect to such a policy, and an order requiring defendants "to contact every FOIA requestor who is part of the class and offer the opportunity to reinstate their respective requests and then process [those requests] accordingly[.]" (*Id.* at 13 ¶¶ (3)-(4) & (6).)

## II.     THE CLASS CERTIFICATION MOTION

On January 28, 2010, Graff moved for certification pursuant to Federal Rule of Civil Procedure 23(b)(2), in order to secure injunctive and declaratory relief for a class defined as follows:

> All persons who submitted at any time, from October 30, 2003 through the date of certification, a Freedom of Information Act ("FOIA") request to the Federal Bureau of Investigation ("FBI") and/or Executive Office for United States Attorneys ("EOUSA") for records pertaining to third party foreign nationals and subsequently: (1) were informed that processing of their respective requests could not begin until they had provided a signed privacy waiver or proof of death; and/or (2) were not provided with notice of their right to administratively appeal the response.

(Pl.'s Mem. in Supp. of Mot. for Class Cert. ("Pl.'s Cert. Mot.") at 5; *see also* Compl. ¶ 10 (alleging class definition).)

After the certification motion was filed, defendants moved to dismiss Count Six of the original complaint, which had alleged that defendants' policies of categorically refusing to search for documents violated the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706. (*See* Compl. ¶¶ 41-50.) The Court concluded that the equitable relief sought under the APA was "of the 'same genre'" as the relief available under Graff's FOIA claims. *Feinman II*, 2010 WL 2102326, at *7 (quoting *Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009)). Accordingly, the Court held that APA review was precluded because there was another "adequate remedy in court," 5 U.S.C. § 704, and so it dismissed Count Six for lack of subject matter jurisdiction. 2010 WL 2102326, at *7.

Subsequently, on July 1, 2010, defendants opposed class certification on the grounds that

4

the Court's dismissal of Count Six leaves only Graff's FOIA claims "challenging the non-disclosure of specific records requested pursuant to [his] specific FOIA requests," and that "[t]here is simply no justification for certifying a class to resolve whether Defendants unlawfully withheld records requested by Graff pursuant to the FOIA." (Defs.' Opp'n to Pl.'s Cert. Mot. ("Defs.' Cert. Opp'n") at 1-2.) In the alternative, defendants argue that even if the Court construed the remaining claims as alleging "a so-called pattern and practice claim . . . to challenge [defendants'] policies," class certification would remain inappropriate because Graff has not satisfied the requirements of Rule 23(a). (*Id.* at 2.) Certification would also be "unnecessary," they contend, because "[a]ny ruling with respect to the agencies' policies and regulations would inure to the benefit [of] all FOIA request[or]s, regardless of whether they were part of the alleged class." (*Id.*)

## III. THE MOTION FOR LEAVE TO AMEND THE COMPLAINT

On July 16, 2010, following the Court's dismissal of Count Six's APA claim, plaintiff moved for leave to file an amended complaint. The proposed amendment would add a new Count Six that expressly alleges that defendants have violated FOIA through their policies of "permitting FOIA personnel to categorically refuse to process searches for responsive records pertaining to third party foreign nationals absent proof of death, a signed privacy waiver or a demonstration that the public interest in disclosure outweighs the privacy interests of the particular foreign national." (Pl.'s Mem. of P. & A. in Supp. of Mot. for Leave to File First Am. Compl. ("Pl.'s Amend Mot.") at 5; *see id.*, Ex. A ("Proposed Am. Compl.") ¶ 44.)[2] Plaintiff seeks to amend "out of an extreme abundance of caution," given defendants' argument in

---

[2] The previously dismissed Counts One and Six would be retained (with Count Six renumbered as Count Seven) to preserve the right to appeal their dismissal. (Pl.'s Mot. to Amend at 4 n.4; *see* Proposed Am. Compl. ¶¶ 17-21, 49-58.)

5

opposing class certification that Counts Two and Five challenge only the denials of the Noriega and Younis requests and do not challenge defendants' policies as a whole. (Pl.'s Amend Mot. at 2-3; *see* Defs.' Cert. Opp'n at 7 (characterizing *Feinman II* as dismissing "the sole count in the complaint challenging these policies").) Defendants have opposed the motion to amend, arguing that the amendment would be futile because the facts of this case do not satisfy the standard for granting equitable relief under FOIA. (*See* Defs.' Opp'n to Pl.'s Amend Mot. ("Defs.' Amend Opp'n") at 4.)

