IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| BARBARA FEINMAN and GARRETT M. GRAFF, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civ. A. No. 1:09-cv-02047 (ESH) |
| FEDERAL BUREAU OF INVESTIGATION, et al., | ) ) | |
| Defendants. | ) ) | |

## SECOND DECLARATION OF DAVID M. HARDY

I, David M. Hardy, declare as follows:

(1)     I am the Section Chief of the Record/Information Dissemination Section

("RIDS"), Records Management Division ("RMD"), formerly at Federal Bureau of Investigation

Headquarters ("FBIHQ") in Washington, D.C., and now relocated to Winchester, Virginia. I

have held this position since August 1, 2002. Prior to my joining the FBI, from May 1, 2001 to

July 31, 2002, I was the Assistant Judge Advocate General of the Navy for Civil Law. In that

capacity, I had direct oversight of Freedom of Information Act ("FOIA") policy, procedures,

appeals, and litigation for the Navy. From October 1, 1980 to April 30, 2001, I served as a Navy

Judge Advocate at various commands and routinely worked with FOIA matters. I am also an

attorney who has been licensed to practice law in the State of Texas since 1980.

(2)     In my official capacity as Section Chief of RIDS, I supervise approximately 280

employees who staff a total of ten (10) Units and two field operational service center units whose

collective mission is to effectively plan, develop, direct, and manage responses to requests for

access to FBI records and information pursuant to the FOIA; Privacy Act; Executive Order

13526; Presidential, Attorney General, and FBI policies and procedures; judicial decisions; and

other Presidential and Congressional directives.  My responsibilities also include the review of

FBI information for classification purposes as mandated by Executive Order 13526[1] and the

preparation of affidavits/declarations in support of Exemption 1 claims asserted under the FOIA.[2]

I have been designated by the Attorney General of the United States as an original classification

authority and a declassification authority pursuant to Executive Order 13526 §§ 1.3 and 3.1.  The

statements contained in this declaration are based upon my personal knowledge, upon

information provided to me in my official capacity, and upon conclusions and determinations

reached and made in accordance therewith.

(3)     Due to the nature of my official duties, I am familiar with the procedures followed

by the FBI in responding to requests for information from its files pursuant to the provisions of

the FOIA, 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a.  Specifically, three

referrals submitted to the FBI by the Department of Justice, Criminal Division ("DOJ CRIM"),

concerning Manuel Noriega as a result of plaintiff Graff's FOIA request to DOJ CRIM dated

January 23, 2009 -- Count Four; and plaintiff Graff's April 8, 2009 FOIA request for records

pertaining to Fawaz Younis -- Count Five.

(4)     In accordance with <u>Vaughn v. Rosen</u>, 484 F.2d 820 (D.C. Cir. 1973), this

declaration, which is being submitted in support of the FBI's motion for summary judgment, will

provide the Court and plaintiff with an explanation for the procedures used to search for records

---

[1]  75 Fed. Reg. 707 (2010).

[2]  5 U.S.C. § 552(b)(1).

responsive to plaintiff's FOIA request concerning Fawaz Younis (Count Five).  Additionally, this

declaration is to provide the status of the FBI's responses to DOJ CRIM's referrals pertaining to

Manuel Noriega (Count Four).  Moreover, this declaration provides an explanation of the FOIA

exemptions asserted to withhold information protected pursuant to FOIA Exemptions (b)(1),

(b)(2), (b)(5), (b)(6), (b)(7)(C), and (b)(7)(D), 5 U.S.C. §§ 552  (b)(1), (b)(2), (b)(5), (b)(6),

(b)(7)(C), and (b)(7)(D).

### Manuel Noriega - Count Four

(5)     By letter dated January 23, 2009, plaintiff made a FOIA request to DOJ CRIM for

information concerning Manuel Noriega.  **(See Exhibit A.)**

(6)     By letters dated April 19, 2010, June 18, 2010, and September 23, 2010, DOJ

CRIM referred a total of 96 pages to FBIHQ for review and direct response to plaintiff.[3]

(7)     By letters dated August 23, 2010[4] and November 10, 2010,[5] the FBI responded

directly to plaintiff.  The FBI advised that it reviewed a total of 96 pages and released a total of

---

[3]  DOJ CRIM's referral dated June 18, 2010 contained copies of five documents with "blackouts" (i.e., material excised manually).  These documents were processed in 1990 during the prosecution of Manuel Noriega.  The FBI determined that the file containing the redouts (see through copies of the manually processed documents) was destroyed in accordance with routine records retention schedule on or about March 2, 2001.  The FBI has made a good faith effort to locate the original documents; however, after reviewing approximately 96 files to date, the FBI was successful only in locating three of the five documents.  Therefore, the FBI processed the blackouts as provided by DOJ CRIM for two of the documents.  Additionally, cover sheets containing  minimal blackouts (e.g., the subject of the investigation, file number, etc.) were attached to each referred document.  The cover sheets were also processed as referred by DOJ CRIM.

[4]  FOIA request number 1148215-000.

[5]  FOIA request numbers 1153314-000 and 1155104-000.

94 pages[6] in whole or part to plaintiff.  The FBI withheld information pursuant to FOIA

Exemptions (b)(1), (b)(2), (b)(5), (b)(6), (b)(7)(C), and (b)(7)(D).  (**See Exhibit B.**)

### Fawaz Younis – Count Five

(8)      By facsimile dated April 8, 2009, plaintiff submitted a FOIA request to FBIHQ

seeking the following information.  Additionally, plaintiff requested a waiver of all fees

associated with his FOIA request.

> "Files regarding the FBI's investigation into and the role in the 1987
> rendition of Royal Jordanian Flight 402 hijacker and Amal Organization
> militiaman Fawaz Younis.
>
> I am requesting copies of any documents or communications, including
> but not limited to logs, reports, messages, teletypes, wires, cables, and
> external or internal memorandums about capture and forced extradition of
> Younis on September 13, 1987.
>
> This request should include the period from March 1, 1986 to October 4,
> 1989, inclusive.  This request includes but is not limited to rendition
> preparations, apprehension and transit, as well as prosecution preparations
> for trial in United States District Court.  This request should include the
> role of the Federal Bureau of Investigation, the Central Intelligence
> Agency, and the Hostage Rescue Team in apprehending Younis overseas
> and bringing him back to the United States to stand trial." (**See Exhibit
> C.**)

(9)      By letter dated April 10, 2009, the FBI acknowledged plaintiff's FBIHQ FOIA

request and assigned it request number 1128923-000.  Plaintiff was advised that the FBI was

unable to respond to his request for records concerning another individual without either proof of

death or a privacy waiver from the subject of his request.  Therefore, plaintiff's request was

administratively closed.  (**See Exhibit D.**)

---

[6] The FBI did not process duplicate copies of two pages.

(10)     On October 30, 2009, plaintiff filed a Complaint in the U.S. District Court for the District of Columbia.[7]

(11)     By letter dated February 19, 2010, the FBI advised plaintiff that as a result of an administrative error, plaintiff's request was closed on April 10, 2009.  However, when the error was discovered the FBI reopened plaintiff's FOIA request and assigned it request number 1128923-001.  Plaintiff was advised that the FBI was searching the indices to its Central Records System ("CRS") for information to his request.  **(See Exhibit E.)**

(12)     By letter dated February 26, 2010, the FBI advised plaintiff that his request for a fee waiver had been granted.  **(See Exhibit F.)**

(13)     By letter dated July 14, 2010, the FBI released 1 DVD and 134 pages of public source material to plaintiff.  The FBI advised plaintiff that additional potentially responsive material contained personal information about other third party individuals and was exempt from disclosure without a privacy waiver pursuant to privacy Exemptions (b)(6) and (b)(7)(C).  The also advised plaintiff he could administratively appeal the FBI's action to the Department of Justice, Office of Information Policy ("DOJ/OIP") within sixty (60) days from the date of the letter.  **(See Exhibit G.)**

## EXPLANATION OF THE FBI'S CENTRAL RECORDS SYSTEM

(14)     The Central Records System ("CRS") enables the FBI to maintain all information which it has acquired in the course of fulfilling its mandated law enforcement responsibilities. The records maintained in the CRS consist of administrative, applicant, criminal, personnel, and

---

[7] Plaintiff avers that by letter dated April 17, 2009, he appealed to the Office of Information Policy ("OIP") the FBI's response to his April 8, 2009 FBIHQ request.  OIP has no record of the appeal.

other files compiled for law enforcement purposes. CRS is organized into a numerical sequence

of files, called FBI "classifications," which are broken down according to subject matter. The

subject matter of a file may correspond to an individual, organization, company, publication,

activity, or foreign intelligence matter (or program). Certain records in the CRS are maintained

at FBIHQ. Records that are pertinent to specific field offices of the FBI are maintained in those

field offices. Although the CRS is primarily designed to serve as an investigative tool, the FBI

utilizes the CRS to conduct searches that are likely to yield documents responsive to

FOIA/Privacy Act requests. The mechanism that the FBI uses to search the CRS is the

Automated Case Support System ("ACS").

(15)   The ACS was implemented for all Field Offices, Legal Attaches ("Legats"), and

FBIHQ in order to consolidate portions of the CRS that were previously automated. ACS can be

described as an internal computerized subsystem of the CRS. Because the CRS cannot

electronically query the case files for data, such as an individual's name or social security

number, the required information is duplicated and moved to the ACS so that it can be searched.

More than 105 million records from the CRS were converted from automated systems previously

utilized by the FBI. Automation did not change the CRS; instead, automation has facilitated

more economic and expeditious access to records maintained in the CRS.

(16)   The retrieval of data from the CRS is made possible through the ACS using the

General Indices, which are arranged in alphabetical order.[8] The entries in the General Indices fall

into two categories:

---

[8] The General Indices are not only automated but also include index cards which allow a
manual search for records that pre-date the implementation of ACS on October 16, 1995.

(a) A "main" entry --- A "main" entry, or "main" files, carries the name corresponding with a subject of a file contained in the CRS.

(b) A "reference" entry --- "Reference" entries, sometimes called "cross- references," are generally only a mere mention or reference to an individual, organization, or other subject matter, contained in a document located in another "main" file on a different subject matter.

(17)    Searches made in the General Indices to locate records concerning a particular subject, such as Fawaz Younis, are made by searching the subject requested in the index.

