UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

BARBARA FEINMAN;               )
and GARRETT M.                 )
GRAFF,                         )
                               )
          Plaintiffs,          )
                               )    Case No. 1:09-cv-2047
          v.                   )    (ESH)
                               )
FEDERAL BUREAU OF INVESTIGATION )
EXECUTIVE OFFICE OF U.S. ATTORNEYS,)
and                            )
U.S. DEPARTMENT OF JUSTICE,    )
                               )
                               )
          Defendants.          )
_____

DECLARATION OF CATHERINE GONZALEZ GALLEGO

I, Catherine Gonzalez Gallego, declare the following to
be true and correct:

1.    I am an attorney in the Criminal Division
(hereinafter "Criminal Division" or "Division") of the United
States Department of Justice assigned to the Office of
Enforcement Operations.  My specific assignment at the
present time is that of an Attorney/Advisor for the
Division's Freedom of Information Act/Privacy Act Unit
(FOIA/PA Unit).

2.    In such capacity, my duties include reviewing
complaints in lawsuits filed under both the Freedom of

1

Information Act (FOIA), 5 U.S.C. § 552 *et seq.*, and the
Privacy Act (PA), 5 U.S.C. § 552a *et seq.*, and providing
litigation support and assistance to Assistant United States
Attorneys and to Department Trial Attorneys representing the
Division in District Court.   In conjunction with these
duties, I review processing files that have been compiled by
the FOIA Specialists and reviewed by Supervisory FOIA
Specialists, by the FOIA/PA Unit Deputy and/or the FOIA/PA
Unit Chief in responding to FOIA/PA requests received by the
Unit.   I also consult with the Unit Chief, who supervises the
Unit's processing of FOIA and PA requests, and with the
supervisory FOIA Specialists to confirm that determinations
to withhold or to release records of the Criminal Division
have been made in accordance with the provisions of both the
FOIA and the PA, and with Department of Justice regulations -
28 C.F.R. § 16.1 *et seq.*

     3.   I make this declaration on the basis of personal
knowledge as well as information acquired through the
performance of my official duties.

SUMMARY OF CORRESPONDENCE

     4.   The plaintiffs made a FOIA/PA request to the
Division in a letter dated January 23, 2009.   The plaintiffs
requested records concerning "the investigation, capture and

2

prosecution of former Panamanian General Manuel Noriega from June 1989 to June 1993" and the involvement of "Robert S. "Bob" Mueller III, then an official with the U.S. Department of Justice in Washington, DC, in the Noriega investigation, prosecution, capture, trial and appeals."  *See* Exhibit 1.

5.    By letter addressed to the plaintiffs dated February 23, 2009, the Criminal Division acknowledged receipt of plaintiffs' request.  The plaintiffs' FOIA/PA request was assigned case number CRM-200900041F. *See* Exhibit 2

6.    The Division responded to the plaintiffs' request on the following dates:

    1.    February 19, 2010 (26 pages processed)

    2.    April 19, 2010 (385 pages processed)

    3.    April 20, 2010 (668 pages processed)

    4.    April 23, 2010 (125 pages processed)

    5.    June 22, 2010 (289 pages processed)

    6.    May 4, 2010(32 pages processed)

    7    May 26, 2010 (101 pages processed)

    8.    June 15, 2010 (3 pages processed)

    9.    June 30, 2010 (6 pages processed)

    10.    September 13, 2010 (189 pages processed)

    11.    September 14, 2010 (31 pages processed)

    12.    September 16, 2010 (89 pages processed)

    13.    October 5, 2010 (53 pages processed)

*See* Exhibits 3a through 3m.

7.   In total, the Criminal Division released 1,325 pages in full, 128 pages (comprising 35 documents) in part and withheld 588 pages (comprising 83 documents) in full.  The Criminal Division's withholdings are enumerated in the accompanying Vaughn index.