## ANALYSIS

### I. LEGAL STANDARDS

#### A. Class Certification

Federal Rule of Civil Procedure 23 "states that '[a] class action may be maintained' if two conditions are met: The suit must satisfy the criteria set forth in subdivision (a) (*i.e.*, numerosity, commonality, typicality, and adequacy of representation), and it also must fit into one of the three categories described in subdivision (b)." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 130 S. Ct. 1431, 1437 (2010).[3] "[A] class plaintiff has the burden of showing that the requirements of Rule 23(a) are met and that the class is maintainable pursuant to one of Rule 23(b)'s subdivisions." *Richards v. Delta Air Lines, Inc.*, 453 F.3d 525, 530 (D.C. Cir. 2006).

Rule 23(b)(2), which is the only ground for certification that plaintiff has invoked, permits certification where "the party opposing the class has acted or refused to act on grounds

---

[3] In its entirety, Rule 23(a) provides that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole . . . ." Fed. R. Civ. P. 23(b)(2). This provision "permits class actions seeking final injunctions or corresponding declaratory relief for the entire class," and "[u]nlike class actions for monetary relief under Rule 23(b)(3), there are no additional requirements of notice and opt-out rights, and the plaintiff need not establish that a class action would be superior to individual actions or that common legal and factual questions predominate." *Richards*, 453 F.3d at 530 (citation omitted).

    **B.**    **Amending the Complaint**

After a defendant has filed a responsive pleading, "a plaintiff [must] first seek leave of court or obtain the opposing party's written consent before filing [an] amended complaint." *Banks v. York*, 448 F. Supp. 2d 213, 215 (D.D.C. 2006); Fed. R. Civ. P. 15(a). "The decision to grant leave to amend a complaint is left to the court's discretion," *Banks*, 448 F. Supp. 2d at 215, but the court must "heed Rule 15's mandate that leave is to be 'freely given when justice so requires.'" *Amore v. Accor N. Am., Inc.*, 529 F. Supp. 2d 85, 92 (D.D.C. 2008) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996)). "[I]t is an abuse of discretion to deny leave to amend unless there is sufficient reason, such as 'undue delay, bad faith or dilatory motive . . . [or] futility of amendment.'" *Firestone*, 76 F.3d at 1208 (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). In this case, the only issue presented is futility, and defendants may prevail on this ground "if the proposed claim would not survive a motion to dismiss." *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996).

**III.**    **PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

    **A.**    **Availability of Class Relief under FOIA**

Although courts have granted class certification in "reverse-FOIA" cases where plaintiffs

seek judicial review to *prevent* an agency's disclosure of information, *see, e.g.*, *Doe v. Veneman*, 380 F.3d 807, 812 (5th Cir. 2004) (noting district court's certification of class); *Fla. Med. Ass'n, Inc. v. Dep't of Health, Educ. & Welfare*, 479 F. Supp. 1291, 1295-96 (M.D. Fla. 1979) (noting court's prior certification of class), Graff has not cited – nor has the Court found – any decision granting certification of a class of FOIA plaintiffs who alleged the improper withholding of information. However, the Court has not located any authority suggesting that such certification is categorically impermissible, nor do defendants raise such an argument. Indeed, the Supreme Court has explained that Rule 23 "creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action," *Shady Grove*, 130 S. Ct. at 1437, and there is some authority suggesting that FOIA claims are amenable to class prosecution. *See Davis v. Astrue,* 250 F.R.D. 476, 483 (N.D. Cal. 2008) (rejecting argument that "FOIA claims are not amenable to class prosecution"); *cf. Andrew v. Bowen*, 837 F.2d 875, 876 (9th Cir. 1988) (discussing successful APA and FOIA suit that was filed as class action, without commenting on propriety of certification or whether certification had even been granted). Thus, the Court will assume *arguendo* that plaintiff's FOIA claims are amenable to class action prosecution, and it will consider his certification motion on the merits. *Cf. Davis*, 250 F.R.D. at 483-92 (granting leave to amend complaint to add FOIA claims and concluding that class certification would not moot request to amend, but denying motion to certify without prejudice to introducing additional evidence of numerosity, typicality, and adequacy of representation).