(18)    The ACS consists of three integrated, yet separately functional, automated applications that support case management functions for all FBI investigative and administrative cases:

(a)    Investigative Case Management ("ICM") – ICM provides the ability to open, assign, and close investigative and administrative cases as well as set, assign, and track leads.  The Office of Origin ("OO"), which sets leads for itself and other field offices, as needed, opens a case.  The field offices that receive leads from the OO are referred to as Lead Offices ("LOs").  When a case is opened, it is assigned a Universal Case File Number ("UCFN"), which is used by all FBIHQ, as well as all FBI field offices and Legats that are conducting or assisting in the investigation.  Using the fictitious file number "111-HQ-12345" as an example, an explanation of the UCFN is as follows: "111" indicates the classification for the specific type of investigation; "HQ" is the abbreviated form used for the OO of the investigation, which in this case is FBIHQ; and "12345" denotes the individual case file number for the particular investigation.

(b)    Electronic Case File ("ECF") – ECF serves as the central electronic repository for the FBI's official text-based documents.  ECF supports the universal serial concept

7

in that only the creator of a document serializes it into a file. This provides a single-source entry

of serials into the computerized ECF system. All original serials are maintained in the OO case

file.

   (c)  Universal Index ("UNI") – UNI continues the universal concepts of

ACS by providing a complete subject/case index to all investigative and administrative cases.

Only the OO is required to index; however, the LOs may index additional information as needed.

UNI, an index of approximately 109.2 million records, functions to index names to cases, and to

search names and cases for use in FBI investigations. Names of individuals or organizations are

recorded with identifying applicable information such as date or place of birth, race, sex, locality,

Social Security number, address, and/or date of event.

  (19)  The decision to index names other than subjects, suspects, and victims is a

discretionary decision made by the investigative FBI Special Agent ("SA") assigned to work on

the investigation, the Supervisory SA ("SSA") in the field office conducting the investigation,

and the SSA at FBIHQ. The FBI does not index every name in its files; rather, it indexes only

that information considered pertinent, relevant, or essential for future retrieval. Without a "key"

(index) to this enormous amount of data, information essential to ongoing investigations could

not be readily retrieved. The FBI files would thus be merely archival in nature and could not be

effectively used to serve the mandated mission of the FBI, which is to investigate violations of

federal criminal and national security statutes. Therefore, the General Indices to the CRS files

are the means by which the FBI can determine what retrievable information, if any, the FBI may

have in its CRS files on a particular subject matter or individual, e.g., Fawaz Younis.

## SEARCH FOR RECORDS RESPONSIVE TO PLAINTIFF'S
## FOIA REQUEST CONCERNING FAWAZ YOUNIS

(20)    In response to plaintiff's FOIA request directed to FBIHQ, the FBI searched the

indices of the CRS for information relating to Fawaz Younis. The FBI searched the CRS by

using the name "Fawaz Younis." The FBI's search covered a phonetic breakdown of the name

"Fawaz Younis," and through this method, the search would locate records using the phonetic

sounds of Fawaz Younis's first and last names. Within the limits specified in plaintiff's FOIA

request -- that he was seeking only information pertaining to the FBI's investigation into and the

role in the 1987 rendition of Royal Jordanian Flight 402 hijacker and Amal Organization

militiaman Fawaz Younis, specifically from March 1, 1986 to October 4, 1989 -- the FBI's search

efforts located one main investigative file containing responsive material to plaintiff's FOIA

request. The FBI released 1 DVD and 134 pages of public source material to plaintiff on July 14,

2010; however, additional potentially responsive material contained personal information about

other third party individuals and was exempt from disclosure without a privacy waiver pursuant

to privacy Exemptions (b)(6) and (b)(7)(C).

## EXPLANATION OF THE CODED FORMAT USED FOR THE
## JUSTIFICATION OF DELETED MATERIAL

(21)    All documents were processed to achieve maximum disclosure consistent with the

access provisions of the Privacy Act and the FOIA. Every effort was made to provide plaintiff

with all material in the public domain and with all reasonably segregable portions of releasable

material. No reasonably segregable, nonexempt portions were withheld from plaintiff. To

further describe the information withheld could identify the very material which the FBI seeks to

protect. Copies of the pages released in part and in full are attached as **Exhibit H**. Each page of

Exhibit H is consecutively numbered "GRAFF-1 through GRAFF-96" at the bottom right-hand corner of each page. The exemptions asserted by the FBI as grounds for non-disclosure of portions of documents are FOIA Exemptions (b)(1), (b)(2), (b)(5), (b)(6), (b)(7)(C), and (b)(7)(D).

(22)    Each of the pages contain, on their face, coded categories of exemptions which detail the nature of the information withheld pursuant to the provisions of the FOIA. The coded categories are provided to aid the Court's and plaintiff's review of the FBI's explanations of FOIA exemptions used to withhold the protected material. Each instance of information withheld on the attached documents is accompanied by a coded designation that corresponds to the categories listed below. For example, if "(b)(7)(C)-1" appears on a document, the "(b)(7)(C)" designation refers to "Exemption (b)(7)(C)" of the FOIA concerning an "Unwarranted Invasion of Privacy." The numerical designation of "1" following the "(b)(7)(C)" narrows the main category into the more specific subcategory, "Names and/or Identifying Information Pertaining to FBI Employees."

(23)    Listed below are the categories used to explain the FOIA exemptions asserted to withhold the protected material.

| SUMMARY OF JUSTIFICATION CATEGORIES | |
|---|---|
| **CODED CATEGORIES** | **INFORMATION WITHHELD** |
| **Category (b)(1)** | **CLASSIFIED INFORMATION** |
| **(b)(1)** | Information properly classified by an FBI Official pursuant to Executive Order 13526 |

| SUMMARY OF JUSTIFICATION CATEGORIES | |
|---|---|
| **CODED CATEGORIES** | **INFORMATION WITHHELD** |
| **Category (b)(2)** | **INTERNAL AGENCY RULES AND PRACTICES** |
| **(b)(2)-1** | Internal telephone numbers of FBI personnel [cited at times in conjunction with (b)(6)-1 and (b)(7)(C)-1] |
| **(b)(2)-2** | Confidential source symbol numbers [cited in conjunction with (b)(7)(D)-1] |
| **(b)(2)-3** | Confidential source file numbers [cited in conjunction with (b)(7)(D)-2] |
| **Category (b)(5)** | **PRIVILEGED INFORMATION** |
| **(b)(5)-1** | Attorney-Client privilege |
| **Category (b)(6) and (b)(7)(C)** | **CLEARLY UNWARRANTED INVASION OF PRIVACY AND UNWARRANTED INVASION OF PERSONAL PRIVACY** |
| **(b)(6)-1 and (b)(7)(C)-1** | Names and/or identifying information of FBI Special Agents and support personnel |
| **(b)(6)-2 and (b)(7)(C)-2** | Names and/or identifying information of third parties of investigative interest to the FBI |
| **(b)(6)-3 and (b)(7)(C)-3** | Names and/or identifying information of third parties merely mentioned in FBI investigative records |
| **(b)(6)-4 and (b)(7)(C)-4** | Names and/or identifying information of third parties who provided information to the FBI [cited at times in conjunction with (b)(7)(D)-3 or (b)(7)(D)-4] |
| **(b)(6)-5 and (b)(7)(C)-5** | Names and/or identifying information concerning non-FBI federal government personnel |

| SUMMARY OF JUSTIFICATION CATEGORIES | |
| --- | --- |
| **CODED CATEGORIES** | **INFORMATION WITHHELD** |
| **Category (b)(7)(D)** | **CONFIDENTIAL SOURCE MATERIAL** |
| **(b)(7)(D)-1** | Confidential source symbol numbers [cited in conjunction with (b)(2)-2] |
| **(b)(7)(D)-2** | Confidential source file numbers [cited in conjunction with (b)(2)-3] |
| **(b)(7)(D)-3** | Information provided by source symbol numbered informant under express assurances of confidentiality |
| **(b)(7)(D)-4** | Names and/or identifying information of individuals who provided information to and cooperated with the FBI under implied assurances of confidentiality [cited in conjunction with (b)(6)-4 and (b)(7)(C)-4] |

## EXEMPTION (b)(1)
## CLASSIFIED INFORMATION[9]

(24)    5 U.S.C. § 552 (b)(1) exempts from disclosure those records that are:

"(A) specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign policy; and (B) are in fact properly classified pursuant to such Executive Order . . . ."

(25)    Before I consider an Exemption (b)(1) claim for withholding agency records, I determine whether the information in those records is information that satisfies the requirements of E.O. 13526, which governs the classification and protection of information that affects the national security, and complies with the various substantive and procedural criteria of the Executive Order.  E.O. 13526 is the Executive Order that currently applies to the protection of

---

[9] Although the documents were initially reviewed and classified under the provisions of the Executive Order in effect at the time the documents were initially processed for the prosecution of Manuel Noriega, the FBI re-reviewed the documents under the current Executive Order (E.O. 13526) in order to achieve maximum disclosure.

national security information.  I am bound by the requirements of E.O. 13526, when making classification determinations.

(26)    For information to be properly classified, and thus properly withheld from disclosure pursuant to Exemption (b)(1), the information must meet the requirements set forth in E.O. 13526, § 1.1 (a):

> (a) an original classification authority is classifying the information;
>
> (b) the information is owned by, produced by or for, or is under the control of the United States Government;
>
> (c) the information falls within one or more of the categories of information listed in § 1.4 of this order;
>
> (d) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage.

(27)    All information which I determined to be classified, and which is under the control of the United States government, is marked at the "Secret" level since the unauthorized disclosure of this information reasonably could be expected to cause serious damage ("Secret") to national security.  See E.O. 13526, § 1.2 (a)(2).  In addition to these substantive requirements, certain procedural and administrative requirements of E.O. 13526, must be followed before information can be considered to be properly classified, such as proper identification and marking of documents.  I made certain that all procedural requirements of E.O. 13526, were followed in order to ensure that the information was properly classified.  I made certain that:

> (a) each document was marked as required and stamped with the proper classification designation;
>
> (b) each document was marked to indicate clearly which portions are classified and which portions are exempt from declassification as set forth in E.O. 13526, § 1.5 (b);

(c) the prohibitions and limitations on classification specified in E.O. 13526, § 1.7, were adhered to;

(d) the declassification policies set forth in E.O. 13526, §§ 3.1 and 3.3 were followed; and

(e) any reasonably segregable portion of these classified documents that did not meet the standards for classification under E.O. 13526, were declassified and marked for release, unless withholding was otherwise warranted under applicable law.

## FINDINGS OF DECLARANT REGARDING EXEMPTION (b)(1)

(28)    With the above requirements in mind, I personally and independently examined the information withheld from plaintiff pursuant to FOIA Exemption 1. I determined that the classified information continues to warrant classification at the "Secret" level, respectively, and is exempt from disclosure pursuant to E.O. 13526, § 1.4, categories (c) intelligence activities (including covert action), intelligence sources or methods, or cryptology; and (d) foreign relations or foreign activities.