## SEARCH AND PROCESSING PROCEDURES

8.   Pursuant to long-standing FOIA/PA search procedures, a search sheet with a copy of the plaintiffs's request was transmitted to each of the Division's sections that may have records responsive to the plaintiffs's request. *See* Exhibits 4a through 4d.  The FOIA/PA Unit Deputy Chief identified the following sections to be searched: the Appellate Section (because the request mentioned appeals by General Noriega); the Office of International Affairs (because of the international nature of General Noriega's drug smuggling operation); the Narcotics and Dangerous Drugs Section (because drug related charges constituted a major portion of the Noriega indictment); and the Office of the Assistant Attorney General (because Robert S. Mueller III served in that capacity from 1989 to 1993).

9.   Designated personnel employed by the pertinent Sections undertook a search for responsive materials and

reported the results on individual, signed forms to the Criminal Division FOIA/PA Unit. *See* Exhibits 5a through 5d.

10.     Because of the high visibility nature of this subject of the request, FOIA/PA Unit personnel also directly contacted officials most likely to know whether their sections would contain responsive records.

11.     The responses from each section are described below:

(a)     The Appellate Section advised the FOIA/PA Unit that it had no responsive records on March 11, 2009. *See* Exhibit 5a.

(b)     The Office of International Affairs (OIA) advised the FOIA/PA Unit that it had no responsive records on February 16, 2010.

(c)     The Narcotics and Dangerous Drugs Section (NDDS) provided responsive records to the FOIA/PA Unit on April 7, 2009.  These records comprised the first response to the plaintiffs dated February 19, 2010.

(d)     The Office of the Assistant Attorney General of the Criminal Division (AAG) provided responsive records to the FOIA/PA Unit on March 3, 2010.  These

records were stored in approximately 77 boxes and comprised the remaining twelve releases to the plaintiffs.

FOIA/PA Section staff reviewed the contents of each box for responsiveness.  Most boxes contained non-responsive records (records pertaining to matters other than requested), records in Spanish (which plaintiffs, through their attorney, declined to receive), or records outside the chronological scope of the request (records compiled either before June 1989 or after June 1993).  Upon locating a responsive record, I reviewed it for applicability of FOIA exemptions.

In total, the Criminal Division withheld 83 documents in their entireties (588 pages) and portions of additional 35 documents (128 pages).  These withholdings are enumerated in the accompanying Vaughn index, in Part I and Part II, respectively.

All records were processed to achieve maximum disclosure of non-exempt information.  Every effort was made to segregate exempt from non-exempt material.

### Exemption 2 (high)

12.   FOIA Exemption 2 authorizes the withholding of information  related solely to the internal personnel rules

6

and practices of an agency.  5 U.S.C § 552(b)(2).

Exemption 2 protects materials involving internal agency matters where disclosure may risk circumvention of statutes or agency regulations.  With regard to this "high 2" aspect of the exemption, it is not relevant that the information may be of public interest.

13.   Pursuant to Exemption 2 (high), the Criminal Division's FOIA/PA Unit withheld:

- Item 20, Part I – letter from Director, CRM-OIA to a foreign law enforcement official requesting logistical assistance
- Item 34, Part I – letter from Director, CRM-OIA to a foreign law enforcement official following up on request for logistical assistance
- From Item 5, Part II – private bank account numbers
- From Item 19, Part II – Criminal Division routing procedures
- From Item 20, Part II – Criminal Division routing procedures
- From Item 23, Part II – Criminal Division routing procedures
- From Item 26, Part II – Criminal Division routing procedures
- From Item 27, Part II – internal office expenses
- From Item 28, Part II – Criminal Division routing procedures
- From Item 34, Part II – private bank account numbers

14.   With regard to the Criminal Division routing procedures, there is genuine and well-founded concern that public access to this information would result in an incorrect assessment by the public of the effectiveness of these procedures.  These procedures involve senior Criminal

Division employees reviewing each others's work.  The fact
that an employee's initials appeared on the letter is
evidence that the employee agrees with the letter's content.
Because the identity and decision making authority of the
Criminal Division senior staff is disclosed by release of
their initials, revealing this information to the public
could result in targeting these individuals for bribery,
harassment and other forms of unlawful influence.