### B. Plaintiff Has Failed to Show Numerosity

Under Rule 23(a), plaintiff must first show that "the class is so numerous that joinder of all members is impracticable . . . ." Fed. R. Civ. P. 23(a). Plaintiff has failed to meet his burden.

A class action "may only be certified if the trial court is satisfied, after a rigorous

analysis, that the prerequisites of Rule 23(a) have been satisfied." *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 161 (1982). "The numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. of Northwest, Inc. v. EEOC*, 446 U.S. 318, 330 (1980). "Generally speaking, courts have found that a proposed class consisting of at least forty members will satisfy the impracticability requirement. The general rule is that a plaintiff need not provide the exact number of potential class members in order to satisfy this requirement." *Bynum v. District of Columbia*, 214 F.R.D. 27, 32-33 (D.D.C. 2003) (citations omitted). The numerosity requirement can be satisfied "[s]o long as there is a *reasonable basis* for the estimate provided," *Kifafi v. Hilton Hotels Retirement Plan*, 189 F.R.D. 174, 176 (D.D.C. 1999) (emphasis added), but "[m]ere conjecture, without more, is insufficient to establish numerosity . . . ." *Pigford v. Glickman*, 182 F.R.D. 341, 347 (D.D.C. 1998); *see also Bynum*, 214 F.R.D. at 31 ("[T]he legal standard is whether the evidence presented by plaintiffs establishes a 'reasonable basis for crediting [plaintiffs'] assertion[s].'" (quoting *Wagner v. Taylor*, 836 F.2d 578, 587 n.57 (D.C. Cir. 1987)).

Plaintiff concedes that he is neither aware nor capable of determining "the exact number of individuals who would fall within the scope of [the] proposed class" (Pl.'s Cert. Mot. at 5), and he contends that "[t]he Defendants alone retain the records which would easily identify exactly how many individuals fall within the proposed class." (*Id.* at 8.) However, "based on the experience of counsel," he estimates that there are at least "200 potential members" (*id.* at 5), given that the FBI alone receives over 10,000 FOIA requests annually and that it recently invoked Exemption 6 over 2,000 times in a single year. (*Id.* at 8-9 (citing agency-generated FOIA statistics).) Thus, he concludes, it is reasonable to assume that over the last six years, defendants improperly denied at least 200 individuals' requests for information about third-party

foreign nationals. (*See id.* at 9.)

Plaintiff's class size estimate of 200 lacks a reasonable basis. Although he cites to agency data regarding the total number of FOIA requests made and the total number of requests that were denied under Exemption 6, it does not follow from these numbers that there are at least 200 potential class members. *See generally Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir. 1989) (concluding that district court did not abuse discretion in finding that plaintiffs failed to prove numerosity, because there was inadequate support for their numerical assumptions). As defendants correctly observe, the *total* number of Exemption 6 denials says nothing about the number of Exemption 6 denials of *requests for records pertaining to third-party foreign nationals*. (Defs.' Cert. Opp'n at 10.)

Plaintiff responds that the data upon which he bases his estimate need not be "specific to requests pertaining to third party foreign nationals," and that it is enough for him to cite the "large number" of FOIA requests received and occasions on which Exemption 6 was invoked. (Reply to Pl.'s Cert. Mot. ("Pl.'s Cert. Reply") at 7.) To the contrary, the numbers of FOIA requests and Exemption 6 denials "offer no basis whatsoever" for plaintiff's estimate of 200 potential class members.[4] *Rodriguez v. U.S. Dep't of Treasury*, 131 F.R.D. 1, 6 (D.D.C. 1990). "For all the Court knows, [that number] is absolutely random, as it would have to be given the