## INTELLIGENCE ACTIVITIES, SOURCES AND  METHODS

(29)    E.O. 13526, § 1.4(c), exempts intelligence activities (including covert action), intelligence sources or methods, or cryptology from disclosure. An intelligence activity or method includes any intelligence action or technique utilized by the FBI against a targeted individual or organization that has been determined to be of national security interest. An intelligence method is used to indicate any procedure (human or non-human) utilized to obtain information concerning such individual or organization. An intelligence activity or method has two characteristics. First, the intelligence activity or method -- and information generated by it -- is needed by U. S. Intelligence/Counterintelligence agencies to carry out their missions. Second, confidentiality must be maintained with respect to the activity or method if the viability, productivity and usefulness of its information is to be preserved. The information withheld on

14

GRAFF-69 pursuant to Exemption (b)(1) was withheld to protect an intelligence method utilized by the FBI for gathering intelligence data.

(30)     The classification redactions were made to protect from disclosure information that would reveal the actual intelligence activities and methods used by the FBI against specific targets of foreign counterintelligence investigations or operations; identify a target of a foreign counterintelligence investigation; or disclose the intelligence-gathering capabilities of the activities or methods directed at specific targets. The information obtained from the intelligence activities or methods is very specific in nature, provided during a specific time period, and known to very few individuals.

(31)     It is my determination that the disclosure of the specific information which describes the intelligence activities or methods withheld in this case which are still used by the FBI today to gather intelligence information, could reasonably be expected to cause serious damage to the national security for the following reasons: (1) disclosure would allow hostile entities to discover the current intelligence-gathering methods used; (2) disclosure would reveal current specific targets of the FBI's national security investigations; and (3) disclosure would reveal the determination of the criteria used and priorities assigned to current intelligence or counterintelligence investigations. With the aid of this detailed information, hostile entities could develop countermeasures which would, in turn, severely disrupt the FBI's intelligence-gathering capabilities. This severe disruption would also result in severe damage to the FBI's efforts to detect and apprehend violators of the United States' national security and criminal laws. The information withheld is properly classified at the "Secret" level and withheld pursuant to E.O. 13526, § 1.4 (c). Exemption (b)(1) representing "Intelligence Activities" is invoked on the following page: GRAFF-69.

(32)     The classified information withheld on GRAFF-69 identifies intelligence methods

that are effective means for the FBI to gather, store or disseminate intelligence information. GRAFF-69 contains numerical designators for an intelligence method and provides detailed information provided by an intelligence method. The withheld information identifies a file number that is assigned to a specific intelligence method for channelization and dissemination instructions. The classified information obtained from the intelligence method is very specific in nature, provided during a specific time period, and known to very few individuals. The release of this information would obviate the effectiveness of this intelligence method.

### File Number

(33)    The classified information withheld on GRAFF-69 includes an FBI file number assigned to a specific intelligence activity, including channelization and dissemination instructions. Release would lead to exposure of a particular intelligence activity and method at issue. Individual file numbers are assigned by FBIHQ and field offices and contain a geographical prefix or the originating office and case number, which includes the numerical characterization of the type of investigation followed by a chronological number assigned to a specific investigation/activity.

(34)    The disclosure of an intelligence file number in the aggregate will enable a hostile analyst to attribute any information released from the documents containing such a file number to that particular file. A hostile analyst can identify the specific intelligence activity by supplying further missing pieces. Hence, a partial mosaic of the activity begins to appear as more information is identified with the file leading to the exposure of actual current activities or methods. Disclosure of this file number will allow a hostile analyst, or anyone not privileged to this information, to patch bits and pieces of information together until the actual use of the application of the source or method can be determined. The identification of these intelligence sources or methods, which continue to furnish positive intelligence information to date, will

severely limit its application.  In addition, disclosure will inform hostile intelligence of the possible range of our intelligence capabilities, as well as the probable intelligence that the FBI has gathered, or can collect, concerning them.  This knowledge provides potential or actual violators of the United States' national security laws a means of deflection or avoidance of lawful regulations.  Disclosure will allow countermeasures to be implemented, making future operations more difficult, or compromise other ongoing planned intelligence operations.  Accordingly, the release of the file number could lead to the exposure of the actual intelligence activity or method utilized in FBI investigations, and can reasonably be expected to cause serious damage (Secret) to national security.  The file number is properly classified at the  "Secret" level and withheld pursuant to E.O. 13526, § 1.4 (c), and is exempt from disclosure pursuant to Exemption (b)(1).

## FOREIGN RELATIONS OR FOREIGN ACTIVITIES

(35)    E.O. 13526, § 1.4 (d), exempts foreign relations or foreign activities of the United States, including confidential sources.  The classified information withheld on GRAFF-69 contains sensitive intelligence information gathered by the United States either about or from a foreign country.  This condition exists due in part to the delicate nature of international diplomacy.  This information must be handled with care so as not to jeopardize the fragile relationships that exist among the United States and certain foreign governments.

(36)    The unauthorized disclosure of information concerning foreign relations or foreign activities of the United States can reasonably be expected to lead to diplomatic or economic retaliation against the United States; identify the target, scope, or time frame of intelligence activities of the United States in or about a foreign country, which may result in the curtailment or cessation of these activities; enable hostile entities to assess United States intelligence gathering activities in or about a foreign country and devise countermeasures against these activities; or compromise cooperative foreign sources which may jeopardize their safety

17

and curtail the flow of information from these sources. Thus, the foreign relations or foreign

activities which are withheld by the FBI are properly classified in accordance with E.O. 13526, §

1.4 (d) and exempt from disclosure pursuant to Exemption 1.

## DEFENDANT'S BURDEN OF ESTABLISHING EXEMPTION (b)(1) CLAIMS

(37)     The information withheld in this case pursuant to Exemption 1 was examined in

light of the body of information available to me concerning the national defense and foreign

relations of the United States. This information was not examined in isolation. Instead, each

piece of information was evaluated with careful consideration given to the impact that disclosure

of this information will have on other sensitive information contained elsewhere in the United

States intelligence community's files. Equal consideration was given to the impact that other

information either in the public domain or likely known or suspected by present or potential

adversaries of the United States, would have upon the information I examined.

(38)     In those instances where, in my judgment, the disclosure of this information

could reasonably be expected to cause serious damage to the national security, and its

withholding outweighed the benefit of disclosure, I exercised my prerogative as an original

classification authority and designated that information as classified in the interest of national

security, and invoked Exemption 1 of the FOIA to prevent disclosure. Likewise, the

justifications for the withheld classified information were prepared with the intent that they be

read with consideration given to the context in which the classified information is found. This

context includes not only the surrounding unclassified information, but also other information

already in the public domain, as well as information likely known or suspected by other hostile

intelligence entities. It is my judgment that any greater specificity in the descriptions and

justifications set forth with respect to information relating to foreign government relations or

18

foreign activities and intelligence sources and methods of the United States could reasonably be

expected to jeopardize the national security of the United States.

## EXEMPTION (b)(2)
## INTERNAL AGENCY RULES AND PRACTICES

(39)    5 U.S.C. § 552 (b)(2) exempts from disclosure information:
        related solely to the internal personnel rules and practices of an agency." This
        exemption encompasses two distinct categories of records that are internal in
        nature:  those involving trivial administrative matters of no genuine public interest
        ("Low" 2), and those more substantial in nature, the disclosure of which would
        risk circumvention of a statute or regulation ("High" 2).  The FBI has invoked
        Exemption 2 (High) for internal telephone numbers of FBI personnel, confidential
        source symbol numbers of FBI sources, and confidential informant file numbers
        of permanent confidential symbol number sources of the FBI.

### (b)(2)-1        Internal telephone numbers of FBI personnel

(40)    Exemption (b)(2)-1 ("High") has been asserted to protect internal telephone

numbers of FBI personnel.  Telephone numbers are used by FBI personnel on a routine basis

while they are working on significant national security and criminal investigations.  Disclosure of

these telephone numbers could subject these individuals to harassing telephone calls which could

disrupt official business (including by impeding the ability of Special Agents to conduct and

conclude functions related to the law enforcement investigations in a timely manner).  Release of

this information would reveal vulnerable internal information and impede the effective use of

such an internal system.  For example, release of this information may result in a flood of voice

mails which can cripple and disable an FBI employee's voice mail box and telephone.

Accordingly, because disclosure of these internal telephone numbers could impede the FBI's

effectiveness and may risk circumvention of the law, the FBI has properly withheld this

information pursuant to Exemption (b)(2), cited at times with Exemptions (b)(6)-1 and

(b)(7)(C)-1, on the following pages: GRAFF-85 and 96.

### (b)(2)-2      Confidential source symbol numbers

(41)     Exemption (b)(2)-2 ("High") has been asserted in conjunction with (b)(7)(D)-1 to protect the permanent source symbol numbers of FBI sources. Permanent symbol numbers are assigned to confidential informants who report information to the FBI on a regular basis pursuant to an "express" grant of confidentiality. The symbol number is used as an administrative reporting tool to protect the actual, sensitive identity of an informant in documents generated by the FBI. A symbol number consists of a two-letter abbreviation which identifies the particular FBI field office where the symbol-numbered source is operating or has operated, followed by a sequentially assigned number. For example, using a fictitious symbol number, "NY 1234" for informant "JOHN DOE," the two letter abbreviation "NY" reveals that this is a source of the New York Field Office and the source is the 1,234th symbol-numbered source of that office. The symbol number would be used in all written reports in which JOHN DOE provided information to the FBI. Therefore, every time NY 1234 was released, the reader of the document would know that the source behind the symbol number was the same individual reporting. Thus, every time NY 1234 was used by the FBI in a record, the number would always refer to JOHN DOE and potentially reveal his identity.

(42)     Release of these source symbol numbers would indicate both the scope and location of FBI informant coverage within a particular geographic area. If a particular symbol number such as NY 1234 is released to the public at repeated times and in various documents, the identity of the source could be determined. Each release of information in which the symbol number is disclosed reveals connections to dates, times, places, events and names from which the source's identity could be deduced. A person familiar with the facts being reported by JOHN DOE could easily identify NY 1234's identity as being JOHN DOE given enough instances in which NY 1234 provided information to the FBI. Releasing the symbol number, along with

information provided by the source from the source's personal perspective concerning the matters being investigated by the FBI, would allow an individual with knowledge of such matters to extrapolate the source's true identity. This is especially true given the fact that regardless of the law enforcement investigative file in which the symbol number appears, NY 1234 would always be the symbol number used to protect the true identity of informant JOHN DOE. Thus, a confidential source symbol number is protected under FOIA Exemption (b)(2) since it is an internal administrative tool used by the FBI to protect informants' identities. The protection of these identifiers is essential to maintaining the integrity of the FBI's confidential source program where release could endanger the lives of informants or discourage cooperation by confidential sources. Accordingly, because these source symbol numbers are related solely to the FBI's internal practices, and because disclosure would impede the FBI's effectiveness, and may risk circumvention of the law, the FBI withheld this information pursuant to Exemption (b)(2)-2, cited in conjunction with (b)(7)(D)-1 on the following pages: GRAFF-56, 59, 68-69, and 85.