15.  With regard to private account numbers, there is a
genuine and well-founded concern that public access to this
information would result in unauthorized access attempts to
these accounts and those with similarly configured numbers.
Unauthorized access to a bank account violates a number of
civil and criminal statutes.

16.  With regard to internal office expenses, i.e.,
funds earmarked to pay for personnel such as investigators
and interpreters, there is a genuine and well-founded concern
that public access to this information would result in the
public questioning the propriety and the necessity of the
Criminal Division's allocation of financial resources.  Taken
out of context, these expenses may be used to determine how
Criminal Division allocates resources in high-profile cases.
That may lead criminal defendants to exploit what they see as
a vulnerability (i.e. staff shortage, unavailability of an

interpreter in a particular language).

17.   With regard to OIA's correspondence with a foreign law enforcement agency, there is a genuine and well-founded concern that public access to this information would reveal the identity of the government to which the request was made. That would directly contravene the confidentiality provision of the Mutual Legal Assistance Treaty (MLAT) with the government in question, which requires that the very fact a request for assistance has been made to be kept confidential.

## Exemption 5

18.   FOIA Exemption 5 permits the withholding of  inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency.   5 U.S.C. § 552(b)(5).

19.   Pursuant to Exemption 5, the Criminal Division's FOIA/PA Unit withheld:

- ▸   Items 1, 33, and 40, Part I -- prosecution memoranda prepared by an Assistant United States Attorney in the case against General Noriega
- ▸   Items 2, 4-10, 16-19, 23, 29-30, 32, 38-39, 69, 75, and 79, Part I -- memoranda prepared by division attorneys discussing General Noriega's financial assets
- ▸   Items 14, 27 and 31, Part I -- correspondence between the Office of the United States Attorney and the Criminal Division regarding requesting investigative and logistical assistance from various foreign governments in the Noriega prosecution

9

- Items 58-60, Part I -- memoranda prepared by Criminal Division attorneys regarding possible issues with cooperating witnesses in the Noriega trial
- Items 62-63, Part I -- memoranda prepared by Criminal Division attorneys assessing prosecution options in the Middle District of Florida
- Item 3, Part I -- memorandum prepared by a Criminal Division attorney assessing possible strengths and weaknesses in the outstanding prosecutions against General Noriega

- Item 21, Part I - handwritten Criminal Division attorney notes regarding a phone conversation with a foreign law enforcement official.
- Item 26, Part I -- memorandum prepared by a Criminal Division attorney evaluating evidence against General Noriega
- Item 28, Part I - memorandum from a Criminal Division attorney to a Deputy Assistant Attorney General regarding evidence against Noriega in the Middle District of Florida
- Item 41, Part I -- memorandum of senior Criminal Division attorney to a Deputy Assistant Attorney General regrading evidence necessary to sustain various portions of the indictment against general Noriega
- Item 42, Part I -- memorandum prepared by a Criminal Division attorney regarding various procedural issues in the Noriega indictment
- Item 47, Part I -- draft of stipulation by an Assistant United States Attorney
- Item 48, Part I -- discussion of the witnesses value to the prosecution by a Criminal Division attorney
- Item 54, Part I -- memorandum prepared by a division attorney regarding agency expenses in the Noriega trial
- Item 55, Part I - memorandum from an Assistant United States Attorney to Chief, NDDS, Criminal Division regarding office expenses for personnel necessary to try the case against Noriega
- Item 57, Part I - letter from an Assistant United States Attorney to a Criminal Division attorney discussing possible reduction of sentence for one of the witnesses in the Noriega trial
- Item 66, Part I -- draft of interview memorandum of a Noriega associate prepared by an Assistant United