---

[4] Plaintiff's argument also assumes incorrectly that the total number of FOIA *requests* (or Exemption 6 denials) necessarily represents an equivalent number of FOIA *requesters*. One person can make multiple requests, just as plaintiff himself has done (albeit to two different agencies). Plaintiff's cited cases do not support his argument that the FOIA request statistics are "sufficient to establish numerosity" (Pl.'s Cert. Reply at 7-8), because each of those cases featured person-based statistics. *See Bynum v. District of Columbia*, 217 F.R.D. 43, 46 (D.D.C. 2003) (finding numerosity where putative class and available data pertained to *individuals* who were strip-searched); *Davis*, 250 F.R.D. at 486 (declining to find numerosity, where putative class and available data pertained to number of Social Security *beneficiaries*); *Taylor v. Dist. of Columbia Water & Sewer Auth.*, 241 F.R.D. 33, 37 & n.4 (D.D.C. 2007) (finding numerosity where defendant did not challenge existence of class and did not directly challenge plaintiff's assertion that 800 employees had been discriminated against).

lack of evidence to support a more concrete number." *Id.* (rejecting plaintiff's assumption that "some percentage" – and thus, at least one percent – of would-be Secret Service applicants fell within class definition); *see also Davis*, 250 F.R.D. at 486 (plaintiff failed to show numerosity of putative class of mentally disabled Social Security recipients who sought "substantial gainful work activity," because – despite evidence of nearly 2 million mentally disabled beneficiaries under Social Security Disability Insurance program – "the court has no evidence regarding what percentage of" those 2 million beneficiaries "have attempted or are attempting to work"); *Lyon v. United States*, 94 F.R.D. 69, 73-74 (W.D. Okla. 1982) (plaintiff failed to show numerosity of putative class of claimants for worker's compensation whose requests under Privacy Act were not given proper consideration, because evidence regarding number of Privacy Act requesters did not specify how many requesters were also worker's compensation claimants); *Campbell v. Minneapolis Pub. Housing Auth.*, 175 F.R.D. 531, 538 (D. Minn. 1997) (plaintiff failed to show numerosity of putative class of housing applicants who were disabled due to drug or alcohol addiction, where he offered statistics showing 141 of 9000 applications were from disabled individuals but "offered [no] indication" of how many of them "were disabled due to drug or alcohol addiction"), *vac'd on other grounds*, 168 F.3d 1069 (8th Cir. 1999); *Golden v. City of Columbus*, 404 F.3d 950, 966 (6th Cir. 2005) (affirming denial of certification motion where plaintiff failed to show numerosity of putative class of city's tenants "whose water service was or will be terminated because of the landlord's or prior tenant's indebtedness," because plaintiff relied only upon "unrefined measure" of city's "total tenant population").[5]

---

[5] Defendants also represent that they cannot readily determine which past requesters sought information pertaining to foreign nationals. (Defs.' Cert. Opp'n at 10.) Their FOIA records are not categorized by reference to the nationality of the subject of a request, and they observe correctly that it is not possible to determine the citizenship of a FOIA request's subject solely by his or her name. (*See id.* at 10-11; *id.*, Suppl. Decl. of Dennis Argall ¶¶ 5-6; *id.*, Decl. of Vinay Jolly ¶ 4.) Plaintiff responds that these limitations on defendants' search capabilities

In sum, plaintiff has failed to show numerosity, and since "[f]ailure to adequately demonstrate any of the four [prerequisites of Rule 23(a)] is fatal to class certification," *Garcia v. Johanns*, 444 F.3d 625, 631 (D.C. Cir. 2006), plaintiff's motion will be denied.[6]

## IV.  PLAINTIFF'S MOTION FOR LEAVE TO AMEND THE COMPLAINT

Defendants argue that the proposed amendment is futile because it does not state a valid claim for equitable relief. (*See* Defs.' Amend Opp'n at 4.) Specifically, they contend that the facts of this case do not present the justifications for equitable relief upon which the D.C. Circuit

---

are not directly relevant to the question of numerosity. (Pl.'s Cert. Reply at 8.) Even if so, and even assuming that plaintiff had satisfied his burden (which he has not), the fact that defendants cannot readily provide discovery on potential class members merely reinforces the Court's concern that permitting such discovery could amount to little more than a fishing expedition. (*Compare id.* at 8 n.4 (plaintiff's suggestion that "minimal discovery would easily" enable him to support his assertions of numerosity).)