### (b)(2)-3        Confidential source file numbers

(43)    Exemption (b)(2)-3 ("High") has been asserted in conjunction with (b)(7)(D)-2, to protect informant file numbers of permanent confidential symbol number sources of the FBI. Similar in usage to the confidential source symbol numbers, these confidential source file numbers are also assigned in sequential order to confidential informants who report information to the FBI on a regular basis pursuant to an express assurance of confidentiality. The confidential source file is unique to the particular confidential informant and is used only in documentation relating to that particular informant. In this instance, confidential source file numbers were used to document information provided by various sources.

(44)    Disclosure of confidential source file numbers at various times and in various documents could ultimately identify these sources since it would reveal the connections of

confidential informants to the information provided by them. Repeated release of confidential source file numbers along with the information provided by these confidential informants would narrow the possibilities of their true identities. This is especially true since each confidential source file number is assigned to only one confidential informant.

(45)    The disclosure of the identity of these confidential sources would have a chilling effect on the activities and cooperation of other FBI confidential informants. It is only with the understanding of complete confidentiality that the aid of such informants can be enlisted, and only through this assurance of confidentiality that these informants can be persuaded to continue their assistance in providing information to the FBI in the future. Accordingly, the disclosure of these confidential source file numbers could reasonably be expected to identify permanent confidential sources of the FBI, thereby impeding the FBI's effectiveness and risking circumvention of the law. Therefore, this information has been appropriately protected from disclosure pursuant to Exemption (b)(2)-3, cited in conjunction with (b)(7)(D)-2 on the following page: GRAFF-55.

## EXEMPTION (b)(5)
## PRIVILEGED INFORMATION

(46)    Exemption 5 allows the FBI to protect information contained in "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." This exemption has been construed to exempt those documents or information normally privileged in the civil discovery context, including, as is the case here, the attorney-client privilege. Generally, the attorney-client privilege protects confidential communications between an attorney and their client relating to a legal matter for which the client has sought professional advice. This privilege encompasses any opinions given by an attorney to their client based upon and reflecting those facts, as well as communications

22

between attorneys that reflect client-supplied information.

### (b)(5)-1        Attorney-Client Privilege

(47)    Exemption (b)(5)-1 has been asserted to protect material covered by the attorney-client privilege.  The attorney-client privilege is appropriately asserted when legal advice of any kind is sought from a professional legal adviser in his or her capacity as such and the communications relating to that purpose are made in confidence by the client.  The communications are permanently protected from disclosure by the client or by the legal adviser unless the attorney-client protection is waived.  This privilege encompasses confidential communications made to the attorney not only by decision-making personnel but also by lower-echelon employees who possess information relevant to an attorney's advice-rendering function.  Disclosure of the two-way communications between FBI attorneys and their clients would impede the full disclosure of all of the information that relates to the client's reasons for seeking legal advice, which is necessary if the professional mission is to be accomplished.

(48)    Exemption (b)(5)-1 has been applied to correspondence between the FBI's Legal Counsel and the Assistant Attorney General (Criminal Division) regarding the legal strategies to be used during the prosecution of Manuel Noriega.  Exemption (b)(5)-1 has been asserted on the following pages: 48-51 and 95-96.

(49)    The correspondence was prepared for and contains responses intended for review by legal counsel.  This document merits protection under the attorney-client privilege because it evidences legal advice sought and provided.

(50)    The FBI's correspondence discussed above contains information being presented to attorneys for consultation or attorneys' opinions on legal strategies concerning the prosecution of Manuel Noriega.  The attorney-client privilege has not been waived, and as a result, the FBI properly withheld this information pursuant to (b)(5)-1.

## EXEMPTION (b)(7)
## THRESHOLD

(51)     Exemption 7 of the FOIA protects from mandatory disclosure records or information compiled for law enforcement purposes, but only to the extent that disclosure could reasonably be expected to cause one of the harms enumerated in the subparts of the exemption. See 5 U.S.C. § 552(b)(7).  In this case, the harm that could reasonably be expected to result from disclosure concerns invasion of personal privacy and revealing the identity of confidential sources and information provided by them.  Before an agency can invoke any of the harms enumerated in Exemption 7, it must first demonstrate that the records or information at issue were compiled for law enforcement purposes.  Law enforcement agencies such as the FBI must demonstrate that the records at issue are related to the enforcement of federal laws and that the enforcement activity is within the law enforcement duty of that agency.  The records at issue in Count Four were compiled for criminal law enforcement purposes during the course of the FBI's performance of its law enforcement mission, including the investigation of criminal activities by Manuel Noriega and others.  Specifically, the FBI's investigation focused on violations of Title 18 and 21 -- racketeering activity in violation of the RICO statutes; conspiracy to import and distribute cocaine; manufacture of cocaine; and interstate travel or foreign commerce to promote an unlawful enterprise.  Additionally, the records at issue in Count Five concern Fawaz Younis and the investigation into 18 U.S.C. §1203, the hostage taking of a Jordanian passenger aircraft.

(52)     Because the records clearly meet the Exemption 7 threshold, the remaining inquiry is whether their disclosure could reasonably be expected to constitute an unwarranted invasion of personal privacy and could reveal the identity of confidential sources.

## EXEMPTIONS (b)(6) AND (b)(7)(C)
## CLEARLY UNWARRANTED AND UNWARRANTED
## INVASION OF PERSONAL PRIVACY

(53)   5 U.S.C. § 552(b)(6) exempts from disclosure:

"personnel and medical files and similar files" when the disclosure of
such information would constitute a clearly unwarranted invasion of
personal privacy.

(54)   Similarly, 5 U.S.C. § 552 (b)(7)(C) exempts from disclosure:
records or information compiled for law enforcement purposes, but only to
the extent that the production of such law enforcement records or
information . . . could reasonably be expected to constitute an unwarranted
invasion of personal privacy.[10]

(55)   When withholding information pursuant to these two exemptions, the FBI is

required to balance the privacy interests of the individuals mentioned in these records against any

public interest in disclosure.  In asserting these exemptions, each piece of information was

scrutinized to determine the nature and strength of the privacy interest of any individual whose

name and/or identifying information appears in the documents at issue.[11]  When withholding the

---

[10]  The practice of the FBI is to assert Exemption (b)(6) in conjunction with (b)(7)(C).
Although the balancing test for (b)(6) uses a "would constitute a clearly unwarranted invasion of
personal privacy" and the test for (b)(7)(C) uses the lower standard of "could reasonably be
expected to constitute an unwarranted invasion of personal privacy," the analysis and balancing
required by both exemptions is sufficiently similar to warrant a consolidated discussion.  The
privacy interests are balanced against the public's interest in disclosure under the analysis of both
exemptions.

[11]  The FBI has taken several steps to ascertain the current life/death status of the
individuals whose names are withheld.  The FBI uses the birth date and/or the date of the
investigation to determine whether an individual is living or deceased, to the extent either or both
of these pieces of information are discernable from the file.  The date of birth is used to apply the
judicially-recognized "100-year rule," *i.e.*, if the individual was born more than 100 years ago,
the FBI presumes that he or she is dead and the name is released.  The FBI also uses institutional
knowledge gained from prior FOIA requests or internal records. By using institutional
knowledge, the FBI can identify with sufficient certainty the life/death status of certain
individuals.  If the FBI is unable to determine the life/death status of an individual through the
use of these methods, the name of the individual is withheld pursuant to Exemptions (b)(6) and

information, the individual's privacy interest was balanced against the public's interest in disclosure. In making this analysis, the public interest in the information was determined to be information which would shed light on the FBI's performance of its mission to protect and defend the United States against terrorist and foreign intelligence threats, to uphold and enforce the criminal laws of the United States, and to provide leadership and criminal justice services to federal, state, municipal, and international agencies and partners. In each instance where information was withheld pursuant to Exemptions (b)(6) and (b)(7)(C), the FBI determined that the individuals' privacy interests were not outweighed by any public interest in disclosure. Every effort has been made to release all segregable information contained in these records without invading the privacy interests of these individuals.[12]

### (b)(6)-1 and (b)(7)(C)-1     Names and/or identifying information of FBI Special Agents and support personnel

(56)    Exemptions (b)(6)-1 and (b)(7)(C)-1 have been asserted to protect the names and identifying information of FBI Special Agents who are responsible for conducting, supervising, and/or maintaining the investigative activities reported in the records responsive to plaintiff's request. The FBI Special Agents who investigated the case have privacy interests in avoiding publicity, adverse or otherwise, regarding any particular investigation that may seriously impair their effectiveness in conducting future investigations. Moreover, FBI Special Agents conduct

---

(b)(7)(C), as disclosure would constitute an unwarranted invasion of those individuals' privacy and no public interest would be served in releasing the names. It is also the FBI's policy to release all names of high-ranking FBI officials in policy-making positions, as well as individuals in public positions, as they do not have privacy rights while acting in their official capacity. This policy is applied to the individual's position at the time of the document, and not the present.

[12] Count Five - on July 14, 2010, the FBI released 1 DVD and 134 pages of public source material to plaintiff concerning Fawaz Younis. The FBI advised plaintiff that additional potentially responsive material contained personal information about other third party individuals and was exempt from disclosure without a privacy waiver pursuant to privacy Exemptions (b)(6) and (b)(7)(C).

official inquiries into violations of various criminal statutes, as well as counter-terrorism and national security investigations. They come into contact with all strata of society and conduct searches and make arrests, both of which result in reasonable, but nonetheless serious disturbances in the lives of individuals. It is possible for a person targeted by such law enforcement action to carry a grudge which may last for years, and to seek revenge on the Special Agents involved in the investigation. The publicity associated with the release of the identity of an FBI Special Agent in connection with a particular investigation could trigger hostility toward the Special Agent by such persons. Finally, privacy considerations protect FBI Special Agents from unnecessary, unofficial questioning as to the conduct of an investigation, whether or not they are currently employed by the FBI.

(57)    The names of FBI support personnel have also been withheld pursuant to Exemptions (b)(6)-1 and (b)(7)(C)-1. Support personnel are assigned to handle tasks relating to FBI investigations. These individuals are in positions to access information concerning official law enforcement, counter-terrorism and national security investigations. They could therefore become targets of harassing inquiries for unauthorized access to FBI investigations if their identities were released. Accordingly, FBI support personnel have personal privacy interests in the non-disclosure of their names which are associated with the investigation in this case.