10

States Attorney submitted to Criminal Division for
comment

▸   Item 67, Part I -- memorandum from Assistant United
    States Attorney to the Criminal Division regarding
    possible appellate issues in the Noriega trial

▸   Item 68, Part I -- letter from the Deputy Assistant
    Attorney General, Criminal Division to the United
    States Attorney, Middle District of Florida
    regarding possible prosecution of General Noriega
    in that district

▸   Item 70, Part I -- memorandum prepared by a
    Criminal Division attorney regarding the court's
    rulings on evidence in the Noriega trial and
    possible influence on other similar cases

▸   Item 71, Part I -- unfiled, unsigned copy of the
    indictment against General Noriega

▸   Item 73, Part I -- unsigned report by the Deputy
    Assistant Attorney General to the Attorney General
    regarding sentencing of General Noriega

▸   Item 77, Part I -- memorandum prepared by a a
    Criminal Division attorney discussing specific
    charges against General Noriega

▸   Item 78, Part I -- draft of request for assistance
    to a foreign government

▸   Item 81, Part I -- instructional memorandum from
    the Attorney General to the Acting Assistant
    Attorney General, Criminal Division

▸   Item 82, Part I -- instructional memorandum from
    the Attorney General to the Acting Assistant
    Attorney General, Criminal Division

▸   From Item 4, Part II -- suggestions and
    recommendations about trial strategy in a letter
    from a Criminal Division attorney to the Assistant
    United States Attorney

▸   From Item 7, Part II -- handwritten attorney
    comments on a newspaper article about Noriega
    witnesses and co-defendants.

20.   Exemption 5 has long been construed to exempt

those documents or information that would reveal the

internal, pre-decisional, and deliberative process of an

agency.  The deliberative process privilege protects the

quality of agency decision-making by permitting open and

11

frank discussion between subordinates and superiors,
protecting against premature disclosure of proposed policies
before they are adopted, and protecting against the public
confusion that might result from disclosure of reasons and
rationales that were not in fact ultimately the grounds for
an agency's action.  Further, it has  been held that the
public interest, no matter how strong, is not a factor
considered in determining whether Exemption 5 is applicable.

21.   These documents satisfy Exemption 5's threshold
requirement of being inter-agency or intra-agency memoranda.
Although shared with other Department of Justice personnel,
there is no indication that these documents have ever been
publicly disclosed.  Indeed, communications of this nature
are, customarily, not made public.

22.   Moreover, these documents are crucial elements of
the deliberations in making key decisions in Criminal
prosecutions.  Specifically, these memorandums preceded the
final decision to (a) seek investigative and logistical
assistance from foreign governments (Items 2,8 and 17); (b)
include specific charges in the indictment (Items 1, 33 and
41); (c) utilize co-defendants as witnesses (Item 60); (d)
whether to prosecute General Noriega in the Middle District
of Florida (Items 63 and 68); (e) whether or not to appeal
General Noriega's sentence (Items 67, 70 and 73); (f) and how

12

to allocate Criminal Division funds in the Noriega trial (Item 54).  Such information explaining prosecutory strategy and possible indictments clearly plays a direct part in the agency's deliberative process in that it reflects employees' recommendations or opinions about legal matters related to the government's prosecution of General Noriega.  These documents are replete with the attorneys' analyses, recommendations, assessments of the facts, and application of the law to the facts.

23.    As discussed in paragraph 24, *infra*, the portions of the documents containing attorney deliberations, recommendations and advice were incorporated into documents that were created by an attorney or his/her agent in anticipation of litigation.  Therefore, no segregating of the facts from these documents was undertaken because the factual portions would have been withheld regardless under attorney work product privilege.  Wherever deliberative material appeared in a document that was not also attorney work product, it was segregated from the remainder of the document.