[6] Even if plaintiff had met his burden under Rule 23(a), the Court remains concerned about the "necessity" of certifying his proposed class. *See Mills v. District of Columbia*, 266 F.R.D. 20, 22 (D.D.C. 2010) ("[I]t is not uncommon for courts, in exercising their discretion, to deny class certification on that basis when the particular facts and circumstances of the case warrant doing so."); *but see Disability Rights Council of Greater Wash. v. Wash. Metro. Area Transit Auth.,* 239 F.R.D. 9, 23-24 (D.D.C. 2006) (rejecting necessity doctrine as unsupported by text of Rule 23); *Littlewolf v. Hodel*, 681 F. Supp. 929, 937-38 (D.D.C. 1988) (rejecting necessity doctrine and certifying class), *judgment aff'd sub nom. Littlewolf v. Lujan*, 877 F.2d 1058 (D.C. Cir. 1989). To the extent that the necessity doctrine survives the Supreme Court's analysis of Rule 23 in *Shady Grove*, 130 S. Ct. at 1437-38, the circumstances of this case would warrant denying certification as unnecessary.

Here, most of the equitable relief sought by plaintiff would, if granted, "benefit all proposed class members" regardless of whether the class were certified. *Sargent v. Block*, 576 F. Supp. 882, 888 (D.D.C. 1983). (*See* Compl. at 12-13 ¶¶ (2)-(5).) Certification is only relevant to plaintiff's request for an order requiring defendants to notify all class members that the policies under which their prior FOIA requests were denied have now been deemed unlawful. (*See* Compl. at 13 ¶ (6); *see also* Pl.'s Cert. Reply at 13 & n.8.) However, "it would not be feasible" for defendants to comply with such an injunction, because they do not record the nationality of the subject of a FOIA request, and therefore they cannot readily identify requesters who fall within plaintiff's class definition. (Defs.' Cert. Opp'n at 13 n.3.) *See supra* note 5. Plaintiff also concedes that he is incapable of determining the full extent of the class. (*See* Pl.'s Cert. Mot. at 5, 8.) It thus appears that "the burdens of maintaining a (b)(2) class action" solely for the purpose of retroactive notification would be "substantial . . . due to the discovery problems that will inevitably arise . . . ." *Berlin Democratic Club v. Rumsfeld*, 410 F. Supp. 144, 164 (D.D.C. 1976).

relied in *Payne Enterprises, Inc. v. United States*, 837 F.2d 486 (D.C. Cir. 1988). (*See* Defs.' Amend Opp'n at 5-8.) Based on the record before the Court, it cannot conclude that plaintiff's proposed amendment would be futile.

"FOIA imposes no limits on courts' equitable powers in enforcing its terms." *Payne*, 837 F.2d at 494; *see Renegotiation Bd. v. Bannercraft Clothing Co., Inc.*, 415 U.S. 1, 19-20 (1974). The Court is not yet persuaded that the particular facts of *Payne* define the *only* possible circumstances under which equitable relief may be justified in a FOIA case. Nonetheless, the Court also notes that *Payne* deemed declaratory relief to be appropriate where, *inter alia*, the record demonstrated an agency official's "inability" to remedy the agency's persistent "noncompliance" with FOIA. 837 F.2d at 494. Here, Graff's proposes to allege that the DOJ Office of Information Policy ("OIP") "is responsible for encouraging agency compliance with FOIA" and "manages DOJ's responsibilities, which includes the FBI and EOUSA, related to the FOIA." (Proposed Am. Compl. ¶ 43.) He also proposes to allege that OIP's director has publicly stated "that FOIA does not permit a categorical requirement that privacy waivers be submitted for foreign nationals in order to process a request for records," and "that FOIA personnel should not pursue such a policy." (*Id.*) Plaintiff further proposes to allege that despite this official's stated position, defendants have continued to contradict her and to violate FOIA by maintaining the policies at issue in this case. (*See id.* ¶ 44.)