(58)    The FBI examined the records containing the names and/or identifying information of FBI Special Agents and support personnel to determine whether there was any public interest that outweighs the substantial privacy interests in the responsive records. The FBI could not identify any discernible public interest. In particular, the FBI could not determine how the disclosure of the names and identifying information of the FBI Special Agents and support personnel would shed any light on the operations and activities of the FBI. Thus, the FBI determined that the privacy interests of the Special Agents and support personnel in protecting

27

their names and identifying information from disclosure outweighed any public interest in

disclosure, and that disclosure of the names and identifying information of the FBI Special

Agents and support personnel would constitute a clearly unwarranted and unwarranted invasion

of personal privacy.  Accordingly, the FBI has properly withheld this information pursuant to

Exemptions (b)(6)-1 and (b)(7)(C)-1 on the following pages: GRAFF-1, 11, 28, 41, 51, 55-56,

68-69, 72-73, 85, and 96.

### (b)(6)-2 and (b)(7)(C)-2      Names and/or identifying information of third parties of investigative interest to the FBI

(59)    Exemptions (b)(6)-2 and (b)(7)(C)-2 have been asserted to protect the names,

aliases and identifying information of third party individuals who are of investigative interest to

the FBI and/or other law enforcement agencies.  Being linked with any law enforcement

investigation carries a strong negative connotation and a stigma.  To release the identities of

these individuals to the public could subject them to harassment or embarrassment, as well as

undue public attention.  Accordingly, the FBI has determined that these individuals maintain a

substantial privacy interest in not having their identities disclosed.  In making a determination

whether to release the names and personal information concerning these third parties, the public's

interest in disclosure was balanced against the individual's right to privacy.  It was determined

that this information would not enlighten the public on how the FBI conducts its internal

operations and investigations.  Accordingly, the FBI concluded that the disclosure of this

information would constitute a clearly unwarranted and unwarranted invasion of their personal

privacy.  Thus, the FBI has properly asserted Exemptions (b)(6)-2 and (b)(7)(C)-2 to withhold

this information on the following pages: GRAFF-48, 61, 62-66, 69-70, 73-80, and 82-84.

**(b)(6)-3 and (b)(7)(C)-3**      **Names and/or identifying information of third parties merely mentioned in FBI investigative records**

(60)    Exemptions (b)(6)-3 and (b)(7)(C)-3 have been asserted to withhold the names and identifying information of third parties merely mentioned in the records responsive to plaintiff's request.  During the course of the FBI's investigation into the activities of Manuel Noriega and others, the FBI interviewed third parties.  During these interviews, the names of third parties not of investigative interest to the FBI were mentioned.  To release these third party names and/or identifying information about them, without authorizations permitting such release, violates the privacy interests of these individuals.  If the FBI disclosed their names and other personal information, the disclosure would reveal that these third parties were connected with the FBI's investigations into the activities of Manuel Noriega and others.  Disclosure of the identities of third parties merely mentioned in the FBI files in this case could subject these third parties to possible harassment or criticism and focus derogatory inferences and suspicion on them.

(61)    In light of the significant personal privacy interest of third parties merely mentioned in the investigative files concerning Manuel Noriega and others, the FBI examined the records to determine whether there was any outweighing public interest.  The FBI could not identify any discernible public interest.  In particular, the FBI could not determine how the disclosure of the names, and/or identifying information of these individuals merely mentioned in the FBI's files would shed any light on the internal operations and activities of the FBI.  Thus, the FBI determined that the privacy interests of these individuals outweighed any public interest in disclosure, and that disclosure of the names and/or identifying information of the third parties merely mentioned would constitute a clearly unwarranted and unwarranted invasion of privacy.  Accordingly, the FBI has properly withheld this information pursuant to Exemptions (b)(6)-3 and (b)(7)(C)-3 on the following pages: GRAFF-1-47, 61-66, 69-70, 75-85, 87, 89-93, and 96.

### (b)(6)-4 and (b)(7)(C)-4     Names and/or identifying information of third parties who provided information to the FBI

(62)     Exemptions (b)(6)-4 and (b)(7)(C)-4 have been asserted to withhold the names and/or identifying information of third parties who provided information to the FBI in the records responsive to plaintiff's request.  Disclosure of the identities of third parties, without authorization permitting such release, violates the privacy interest of the individuals.  If the FBI disclosed their names, the disclosure would reveal that the third parties were connected with the FBI's investigation.  Disclosure of the identities of third parties who provided information to the FBI could subject the individuals to possible harassment or criticism and focus derogatory inferences and suspicion on them.

(63)     The FBI next examined the records at issue to determine whether there was any public interest that outweighed the substantial privacy interests of third parties who provided information to the FBI.  The FBI could not identify any discernible public interest.  In particular, the FBI could not determine how the disclosure of the names of third parties would shed any light on the operations and activities of the FBI.  Thus, the FBI determined that the third parties' privacy interests outweighed any public interest in disclosure, and that disclosure of the names of third parties would constitute a clearly unwarranted and unwarranted invasion of privacy.  Accordingly, the FBI has properly withheld this information pursuant to Exemptions (b)(6)-4 and (b)(7)(C)-4, cited at times in conjunction with Exemptions (b)(7)(D)-3 or (b)(7)(D)-4 on the following pages: GRAFF-1-47, 59, 61, 76, and 85.

### (b)(6)-5 and (b)(7)(C)-5     Names and/or identifying information concerning non-FBI federal government personnel

(64)     FOIA Exemptions (b)(6)-5 and (b)(7)(C)-5 have been asserted to withhold the names and/or identifying information of non-FBI federal government personnel who provided information to or otherwise assisted the FBI with its investigation into the criminal activities of

Manuel Noriega and others.  These non-FBI federal government employees who assisted the FBI

are the Drug Enforcement Agency, Assistant United States Attorney's Office, and Special

Counsel to the Assistant Attorney General's Office.  Publicity, adverse or otherwise, concerning

the investigative participation of these other agency employees in any particular FBI

investigation would seriously impair their effectiveness in assisting or participating in future FBI

investigations.  The privacy consideration also protects these individuals from unnecessary,

unofficial questioning as to these FBI investigations.  It is possible for a person targeted by such

law enforcement action to carry a grudge which may last for years, and to seek revenge on the

personnel involved in the criminal investigations contained in these FBI records.  The publicity

associated with the release of their names and/or identifying information in connection with a

particular investigation could trigger hostility toward them by such persons.  There is no

legitimate public interest to be served in the disclosure of the names and/or identifying

information of non-FBI federal government employees in FBI investigative records.  The

rationale for protecting the identities of the personnel of non-FBI federal government agencies is

identical to the rationale for protecting the identities of FBI SAs and support personnel.

(65)   The FBI next examined the records at issue to determine whether there was any

public interest that outweighed the substantial privacy interests of these personnel of non-FBI

federal government agencies.  The FBI could not identify any discernible public interest in that

the disclosure of the names and/or identifying information of these employees would not

demonstrate how the FBI performed its statutory duties during the criminal investigation of

Manuel Noriega and others.  The disclosure of this identifying information would constitute a

clearly unwarranted and unwarranted invasion of their personal privacy.  Accordingly, the FBI

has properly withheld this information pursuant to FOIA Exemptions (b)(6)-5 and (b)(7)(C)-5 on

the following pages: GRAFF-48-51, 73, and 95.

31

## EXEMPTION (b)(7)(D)
## CONFIDENTIAL SOURCE MATERIAL

(66)   5 U.S.C. § 552 (b)(7)(D) provides protection for:

> records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to disclose the identity of a confidential source, including a State, local or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source.

(67)   Numerous informants report to the FBI on a regular basis and are informants in the common meaning of the term. Some of the sources provide information under an express assurance of confidentiality. Further, during the course of an investigation, other individuals are interviewed under circumstances from which an assurance of confidentiality can reasonably be inferred. These individuals are considered to be confidential informants or sources since they furnish information only with the understanding that their identities and the information provided will not be divulged outside the FBI. Information provided by these individuals is singular in nature, and if released, could reveal their identities.

(68)   During the course of the FBI's investigation, FBI Special Agents sought the assistance of numerous individuals in obtaining information to aid their investigation. Information was provided by certain third parties under an implied grant of confidentiality and by other third parties who provided information under an expressed assurance of confidentiality.

(69)   These individuals were placed directly in positions that could subject them to acts of reprisal, harassment, or an unnecessary amount of public attention if the FBI disclosed their cooperation. The FBI has learned through experience that individuals who provide information

32

about subjects under investigation must be free to do so without fear of reprisal should their

identities or information they provided be disclosed outside their confidential relationship with

the FBI. Individuals who provide investigative information must be free to furnish that

information with complete candor and without the understandable tendency to hedge or withhold

information out of fear that their names or their cooperation with the FBI will later be made

public. Those who provide information in these investigations must be secure in the knowledge

that their assistance and their identities will be held in confidence.

### (b)(7)(D)-1   Confidential source symbol numbers

(70)   FOIA Exemption (b)(7)(D)-1 has been asserted in conjunction with FOIA

Exemption (b)(2)-2 to exempt from disclosure the permanent source symbol numbers of

confidential sources of the FBI. The FBI assigns permanent source symbol numbers in

sequential order to confidential informants who report information to the FBI on a regular basis

pursuant to an express assurance of confidentiality. In this case, the FBI did not refer to the

confidential sources by their true names. Instead, the sources were referred to only by their

individually assigned permanent source symbol numbers. The FBI obtained information from

these confidential sources regarding the criminal activities of Manuel Noriega and others.

(71)   If the FBI disclosed the confidential source symbol numbers of these informants,

their identities could be ascertained by persons knowledgeable of the FBI investigation of

Manuel Noriega and others. Furthermore, if the FBI disclosed their identities, the informants, as

well as their families, could be subjected to embarrassment, humiliation, and/or physical or

mental harm. Disclosure of source symbol numbers at various times and in various documents

could identify these confidential FBI sources because such disclosures would reveal the

connections of these confidential informants to the subject matters of these documents. Repeated release of these confidential source symbol numbers along with the information provided by these confidential sources would narrow the possibilities of their true identities. This is especially true inasmuch as each confidential source symbol number is assigned to only one confidential informant.

(72)    Moreover, the disclosure of these confidential informants' identities would have a chilling effect on the activities and cooperation of other FBI confidential informants. The FBI has found that it is only with the understanding of complete confidentiality that the aid of such informants can be enlisted, and only through this confidence that these informants can be persuaded to continue providing valuable assistance in the future. Accordingly, since these source symbol numbers are related solely to the FBI's internal practices and their disclosure would not serve any public interest, and because the disclosure of these source symbol numbers could reasonably be expected to disclose the identities of FBI confidential sources. Accordingly, the FBI properly withheld this information pursuant to FOIA Exemption (b)(7)(D)-1, which has been cited in conjunction with (b)(2)-2 on the following pages: GRAFF-56, 59, 68-69, and 85.