24.    The aforementioned documents were also withheld under the independent, but overlapping, attorney work product privilege.  This privilege protects documents that are

13

prepared by an attorney or his/her agent in anticipation of
litigation and reveal the attorneys' thought processes,
theory of the case, and/or litigation strategy.  This
privilege protects the adversarial trial process by
insulating the attorneys' preparation from scrutiny.

25.    The items withheld under the attorney work product
privilege of Exemption 5 set forth the attorneys' thoughts,
impressions, evidence development, legal theory of the case,
and/or facts and issues upon which an attorney could evaluate
issues in the General Noriega prosecution.  Plainly,
decisions regarding how the Criminal Division should proceed
through the investigatory and prosecutorial process in a
criminal matter constitute the most sensitive deliberations
undertaken by prosecutors and other Department attorneys, and
are matters in which it is vital to foster an atmosphere in
which opinions, analyses and recommendations can be freely
exchanged.

26.    Inasmuch as the attorney work product privilege
incorporated in FOIA Exemption 5 protects both factual work
product and analytical work product from disclosure, there is
no nonexempt information of most of these documents to be
segregated and disclosed.

27.    Public release of the information in these
documents would inhibit the candid, internal discussion

essential for efficient and proper litigation preparation in this type of case.  Similarly, disclosure would provide insight onto the agency's general strategic and tactical approach to prosecuting such cases and would consequently harm the very adversarial process which the attorney work product privilege is designed to protect.

### Exemptions 6 & 7(C)

28.  FOIA Exemption 6 permits the withholding of personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.  5 U.S.C. § 552(b)(6)

29.  FOIA Exemption 7 (C) permits the withholding of records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information could reasonably be expected to constitute an unwarranted invasion of personal privacy. 5 U.S.C. § 552(b)(7)(C).

30.  Exemptions 6 and 7(C) each require a balancing of the individual's right to personal privacy against the public's interest in shedding light on an agency's performance of its statutory duties.  The requester's identity, purpose in making the request, and proposed use of the requested information have no bearing on this balancing

test.

31. Pursuant to Exemption 6, the Criminal Division
withheld:
- Item 13, Part I – foreign travel request for an
  Assistant United States Attorney
- From Items 1-2, Part II – name and contact
  information of a foreign government official
- From Item 3, Part II – name of a foreign government
  official
- From Items 8-10, 24; Part II – names of employees
  in various United States government agencies
- From Items 12-15, 25-26, 28; Part II – names of
  members of the public writing to their Congressmen
- From Items 16-17, Part II – names of Criminal
  Division's employees
- From Item 19, Part II – initials of senior Criminal
  Division staff members
- From Item 20, Part II – initials of senior Criminal
  Division staff members
- From Item 23, Part II – initials of senior Criminal
  Division staff members
- From Item 26, Part II – initials of senior Criminal
  Division staff members
- From Item 28, Part II – initials of senior Criminal
  Division staff members
- From Item 29, Part II – name of an Assistant United
  States Attorney
- From Item 34, Part II – names of family members of
  General Noriega

32. Pursuant to Exemptions 6 and 7(C), the Criminal
    Division withheld:
- Item 15, Part I – names of co-defendants in the
  General Noriega's trial and contents of their plea
  agreements with the prosecution
- Items 43-44, Part I – agency correspondence with
  General Noriega's co-defendants' attorneys
  regarding the plea agreements
- Item 45, Part I – witness list
- Item 46, Part I – letter to an attorney of a
  witness in the Noriega trial regarding a possible
  plea
- Item 48, Part I – names and other personal
  information regarding co-defendants and witnesses
- Items 49-51 and 53, Part I – cooperation agreement
  of co-defendants in the General Noriega trial
- Item 52, Part I – letter of an Assistant United

16

States Attorney to the Criminal Division concerning one of the co-defendants who is also a witness in the General Noriega trial

▸ Items 56-61, Part I - various letters and memoranda by division attorneys discussing utilization of third party witnesses in the General Noriega trial