The Court must accept the truth of such "well-pleaded factual allegations," *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009), given that plaintiff's proposed amendment need only survive a motion to dismiss. *See James Madison*, 82 F.3d at 1099. Moreover, the legal interpretation set forth in the proposed allegations finds support in *Nation Magazine, Washington Bureau v. U.S. Customs Service*, 71 F.3d 885 (D.C. Cir. 1995), which explained that "categorical

rules" may only be used "when the range of circumstances included in the category characteristically supports an inference that the statutory requirements for exemption are satisfied . . . ."[7] *Id.* at 893 (internal quotation marks and edits omitted); *cf. United States v. Landano*, 508 U.S. 165, 176-78 (1993) (rejecting categorical rule for applying Exemption 7(D)). Thus, there is a serious question whether defendants' policies can be justified under FOIA and D.C. Circuit law. *See also Nation Magazine v. U.S Customs Serv.*, 937 F. Supp. 39, 44-45 (D.D.C. 1996) (noting, on remand, that "the privacy concerns that drive Exemption 7(C) may not be present with respect to *every* record in [the agency's] investigatory files regarding" third-party subject of FOIA request, and approving of narrower categorical rule that was tailored to specific contents of records).[8]

---

[7] In *Nation Magazine*, the FOIA request sought documents regarding 1992 independent presidential candidate H. Ross Perot, particularly records "'pertain[ing] to offers by Mr. Perot to assist the Customs Service in the interdiction of illegal drugs,'" which Perot had referenced during the presidential campaign. 71 F.3d at 888 & n.1 (quoting request). Unlike the instant agency defendants, the Customs Service did search some of its files, *see id.* at 891, and thus it "did not simply refuse to take any action on the request." *Id.* at 889 n.3. Even so, the agency refused either to confirm or deny whether any responsive investigatory files existed, because "'disclosure of the mere fact that an individual is mentioned in an agency's law enforcement files carries a stigmatizing connotation' . . . ." *Id.* at 888 (quoting agency response).

The D.C. Circuit concluded that the agency's categorical presumption against disclosure was unsupportable, because "the mere fact that records pertain to an individual's activities does not necessarily qualify them for exemption [on privacy grounds]. Such records may still be cloaked with the public interest if the information would shed light on agency action," particularly where a FOIA request makes clear that the "significan[ce]" of a third-party subject "is [his] connection to agency conduct." 71 F.3d at 894-95. *See also id.* at 896 (finding that *SafeCard Services, Inc. v. SEC*, 926 F.2d 1197 (D.C. Cir. 1991), did not support "permitting an agency to exempt from disclosure *all* of the material in an investigatory record solely on the grounds that the record includes some information which identifies a private citizen or provides that person's name and address," and concluding that "such a blanket exemption" "is not a permissible reading of Exemption 7(C)" because it "would reach far more broadly than is necessary to protect the identities of individuals mentioned in law enforcement files" and thus "would be contrary to FOIA's overall purpose of disclosure").

[8] Defendants also rely upon this Court's prior decisions in *Fischer v. U.S. Department of Justice*, 596 F. Supp. 2d 34 (D.D.C. 2009), and *Lewis v. U.S. Dep't of Justice*, 609 F. Supp. 2d 80 (D.D.C. 2009), *aff'd*, No. 09-5225, 2010 WL 1632835 (D.C. Cir. Apr. 7, 2010). (*See* Defs.'

14

Plaintiff's proposed allegations "present[] 'sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)), including a claim for equitable relief. Accordingly, the Court will grant plaintiff's motion for leave to amend.

## CONCLUSION

For the foregoing reasons, plaintiff's class certification motion is **DENIED**, and his motion for leave to amend the complaint is **GRANTED**. The parties shall jointly submit, within two weeks of the date of this Memorandum Opinion, a briefing schedule that provides for sequential summary judgment motions on plaintiff's remaining claims.

**SO ORDERED.**

/s/
ELLEN SEGAL HUVELLE
United States District Judge

DATE: August 13, 2010

---

Amend Opp'n at 7-8.) However, these decisions do not demonstrate that amendment would be futile. The *pro se* plaintiffs in *Fischer* and *Lewis* did not squarely present the Court with an opportunity to consider the agency's *policy* of categorically refusing to search for documents. Moreover, in each case, the proffered public interest justification – that the information would help the plaintiff challenge his conviction – was inadequate as a matter of law, thereby mooting the relevance of the agency's categorical refusals. *See Lewis*, 609 F. Supp. 2d at 84-85 (citing cases); *see also Fischer*, 596 F. Supp. 2d at 47 (same).