### (b)(7)(D)-2            Confidential source file numbers

(73)    Exemption (b)(7)(D)-2 has been asserted in conjunction with (b)(2)-3, to protect informant file numbers of permanent confidential symbol number sources of the FBI. Similar in usage to the confidential source symbol numbers, these confidential source file numbers are also assigned in sequential order to confidential informants who report information to the FBI on a regular basis pursuant to an express assurance of confidentiality. The confidential source file is unique to the particular confidential informant and is used only in documentation relating to that

34

particular informant. In this instance, confidential source file numbers were used to document information provided by various sources.

(74)    Disclosure of confidential source file numbers at various times and in various documents could ultimately identify these sources since it would reveal the connections of confidential informants to the information provided by them. Repeated release of confidential source file numbers along with the information provided by these confidential informants would narrow the possibilities of their true identities. This is especially true since each confidential source file number is assigned to only one confidential informant.

(75)    The disclosure of the identity of these confidential sources would have a chilling effect on the activities and cooperation of other FBI confidential informants. It is only with the understanding of complete confidentiality that the aid of such informants can be enlisted, and only through this assurance of confidentiality that these informants can be persuaded to continue their assistance in providing information to the FBI in the future. Accordingly, the disclosure of these confidential source file numbers could reasonably be expected to identify permanent confidential sources of the FBI. Therefore, this information has been appropriately protected from disclosure pursuant to Exemption (b)(7)(D)-2, cited in conjunction with (b)(2)-3 on the following page: GRAFF-55.

### (b)(7)(D)-3    Information provided by confidential source symbol numbered informants under express assurances of confidentiality

(76)    FOIA Exemption (b)(7)(D)-3 has been asserted to exempt from disclosure certain identifying information concerning confidential symbol number sources of the FBI who reported information to the FBI on a regular basis under express assurances of confidentiality. This identifying information concerns the particular investigative matters and individuals in which

these confidential symbol number sources reported information to the FBI.   Informant symbol

numbers are not assigned to all informants of the FBI.   They are only assigned to informants who

have been developed, instructed, closely monitored and, in many cases, paid for their services.

Symbol numbered informants often work their way into criminal organizations and into the

confidences of subjects of FBI criminal investigations.   They become privy to the latest

information about the activities of subjects under investigation and are often the recipients of

sensitive, confidential disclosures by subjects of investigations.   These informants report

information to the FBI on a regular basis under strictly controlled and confidential circumstances

pursuant to an express assurance of confidentiality.   Given the sensitive and singular nature of

the information provided by such sources, any information provided by them to the FBI which

could ultimately identify them was exempted.

(77)   Source symbol numbers and confidential source file numbers are assigned in

sequential order to confidential informants.   These sources are not referred to by name in any FBI

document which records the information the sources have furnished.   The reference in an FBI

document to a confidential source by source symbol number rather than by name is designed to

protect the true identity of the sources who provide information in the course of an FBI

investigation.   These precautions against the disclosure of the identities of confidential sources

are observed because of the sensitive nature of the information provided by such sources and the

possibility of harm to these sources and their families if their identities were revealed.

(78)   The release of the identity of a confidential symbol number source to the public

would result in the FBI's inability to use that source in the future.   In addition, the revelation of

one confidential source's identity has a chilling effect on the activities and cooperation of other

36

sources. It is only with the understanding of complete confidentiality that the aid of such sources

can be enlisted, and only through this confidence that these sources can be persuaded to continue

providing valuable assistance in the future. The FBI could not identify any legitimate public

interest in release of this identifying information since it would not shed any light on the

operations and activities of the FBI in these criminal investigations of plaintiff and other

individuals. Accordingly, since the disclosure of this information could reasonably be expected

to disclose the identities of permanent confidential symbol number sources of the FBI.

Accordingly, the FBI has properly withheld this information pursuant to FOIA Exemption

(b)(7)(D)-3 on the following pages: GRAFF-56-57, 62, 66, 69-70, and 74-85.

<u>**(b)(7)(D)-4**</u>         <u>**Names and /or identifying information of individual who**</u>
<u>**provided information to and cooperated with the FBI under**</u>
<u>**implied assurances of confidentiality**</u>

(79)    Exemption (b)(7)(D)-4 has been asserted at times in conjunction with Exemptions

(b)(6)-4 and (b)(7)(C)-4 to protect the names, identifying information for, and information

provided by third parties under implied grants of confidentiality. These third parties provided

information concerning the criminal activities of Manuel Noriega or other subjects who were of

interest to the FBI or other law enforcement agencies. These third party sources provided

specific detailed information that is singular in nature concerning the criminal activities

involving Manuel Noriega, his associates, and/or other subjects of the FBI's investigation. The

disclosure of the identities of these individuals and/or the information they provided could have

disastrous consequences because disclosure could subject these third parties, as well as their

families, to embarrassment, humiliation, and/or physical or mental harm. These third parties

provided information of value to the FBI concerning its investigation, and in doing so, have

37

placed themselves in harm's way should Manuel Noriega or his associates become aware of their cooperation with the FBI. Under these circumstances, the third parties had reason to believe that their identities and the information they provided would not be revealed by the FBI pursuant to FOIA or Privacy Act requests. Thus, the FBI implicitly granted these third parties assurances of confidentiality, and the information the third parties provided as well as their identities were properly withheld pursuant to FOIA Exemption (b)(7)(D)-4. Exemption (b)(7)(D)-4 has been cited in conjunction with Exemption (b)(6)-4 and (b)(7)(C)-4 and is invoked on the following pages: GRAFF-1-47, 59, 61, 76, and 89-93.

## CONCLUSION

(80)     The FBI has carefully examined the documents concerning Counts Four and Five and has determined that all reasonably segregable, non-exempt information has been released to plaintiff.

(81)     The FBI carefully examined the documents and determined that the information withheld from plaintiff in this case, if disclosed, could reasonably be expected to damage national security, impede the effectiveness of the FBI's internal law enforcement procedures, could reveal privileged information, would cause a clearly unwarranted invasion of personal privacy or could reasonably be expected to constitute an unwarranted invasion of personal privacy, and would disclose the identities of confidential sources and the information provided by them. Accordingly, the FBI has released all reasonably segregable, nonexempt information to plaintiff.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct, and that Exhibits A through H attached hereto are true and correct copies.

Executed this ⎽⎽15th⎽⎽ day of November, 2010.


DAVID M. HARDY
Section Chief
Record/Information Dissemination Section
Records Management Division
Federal Bureau of Investigation
Winchester, Virginia

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| BARBARA FEINMAN  and GARRETT M. GRAFF, | ) ) ) |  |
| Plaintiffs, | ) ) |  |
| v. | ) ) | Civ. A. No. 1:09-cv-02047 (ESH) |
| FEDERAL BUREAU OF INVESTIGATION, et al., | ) ) |  |
| Defendants. | ) ) |  |

# EXHIBIT A

# WASHINGTONIAN

1828 L Street, NW, Washington, DC 20036 202-296-3600

FREEDOM OF INFORMATION ACT REQUEST

January 23, 2009

Department of Justice
Criminal Division
Rena Y. Kim
Chief, FOIA/PA Unit
Suite 1127, Keeney Building
950 Pennsylvania Avenue, N.W.
Washington, DC 20530-0001
P: (202) 616-0307 F: (202) 514-6117

Re: Disclosure of documents regarding the prosecution of former Panamanian Gen. Manuel
Noriega

Dear Madam,

This is a request under the Freedom of Information Act for files regarding the investigation,
capture, and prosecution of former Panamanian Gen. Manuel Noriega.

I am requesting copies of any documents or communications, including but not limited to logs,
reports, messages, wires, cables, teletypes, and external or internal memorandums about the
investigation and/or capture of General Noriega, as well as his later prosecution, trial, and
appeals. Specifically, I'm requesting any and all materials relating to the involvement of Robert
S. "Bob" Mueller III, then an official with the U.S. Department of Justice in Washington, DC, in
the Noriega investigation, capture, prosecution, trial, and appeals. This request should include the
period from June 1989 to June 1993, inclusive.

As a member of the news media, and considering that this request is made in the public interest, I
am hereby requesting a waiver of all associated fees. Disclosure of the requested information to
me is in the public interest because it is likely to contribute significantly to public understanding
of the operations or activities of the government and is not primarily in my commercial interest.

If you deny any part of this request, please cite each specific reason that you think justifies your
refusal to release the information and notify me of appeal procedures available to me under the
law.

Sincerely,

Garrett M. Graff
Editor at Large, Washingtonian Magazine
ggraff@washingtonian.com
Phone: (202) 862-3503

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| BARBARA FEINMAN and GARRETT M. GRAFF, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civ. A. No. 1:09-cv-02047 (ESH) |
| FEDERAL BUREAU OF INVESTIGATION, et al., | ) ) ) | |
| Defendants. | ) ) | |

# EXHIBIT B





**U.S. Department of Justice**

**Federal Bureau of Investigation**

*Washington, D.C. 20535*

August 23, 2010

MR. GARRETT GRAFF
WASHINGTONIAN
1828 L STREET, NORTHWEST
WASHINGTON, DC 20036

Request No.: 1148215- 000
Subject: NORIEGA, MANUEL (GENERAL)

Dear Mr. Graff:

While processing your Freedom of Information-Privacy Acts (FOIPA) request, the **Department of Justice, Criminal Division** located FBI information in their records. This material was referred to the FBI for direct response to you.

Enclosed are copies of the referred material. Deletions have been made pursuant to Title 5, United States Code, Section(s) 552/552a as noted below. See the enclosed form for an explanation of these exemptions.

| Section 552 | | Section 552a |
|---|---|---|
| ☐(b)(1) | ☐(b)(7)(A) | ☐(d)(5) |
| ☐(b)(2) | ☐(b)(7)(B) | ☐(j)(2) |
| ☐(b)(3)_____ | ☒(b)(7)(C) | ☐(k)(1) |
| _____ | ☒(b)(7)(D) | ☐(k)(2) |
| _____ | ☐(b)(7)(E) | ☐(k)(3) |
| _____ | ☐(b)(7)(F) | ☐(k)(4) |
| ☐(b)(4) | ☐(b)(8) | ☐(k)(5) |
| ☐(b)(5) | ☐(b)(9) | ☐(k)(6) |
| ☒(b)(6) | | ☐(k)(7) |

**47 pages** were reviewed and **47 pages** are being released.

You have the right to appeal any denials in this release. Appeals should be directed in writing to the Director, Office of Information Policy (OIP), U.S. Department of Justice, 1425 New York Ave., NW, Suite 11050, Washington, D.C., 20530-0001. Your appeal must be received by OIP within sixty (60) days from the date of this letter in order to be considered timely. The envelope and the letter should be clearly marked "Freedom of Information Appeal." Please cite the FOIPA Request Number assigned to your request so that it may be easily identified.