▸ Items 64-65, Part I - emails discussing testimony of a co-defendant

▸ Item 72, Part I - plea agreements and cooperation agreements for witnesses in the Noriega trial

▸ Item 74, Part I - document listing witnesses in the Noriega trial and their criminal histories

▸ From Items 4-6, 11, 18-23, 27; Part II - names of General Noriega's co-defendants

▸ From Item 30, Part II - names of individuals contained in a letter from an unknown party to General Noriega

▸ From Items 31-33, 35; Part II - lists of court documents pertaining to General Noriega's co-defendants and not to him.

33.    The items referenced in Paragraphs 31 and 32 are identifiable to particular individuals.  Thus, they meet the threshold requirement of Exemption 6, the scope of which includes all personally identifiable information, irrespective of the type of file in which it is contained.

The items referenced in Paragraphs 31 and 32 above, were compiled in connection with a major criminal investigation into violations of federal drug trafficking, racketeering and money laundering statutes by General Noriega.  Thus, they meet the threshold requirement of FOIA Exemption 7 of "records or information complied for law enforcement purposes."

34.    In this case the individuals whose identities have

17

been protected were subjects of a criminal investigation,
employees of foreign and domestic law enforcement agencies,
members of the defendant's family, and members of the public.

35.   The individuals whose identities have been
protected all maintain a substantial privacy interest in not
being identified in connection with a criminal law
enforcement investigation.   Identifying individuals as either
the subjects of criminal investigations or being associated
with such investigations can subject them to innuendo,
embarrassment, and stigmatization, as well as possible
harassment, retaliation and reprisals.

36.   On the other hand, revealing such information is
unlikely to add to the public's understanding of how the
Criminal Division worked or how well it performed its
statutory duties relating to the investigation, capture and
prosecution of General Noriega.   On balance, the Criminal
Division determined that the substantial privacy interest
protected by withholding this information outweighs any
minimal public interest that might be served by its release.
Such disclosure would be "clearly unwarranted" as required by
5 U.S.C. § 552(b)(6).   Since this is the higher of the two
standards of invasion of privacy, the release of this
information necessarily would be "unwarranted" as required by

18

5 U.S.C. § 552(b)(7)(C).

## Exemption 7(D)

37.   Exemption 7(D) permits the withholding of
records or information compiled for law enforcement purposes,
when its release could reasonably be expected to disclose the
identity of a confidential source, including a state, local,
or foreign agency or authority or any private institution
which furnished information on a confidential basis, and, in
the case of a record or information compiled by a criminal
law enforcement authority in the course of a criminal
investigation. . . , information furnished by a confidential
source.  5 U.S.C. § 552(b)(7)(D)

38.   Exemption 7(D) is designed to ensure that the
government will not lose confidential sources of information,
either through retaliation against the sources for past
disclosure or because of the sources' fear of future
disclosure.  The success of government investigations and law
enforcement proceedings depends on the ability of law
enforcement agencies to obtain the cooperation of
confidential sources.

39.   When information is compiled in the course of a
criminal investigation, Exemption 7(D) protects both the

19

identity of confidential sources and the information provided
by the sources when such information has been provided in
confidence or trust with the understanding that it would not
be disclosed to others.

40.   Pursuant to Exemption 7(D) the Criminal Division
withheld:

- Items 11, 12, 22, 24-26, 35-37; Part I – letters
  from a foreign government in response to Criminal
  Division inquiry as well as specific information
  contained in those letters
- Item 76 and 83; Part I – draft pleadings in a
  foreign court provided by a foreign law enforcement
  agency

41.   These items were compiled in connection with the
criminal investigation of General Noriega.   Thus, they meet
the threshold requirement of Exemption 7.

42.   These items were provided to the Criminal Division
by a foreign law enforcement agency under the express promise
of confidentiality contained in the Mutual Legal Assistance
Treaty with the providing government.   See paragraph 17,
*supra*.