Sincerely yours,

David M. Hardy
Section Chief,
Record/Information
  Dissemination Section
Records Management Division



**U.S. Department of Justice**

**Federal Bureau of Investigation**

*Washington, D.C. 20535*
November 10, 2010

MR. GARRETT GRAFF
WASHINGTONIAN MAGAZINE
1828 L STREET, NW
WASHINGTON, DC 20036

Request No.: 1153314- 000
Subject: NORIEGA, MANUEL

Dear Mr. Graff:

While processing your Freedom of Information-Privacy Acts (FOIPA) request, the **U.S. Department of Justice, Criminal Division, Office of Enforcement Operations** located FBI information in their records. This material was referred to the FBI for direct response to you.

Enclosed are copies of the referred material. Deletions have been made pursuant to Title 5, United States Code, Section(s) 552/552a as noted below. See the enclosed form for an explanation of these exemptions.

| Section 552 | | Section 552a |
|---|---|---|
| ☒(b)(1) | ☐(b)(7)(A) | ☐(d)(5) |
| ☒(b)(2) | ☐(b)(7)(B) | ☐(j)(2) |
| ☐(b)(3)_____ | ☒(b)(7)(C) | ☐(k)(1) |
| _____ | ☒(b)(7)(D) | ☐(k)(2) |
| _____ | ☐(b)(7)(E) | ☐(k)(3) |
| _____ | ☐(b)(7)(F) | ☐(k)(4) |
| ☐(b)(4) | ☐(b)(8) | ☐(k)(5) |
| ☒(b)(5) | ☐(b)(9) | ☐(k)(6) |
| ☒(b)(6) | | ☐(k)(7) |

**47** pages were reviewed and **45** pages are being released.

To minimize costs to both you and the FBI, duplicate copies of the same document were not processed.

You have the right to appeal any denials in this release. Appeals should be directed in writing to the Director, Office of Information Policy (OIP), U.S. Department of Justice, 1425 New York Ave., NW, Suite 11050, Washington, D.C., 20530-0001. Your appeal must be received by OIP within sixty (60) days from the date of this letter in order to be considered timely. The envelope and the letter should be clearly marked "Freedom of Information Appeal." Please cite the FOIPA Request Number assigned to your request so that it may be easily identified.

Sincerely yours,

David M. Hardy
Section Chief,
Record/Information
   Dissemination Section
Records Management Division



**U.S. Department of Justice**

**Federal Bureau of Investigation**

*Washington, D.C. 20535*

November 10, 2010

MR. GARRETT M. GRAFF
WASHINGTONIAN MAGAZINE
1828 L STREET, NW
WASHINGTON, DC 20036

Request No.: 1155104- 000
Subject: NORIEGA, MANUEL

Dear Mr. Graff:

While processing your Freedom of Information-Privacy Acts (FOIPA) request, the **U.S. Department of Justice, Criminal Division, Office of Enforcement Operations** located FBI information in their records. This material was referred to the FBI for direct response to you.

Enclosed are copies of the referred material. Deletions have been made pursuant to Title 5, United States Code, Section(s) 552/552a as noted below. See the enclosed form for an explanation of these exemptions.

|  Section 552 |  |  Section 552a |
| --- | --- | --- |
| ☐(b)(1) | ☐(b)(7)(A) | ☐(d)(5) |
| ☒(b)(2) | ☐(b)(7)(B) | ☐(j)(2) |
| ☐(b)(3)_____ | ☒(b)(7)(C) | ☐(k)(1) |
| _____ | ☐(b)(7)(D) | ☐(k)(2) |
| _____ | ☐(b)(7)(E) | ☐(k)(3) |
| _____ | ☐(b)(7)(F) | ☐(k)(4) |
| ☐(b)(4) | ☐(b)(8) | ☐(k)(5) |
| ☒(b)(5) | ☐(b)(9) | ☐(k)(6) |
| ☒(b)(6) |  | ☐(k)(7) |

**2** pages were reviewed and **2** pages are being released.

You have the right to appeal any denials in this release. Appeals should be directed in writing to the Director, Office of Information Policy (OIP), U.S. Department of Justice, 1425 New York Ave., NW, Suite 11050, Washington, D.C., 20530-0001. Your appeal must be received by OIP within sixty (60) days from the date of this letter in order to be considered timely. The envelope and the letter should be clearly marked "Freedom of Information Appeal." Please cite the FOIPA Request Number assigned to your request so that it may be easily identified.

Sincerely yours,

David M. Hardy
Section Chief,
Record/Information
  Dissemination Section
Records Management Division

## EXPLANATION OF EXEMPTIONS

### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552

(b)(1)  (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified to such Executive order;

(b)(2)  related solely to the internal personnel rules and practices of an agency;

(b)(3)  specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute(A)  requires that the matters be withheld from the public in such a manner as to leave no discretion on issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(b)(4)  trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(b)(5)  inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(b)(6)  personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(b)(7)  records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ( A ) could be reasonably be expected to interfere with enforcement proceedings, ( B ) would deprive a person of a right to a fair trial or an impartial adjudication, ( C ) could be reasonably expected to constitute an unwarranted invasion of personal privacy, ( D ) could reasonably be expected to disclose the identity of confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, ( E ) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or ( F ) could reasonably be expected to endanger the life or physical safety of any individual;

(b)(8)  contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(b)(9)  geological and geophysical information and data, including maps, concerning wells.

### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552a

(d)(5)  information compiled in reasonable anticipation of a civil action proceeding;

(j)(2)  material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control,  or reduce crime or apprehend criminals;

(k)(1)  information which is currently and properly classified pursuant to an Executive order in the interest of the national defense or foreign policy, for example, information involving intelligence sources or methods;

(k)(2)  investigatory material compiled for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(3)  material maintained in connection with providing protective services to the President of the United States or any other individual pursuant to the authority of Title 18, United States Code, Section 3056;

(k)(4)  required by statute to be maintained and used solely as statistical records;

(k)(5)  investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(6)  testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government service the release of which would compromise the testing or examination process;

(k)(7)  material used to determine potential for promotion in the armed services, the disclosure of which would reveal the identity of the person who furnished the material pursuant to a promise that his/her identity would be held in confidence.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BARBARA FEINMAN  and )
GARRETT M. GRAFF, )
)
)
Plaintiffs, )
)
v. )   Civ. A. No. 1:09-cv-02047 (ESH)
)
FEDERAL BUREAU OF INVESTIGATION, et al.,)
)
Defendants. )
)

# EXHIBIT C

Apr-08-09  02:34pm    From-Washingtonian Magazine 2028623526         +2028623526              T-212  P.01/03  F-709



# WASHINGTONIAN

1828 L Street, NW, Washington, DC 20036 202-296-3600

**To:** David Hardy

**From:** Garrett Graff, Washingtonian Magazine

**Pages:** 3 incl. cover

**Fax #:** (540) 868 - 4995

**Comments:** FOIA Request    No. 3 of 3

Re: Fawaz Younis



**WASHINGTONIAN**

1828 L Street, NW, Washington, DC 20036 202-296-3600

## FREEDOM OF INFORMATION ACT REQUEST

April 8, 2009

Department of Justice
Federal Bureau of Investigation
David M. Hardy, Chief
Record/Information Dissemination Section
Records Management Division
170 Marcel Drive
Winchester, VA 22602-4843
P: (540) 868-4593/ F: (540) 868-4995

Re: Disclosure of documents regarding the September 1987 rendition of Lebanese skyjacker
Fawaz Younis

Dear Sir,

This is a request under the Freedom of Information Act for files regarding the FBI's investigation
into and role in the 1987 rendition of Royal Jordanian Flight 402 hijacker and Amal Organization
militiaman Fawaz Younis.

I am requesting copies of any documents or communications, including but not limited to logs,
reports, messages, teletypes, wires, cables, and external or internal memorandums about capture
and forced extradition of Younis on September 13, 1987.

This request should include the period from March 1, 1986 to October 4, 1989, inclusive. This
request includes but is not limited to rendition preparations, apprehension and transit, as well as
prosecution preparations for trial in United States District Court. This request should include the
role of the Federal Bureau of Investigation, the Central Intelligence Agency, and the Hostage
Rescue Team in apprehending Younis overseas and bringing him back to the United States to stand
trial.

As a member of the news media, and considering that this request is made in the public interest, I
am hereby requesting a waiver of all associated fees. Disclosure of the requested information to me
is in the public interest because it is likely to contribute significantly to public understanding of the
operations or activities of the government and is not primarily in my commercial interest.

If you deny any part of this request, please cite each specific reason that you think justifies your
refusal to release the information and notify me of appeal procedures available to me under the law.

Sincerely,

Garrett M. Graff
Editor at Large, Washingtonian Magazine
ggraff@washingtonian.com
Phone: (202) 862-3503

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BARBARA FEINMAN  and GARRETT M. GRAFF, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civ. A. No. 1:09-cv-02047 (ESH) ) |
| FEDERAL BUREAU OF INVESTIGATION, et al.,) | ) |
| Defendants. | ) ) |

# EXHIBIT D



U.S. Department of Justice

Federal Bureau of Investigation

*Washington, D.C. 20535*

April 10, 2009

MR. GARRETT M. GRAFF
WASHINGTONIAN
1828 L STREET, NORTHWEST
WASHINGTON, D.C. 20036

FOIPA Request No.: 1128923
Subject: Younis, Fawaz

Dear Mr. Graff:

We are unable to respond to your Freedom of Information/Privacy Acts (FOIPA) request for records maintained by the FBI concerning **Fawaz Younis.**

Before we are able to proceed with responding to your request for records pertaining to another individual(s), we require that you submit either proof of death or a privacy waiver from the subject(s) of your request. Proof of death can be a copy of a death certificate, Social Security Death Index, obituary or another recognized reference source. Death is presumed if the birth date of the subject is more than 100 years ago. Without proof of death or a privacy waiver, the disclosure of third-party information contained in law enforcement records, should they exist, is considered both a clearly unwarranted invasion of privacy pursuant to Exemption (b)(6), 5 U.S.C. § 552 (b)(6), and an unwarranted invasion of personal privacy, pursuant to Exemption (b)(7)(C), 5 U.S.C. § 552 (b)(7)(C).