## Exemption 7(E)

43.   FOIA exemption (7)(E) permits the withholding of
records or information compiled for law enforcement purposes,
where release would disclose techniques and procedures for
law enforcement investigations or prosecutions or would

20

disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.  5 U.S.C. § 552(b)(7)(E)

44.   Exemption 7(E) is designed to protect techniques and procedures for law enforcement investigations and prosecutions not known to the general public.  Revealing such techniques and procedures would create a vulnerability in the law enforcement process that is likely to be exploited by individuals contemplating a criminal enterprise.  The success of the government's investigative and prosecutive operations depends on the government's ability to utilize effective methods that criminals cannot circumvent.

46.   Pursuant to Exemption 7(E) the Criminal Division withheld:

> - Item 20, Part I – letter from Director, CRM-OIA to a foreign law enforcement official requesting logistical assistance
> - Item 34, Part I – letter from Director, CRM-OIA to a foreign law enforcement official following up on request for logistical assistance
> - From Items 1 and 2; Part II – specific actions requested from foreign governments to enable the United States government to trace General Noriega's finances

47.   These items were compiled in connection with the criminal investigation of General Noriega.  Thus, they meet the threshold requirement of Exemption 7.

48.   Revealing the specific nature of investigative

assistance that governments give to each other in tracing financial accounts will enable holders of these accounts to take specific measures to avoid detection and move their business elsewhere, thus frustrating law enforcement goals of governments in pursuit of international criminals such as General Noriega. Furthermore, revealing Items 20 and 34 of Part I would disclose the fact that a request for assistance has been made of a foreign government in violation of the confidentiality provision of the Mutual Legal Assistance Treaty (MLAT) with the government in question, which requires that the very fact a request for assistance has been made to be kept confidential.

## Exemption 7(F)

49. FOIA Exemption 7(F) authorizes the withholding of records or information complied for law enforcement purposes, where release could reasonably be expected to endanger the life or physical safety of any individuals. 5 U.S.C. § 552(b)(7)(F)

50. Exemption 7(F) is designed to safeguard law enforcement information the release of which could result in death or great bodily harm to any individual. It is used when the situation warrants protection of an individual's privacy interest beyond that afforded by Exemption 6 and

22

7(C).  An incarcerated individual who testified for the prosecution faces greater than average danger of retaliation for his actions.  Therefore, there is a substantial government interest in not releasing safety precautions that Federal Bureau of Prisons applies to such individuals.

51.  Pursuant to Exemption 7(F), the Criminal Division withheld safety precautions for one of the witnesses in the General Noriega trial in the custody of the Federal Bureau of Prisons (Item 52, Part I).

52.  This item was compiled in connection with the criminal investigation of General Noriega.  Thus, it meets the threshold requirement of Exemption 7.

53.  Revealing the specific nature of safety precautions that Bureau of Prisons applies to witnesses in protective custody could result in the witness against General Noriega being identified as such and subjected to harm.

## MISCELLANEOUS ISSUES

54.  A portion of the responsive records consisted of records sealed by the order of the United States District Court for the Southern District of Florida.  The Criminal

23

Division does not have the authority to process these records and so informed the plaintiffs in the final response letter dated October 5, 2010.

55.     A portion of the responsive records originated in different components of the Department of Justice and various other United States government agencies.  These records were referred to the originating components and agencies according to the Department of Justice regulations.

56.     A portion of the responsive records was processed more than once due to the fact that identical records were located in more than one box.  Items 1, 28, 40-41  and 71 of Part I of the *Vaughn* index were processed twice.  Items 10, 11, 13-15, 18, 19, 21 and 22 of Part II of the *Vaughn* index were processed twice.


I declare under penalty of perjury that the foregoing is true and correct.


Executed on:

_____
CATHERINE GONZALEZ GALLEGO