Enclosed is a Privacy Waiver and Certification of Identity form. You may make additional copies of this form if you are requesting information on more than one individual. The subject of your request should complete this form and then sign it or prepare a document containing the required descriptive data and have it notarized. The original privacy waiver; notarized authorization with the descriptive information and a legible, original signature; or proof of death must be provided to the FBI before an accurate search of our records can be conducted.

This response should not be considered an indication of whether or not records responsive to your request exist in FBI files.

Enclosed for your information is a copy of the FBI File Fact Sheet.

Sincerely yours,

David M. Hardy
Section Chief,
Records Information
 and Dissemination Section
Records Management Division

**ALL ATTACHED CORRESPONDENCE MUST BE RETURNED TO THE FBI WITH THIS LETTER.**

**Privacy Waiver and Certification of Identity**

Full Name: _____

Aliases used: _____

Current Address: _____

_____

_____

Date of Birth: _____  Place of Birth: _____

Social Security Number (optional): _____

(Optional:  Prior addresses, employments, etc., which may assist the FBI in locating the
requested information) _____

_____

      **I hereby waive my right to privacy, and I authorize the FBI to release any and all
information relating to me to :**

                     **(Name, address & phone of attorney or other designee)**

                     _____

                     _____

                     _____

                     _____

      Under penalty of perjury, I hereby declare that I am the person described above and understand that any
falsification of this statement is punishable under the provisions of 18 U.S.C. § 1001 by a fine of not more than
$10,000 or by imprisonment of not more than five years, or both; and that requesting or obtaining any record(s) under
false pretenses is punishable under the provisions of 5 U.S.C. § 552a(i)(3) as a misdemeanor and by a fine of not more
than $5,000.

Signature: _____  Date: _____

# FBI FILE FACT SHEET

- The primary function of the FBI is law enforcement.
  **The FBI does not keep a file on every citizen of the United States.**

- **The FBI was not established until 1908 and we have very few records prior to the 1920's.**

- **FBI files generally contain reports** of FBI investigations of a wide range of matters, including counterterrorism, foreign counter-intelligence, organized crime/drugs, violent crime, white-collar crime, applicants, and civil rights.

- **The FBI does not issue clearances or nonclearances for anyone other than its own personnel or persons having access to FBI facilities.** Background investigations for security clearances are conducted by many different Government agencies. Persons who received a clearance while in the military or employed with some other government agency should write directly to that entity.

- **An FBI identification record or "rap sheet" is NOT the same as an FBI "file"** - it is simply a listing of information taken from fingerprint cards submitted to the FBI in connection with arrests, federal employment, naturalization, or military service. The subject of a "rap sheet" may obtain a copy by submitting a written request to FBI, CJIS Division, Attn: SCU, Mod. D-2, 1000 Custer Hollow Road, Clarksburg, West Virginia 26306. Each request must have proof of identity which shall consist of **name, date and place of birth and a set of rolled-ink fingerprint impressions** placed upon fingerprint cards or forms commonly utilized for applicant or law enforcement purposes by law enforcement agencies, plus **payment of $18.00** in the form of a certified check or money order, payable to the Treasury of the United States.

- **The National Name Check Program (NNCP)** conducts a search of the FBI's Universal Index to identify **any** information contained in FBI records that may be associated with an individual and provides the results of that search to the requesting Federal, State or local agency. For the NNCP, a name is searched in a multitude of combinations and phonetic spellings to ensure all records are located. The NNCP also searches for both "main" and "cross reference" files. A main file is an entry that carries the name corresponding to the subject of a file while a cross reference is merely a mention of an individual contained in a file. The results from a search of this magnitude can result in several "hits" and "idents" on an individual. In each instance where UNI has identified a name variation or reference, information must be reviewed to determine whether it is applicable to the individual in question.

- **The Record/Information Dissemination Section/Freedom of Information-Privacy Acts (FOIPA)** search for records provides copies of FBI files relevant to a FOIPA request for information. FOIPA provides responsive documents to requesters seeking "reasonably described information." For a FOIPA search, the subject name, event, activity, business, or event is searched to determine whether there is an investigative file associated with the subject. This is called a "main file search" and differs from The **NNCP** search.

**FOR GENERAL INFORMATION ABOUT THE FBI,**
**CHECK OUT OUR WEBSITE AT**
**http://www.fbi.gov**

3-23-04

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| BARBARA FEINMAN  and<br>GARRETT M. GRAFF, | ) ) ) |  |
| Plaintiffs, | ) ) |  |
| v. | ) ) | Civ. A. No. 1:09-cv-02047 (ESH) |
| FEDERAL BUREAU OF INVESTIGATION, et al., | ) ) |  |
| Defendants. | ) ) |  |

# EXHIBIT E



U.S. Department of Justice

Federal Bureau of Investigation

*Washington, D.C. 20535*

February 19, 2010

Mr. Garrett M. Graff
Washington Magazine
1828 L Street, N.W.
Suite 200
Washington, DC  20036

> *Garrett M. Graff v. FBI, et al.,* (Civ. A. No. : 1:09-cv-02047)
> Request No.:  1128923-001
> Subject:  Younis, Fawaz

Dear Mr. Graff:

The purpose of this letter is to advise you of the status of your pending Freedom of Information Act (FOIA) request at the Federal Bureau of Investigation ("FBI") regarding Fawaz Younis.

As a result of an administrative error, your request was closed on April 10, 2009.  When this error was discovered, your request was reopened under FOIA request number 1128923-001.  Currently the FBI is searching the indices to its Central Records System for the information you requested, and will inform you of the results as soon as possible.

I regret the delay incurred in complying with your request and solicit your continued patience.  You may inquire as to the status of your request by calling the FBI's FOIPA Public Information Center at 540-868-4593.

Sincerely yours,

David M. Hardy
Section Chief
Record/Information
Dissemination Section
Records Management Division

cc:      Jennifer B. Kaplan (Civil Division - Federal Programs)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

BARBARA FEINMAN  and )
GARRETT M. GRAFF, )
 )
          Plaintiffs, )
 )
          v. )          Civ. A. No. 1:09-cv-02047 (ESH)
 )
FEDERAL BUREAU OF INVESTIGATION, et al.,)
 )
          Defendants. )
_____)

# EXHIBIT F



**U.S. Department of Justice**

**Federal Bureau of Investigation**

Washington, D.C. 20535

February 26, 2010

MR. GARRETT M. GRAFF
WASHINGTONIAN
1828 L STREET NORTHWEST
WASHINGTON, DC 20036

> *Garret M. Graff v. FBI, et al.,* *(Civ. A. No.: 1:09-cv-02047)*
> FOIPA Request No.: 1128923- 001
> Subject: YOUNIS, FAWAZ

Dear Mr. Graff:

This is in reference to your letter directed to the Federal Bureau of Investigation (FBI), in which you requested a fee waiver for the above-referenced Freedom of Information Act (FOIA) request. Request for fee waivers are determined on a case-by-case basis. See 5 U.S.C. 522 (a)(4)(A)(iii). See also Nat'l Sec. Archive v. DOD, 808 F.2d 1381, 1383 (D.C. Cir. 1989). The burden is on the requester to show that the statutory requirements for a fee waiver have been met. Pursuant to the Department of Justice (DOJ) standards, a fee waiver can only be granted when it is determined that a FOIPA request involves one or more of the below categories.

You have requested a fee waiver stating that:

☐      the subject of the requested records concerns "the operations or archives of the government"

☐      the disclosure is "likely to contribute" to an understanding of governmental operations or activities

☒      the disclosure of the requested information will contribute to the understanding of the general public, as opposed to the individual requester, and that the requester has the ability and intention to disseminate the information to the public

☒      the disclosure is likely to contribute "significantly" to public understanding of government operations or activities

☐      the requester has a commercial interest that would be furthered by the requested disclosure; and (6) whether any such commercial interest outweighs the public interest in disclosure. See 28 C.F.R. 16.11§ (k) (2004).

You have provided enough information concerning the statutory requirements for a fee waiver; therefore, your request is granted.

You may appeal this denial by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, 1425 New York Ave., NW, Suite 11050, Washington, D.C., 20530-0001. Your appeal must be received by OIP within sixty (60) days from the date of this letter in order to be considered timely. The envelope and the letter should be clearly marked "Freedom of Information Appeal" or "Information Appeal." Please cite the FOIPA number assigned to your request to facilitate its identification.

Sincerely yours,

David M. Hardy
Section Chief,
Record/Information
Dissemination Section
Records Management Division

cc:      Jennifer B. Kaplan (Civil Division - Federal Programs)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BARBARA FEINMAN  and          )
GARRETT M. GRAFF,             )
                             )
        Plaintiffs,          )
                             )
        v.                   )        Civ. A. No. 1:09-cv-02047 (ESH)
                             )
FEDERAL BUREAU OF INVESTIGATION, et al.,)
                             )
        Defendants.          )

# EXHIBIT G

U.S. Department of Justice



Federal Bureau of Investigation

*Washington, D.C. 20535*

July 14, 2010

*VIA FEDERAL EXPRESS*

MR. GARRETT M. GRAFF
WASHINGTONIAN
1828 L STREET NORTHWEST
WASHINGTON, DC 20036

> *Barbara Feinman and Garrett M. Graff v. FBI, et al.*
> Civil Action Number: 1:09-cv-02047 (ESH)
> FOIPA Request No.: 1128923-001
> Subject: YOUNIS, FAWAZ

Dear Mr. Graff:

This is in response to your Freedom of Information Act (FOIA) request referenced above.

Please be advised that the enclosed public source material consisting of **134** pages and a news broadcast recorded on DVD, are being released to you in their entirety. Additional material which is potentially responsive to your request contains personal information about other third party individuals. Disclosure of third party information, without consent, is restricted by the Privacy Act, Title 5, United States Code (U.S.C.), Section 552a(b) and the Freedom of Information Act, Title 5, USC, Section 552(b)(6) and/or (b)(7)(C). Therefore, the FBI is only releasing public source material without the written consent from third party individuals, proof of death or a showing that the public's interest in the individual's information outweighs privacy considerations. Should such additional information be provided and a determination is made to continue processing this request, the FBI reserves the right to assert any additional applicable Privacy/FOIA exemptions to potentially responsive material.

You may file an appeal by writing to the Director, Office of Information Policy (OIP), U.S. Department of Justice, 1425 New York Ave., NW, Suite 11050, Washington, D.C. 20530-0001. Your appeal must be received by OIP within sixty (60) days from the date of this letter in order to be considered timely. The envelope and the letter should be clearly marked "Freedom of Information Appeal." Please cite the FOIPA Request Number in any correspondence to us for proper identification of your request.

Very truly yours,

David M. Hardy
Section Chief
Record/Information
 Dissemination Section
Records Management Division

Enclosures
cc: Jennifer B. Kaplan (w/out encl.)
    Civil Division, Federal Programs Branch