**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

———————————————————— )
                                             )
GARRETT M. GRAFF,                            )
                                             )
                 Plaintiff,                  )
                                             )
        v.                                   )       Civil Action No. 09-2047 (ABJ)
                                             )
FEDERAL BUREAU OF                            )
INVESTIGATION, *et al.*,                     )
                                             )
                 Defendants.                 )
———————————————————— )

## MEMORANDUM OPINION

Plaintiff Garrett M. Graff[1] filed an amended complaint against the Federal Bureau of

Investigation ("FBI"), the Executive Office for United States Attorneys ("EOUSA"), and the

Department of Justice ("DOJ"), alleging that defendants wrongfully refused to process requests

for information that he submitted under the Freedom of Information Act ("FOIA"), 5 U.S.C. §

552, *et seq.*, *as amended*, and that their actions constituted irrational departures from agency

policy.  Defendants have moved for summary judgment on Count VI, the count that challenges

the validity of the policy that governs defendants' response to requests for third party

information, and Counts II and V, which challenge defendants' application of that policy to two

---

1       The Court previously dismissed plaintiff Barbara Feinman and her claims for lack of
standing.  *See Feinman v. FBI*, 680 F. Supp. 2d 169, 176 (D.D.C. 2010), *mot. to certify for
interlocutory appeal denied*, No. 09-CV-2047, 2010 WL 962188 (D.D.C. Mar. 15, 2010).
Because the allegations relating to Feinman in the Amended Complaint are identical to those in
the Original Complaint, Graff is the only remaining plaintiff in this case.

of plaintiff's requests.  [Dkt. #39].[2]  Plaintiff has cross-moved for partial summary judgment on

Count VI.  [Dkt. #44].  For the reasons stated below, the Court will grant defendants' motion and

deny plaintiff's cross-motion on Count VI, and it will remand Counts II and V for further

proceedings consistent with this opinion.

## BACKGROUND

This case arises from two requests for information that Graff, an editor of *The*

*Washingtonian Magazine*, Am. Compl. ¶ 4, submitted under FOIA.[3]

The first request ("Noriega Request"), which Graff submitted to the EOUSA by letter on

January 23, 2009, asked for the disclosure of "files regarding the investigation, capture, and

prosecution of former Panamanian Gen. Manuel Noriega."  Ex. 1 to Pl.'s MSJ.  It explained, in

relevant part:

> I am requesting copies of any documents or communications, including
> but not limited to logs, reports, messages, wires, cables, teletypes, and
> external or internal memorandums about the investigation and/or capture
> of General Noriega, as well as his later prosecution, trial, and appeals.
> Specifically, I'm requesting any and all materials relating to the
> involvement of Robert S. "Bob" Mueller III, then an official with the U.S.
> Department of Justice in Washington, DC, in the Noriega investigation,
> capture, prosecution, trial, and appeals.  This request should include the
> period from June 1989 to June 1993, inclusive.
>
> As a member of the news media, and considering that this request is made
> in the public interest, I am hereby requesting a waiver of all associated
> fees.  Disclosure of the requested information to me is in the public
> interest because it is likely to contribute significantly to public

---

2       Counts I and VII of the Amended Complaint are identical to Counts I and VI of the
Original Complaint, which this Court previously dismissed, *Feinman v. FBI*, 713 F. Supp. 2d 70,
75 n.4, 78 (D.D.C. 2010); *Feinman v. FBI*, 680 F. Supp. 2d at 176, and plaintiff voluntarily
conceded Counts III and IV, Pl.'s Mem. In Support of Cross-Mot. for Partial Summ. J. and Opp.
To Def.'s Mot. for Summ. J. ("Pl.'s MSJ") [Dkt. #44] at 2 n.1.  The only counts remaining are
Counts II, V, and VI.

3       The Court set out the factual background of this case in great detail in *Feinman v. FBI*,
713 F. Supp. 2d 70, 71–75 (D.D.C. 2010).

> understanding of the operations or activities of the government and is not
> primarily in my commercial interest.

*Id.*

The EOUSA responded to Graff on January 30, 2009, acknowledging that it had received the request and assigned it a number. Ex. 2 to Pl.'s MSJ at 1. Recording the subject of Graff's request as "Manuel Noriega," the response stated:

> You have requested records concerning a third party (or third parties). Records pertaining to a third party generally cannot be released absent express authorization and consent of the third party, proof that the subject of your request is deceased, or a clear demonstration that the public interest in disclosure outweighs the personal privacy interest and that significant public benefit would result from the disclosure of the requested records. Since you have not furnished a release, death certificate, or public justification for release, the release of records concerning a third party would result in an unwarranted invasion of personal privacy and would be in violation of the Privacy Act, 5 U.S.C. § 552a. These records are also generally exempt from disclosure pursuant to sections (b)(6) and (b)(7)(C) of the Freedom of Information Act, 5 U.S.C. § 552.

*Id.* The response further notified Graff that "[s]hould you obtain the written authorization and consent of the third party for release of the records to you, please submit a new request for the documents accompanied by the written authorization," and advised him that he could obtain the public documents that the EOUSA maintained in its files by requesting them in a reply to the EOUSA. *Id.* Finally, it notified him of the process for appealing the decision to the Office of Information Policy ("OIP"). *Id.* at 2.

On February 24, 2009, Graff submitted an appeal to the OIP by letter. Ex. 3 to Pl.'s MSJ. The appeal repeats the request for information that he originally submitted to EOUSA and gives the following additional description:

> As a prisoner of war currently in the custody of the United States, Mr. Noriega's permission to access files regarding his case should not be a hindrance to the disclosure of information to such a compelling public interest. Significant public benefit would result from disclosure of the

> requested files.  As a member of the news media, I intend to use this
> information to contribute significantly to public understanding of the
> operations or activities of the government with regard to Mr. Noriega's
> case.  Finally, Mr. Noriega is not privy to the personal privacy rights
> afforded through the Freedom of Information Act because he is not a U.S.
> citizen.

*Id.* at 1.  On September 8, 2009, the OIP affirmed the EOUSA's action by letter to Graff on the

grounds that the requested information is protected under FOIA Exemptions 6 and 7(C).  Ex. 5 to

Pl.'s MSJ at 1.

The second request ("Younis Request"), which Graff submitted to the FBI by letter on

April 8, 2009, asked for the disclosure of "files regarding the FBI's investigation into and role in

the 1987 rendition of Royal Jordanian Flight 402 highjacker and Amal Organization militiaman

Fawaz Younis."  Ex. 6 to Pl.'s MSJ at 1.  It further explained:

> I am requesting copies of any documents or communications, including
> but not limited to logs, reports, messages, teletypes, wires, cables, and
> external or internal memorandums about capture [sic] and forced
> extradition of Younis on September 13, 1987.
>
> This request should include the period from March 1, 1986 to October 4,
> 1989, inclusive.  This request includes but is not limited to rendition
> preparations, apprehension and transit, as well as prosecution preparations
> for trial in United States District Court.  This request should include the
> role of the Federal Bureau of Investigation, the Central Intelligence
> Agency, and the Hostage Rescue Team in apprehending Younis overseas
> and bringing him back to the United States to stand trial.

*Id.*  The request also asked for waiver of fees in the same wording as the Noriega Request.  *Id.*

The FBI replied to Graff two days later by letter, stating that it was unable to respond to

the request for records maintained by the FBI concerning Fawaz Younis because Graff had failed

to submit "either proof of death or privacy waiver from the subject(s) of [his] request…. Without

proof of death or a privacy waiver, the disclosure of third-party information contained in law

enforcement records, should they exist, is considered both a clearly unwarranted invasion of

privacy pursuant to Exemption (b)(6) … and an unwarranted invasion of personal privacy, pursuant to Exemption (b)(7)(C) …."  Ex. 7 to Pl.'s MSJ at 1.  The FBI then administratively closed the request. [4]

On April 17, 2009, Graff submitted an appeal to the OIP by letter.  Ex. 8 to Pl.'s MSJ. The appeal repeats the request for information that he originally submitted to the FBI and gives the following additional description:

> Convicted of conspiracy, aircraft piracy, and hostage-taking, Mr. Younis was sentenced to 30 years in prison in October 1989, then deported to Lebanon after serving half his sentence.  Consequently, Mr. Younis's permission to access files regarding his case should not be a hindrance to the disclosure of information to such a compelling public interest. Significant public benefit would result from disclosure of the requested files.  As a member of the news media, I intend to use this information to contribute significantly to public understanding of the operations or activities of the government with regard to Mr. Younis's case.  Finally, Mr. Younis is not privy to the personal privacy rights afforded through the Freedom of Information Act because he is not a U.S. Citizen.

*Id.*  Graff never received a response and the FBI asserts that it has no record of the appeal.

Argall Decl. ¶ 7 n.1.

---

4       Since this case was filed, the FBI has apparently changed its request processing policy for information on an individual other than the requester.  Declaration of Dennis J. Argall ("Argall Decl.") [Dkt. #39-5] ¶ 11.  Under the current policy, the FBI will assign the requester a FOIA number, acknowledge receipt of the request, and refuse to process it any further without a "privacy waiver, proof of death, or a showing that the public interest in disclosure outweighs privacy considerations."  *Id.* (emphasis added).  As an exception to this general rule, when the FBI deems that the requester has provided sufficient evidence to establish that the subject of the request is a "public figure," it will search for responsive records and release public source information to the requester.  *Id.*  After this policy change, the FBI reopened Graff's request, deemed Younis to be a "public figure," and sent Graff the public source material from its records along with a new response letter.  *Id.*; Ex. G to Mem in Support of Def.'s Mot. for Summ. J. ("Def.'s MSJ").  The letter stated that the FBI would withhold all non-public source material unless Graff provided "the written consent from third party individuals, proof of death or a showing that the public's interest in the individual's information outweighs privacy considerations."  *Id.*  Although the letter provided a procedure for appealing its decision, Graff never filed an appeal.

On July 16, 2010 Graff filed a Motion for Leave to File First Amended Complaint, [Dkt. # 33], which the Court granted on August 13, 2010, [Dkt. #37].  The only counts remaining are Counts II, V, and VI.

Count II alleges that the EOUSA wrongfully withheld the information Graff requested in the Noriega Request.  Am. Compl. ¶¶ 22–28.  Count V alleges that the FBI wrongfully withheld the information Graff requested in the Younis Request.  *Id.* ¶¶ 36–40.  Count VI alleges that defendants' practice of requiring FOIA requesters who seek responsive records pertaining to a foreign national third party to provide proof of death, a signed privacy waiver, or a showing that the public interest in disclosure outweighs that person's privacy interest before the agency will process that request violates both the statute and the agencies' internal policies.  *Id.* ¶¶ 41–48.

On November 15, 2010, defendants moved for summary judgment on these counts.  On January 18, 2011, plaintiffs cross-moved for partial summary judgment on Count VI.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party seeking summary judgment bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  To defeat summary judgment, the non-moving party must "designate specific facts showing there is a genuine issue for trial."  *Id.* at 324 (internal quotation marks omitted).  The existence of a factual dispute is insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986).  A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is only "material" if it is capable of affecting the outcome of the litigation. *Id.*; *see also Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987).

"The rule governing cross-motions for summary judgment . . . is that neither party waives the right to a full trial on the merits by filing its own motion; each side concedes that no material facts are at issue only for the purposes of its own motion."  *Sherwood v. Washington Post*, 871 F.2d 1144, 1148 n.4 (D.C. Cir. 1989), quoting *McKenzie v. Sawyer*, 684 F.2d 62, 68 n.3 (D.C. Cir. 1982), *abrogated on other grounds*.  In assessing each party's motion, "[a]ll underlying facts and inferences are analyzed in the light most favorable to the non-moving party."  *N.S. ex rel. Stein v. District of Columbia*, 709 F. Supp. 2d 57, 65 (D.D.C. 2010), citing *Anderson*, 477 U.S. at 247.

## ANALYSIS

The Court will first address Count VI, which challenges the government's practice on its face, because it raises a threshold issue for Counts II and V.

### I.    The government's practice regarding FOIA requests for law enforcement records about a foreign national third party is lawful

Count VI asks whether the government may lawfully refuse to initiate a search for material responsive to a FOIA request for law enforcement records about a third party who is a foreign national unless the requester first submits a proof of death, a signed privacy waiver, or a

public interest justification for the disclosure.[5]  This is a pure question of law, and therefore the Court may decide it on a motion for summary judgment.  While the briefing submitted by the parties has been extensive, the case boils down to a relatively narrow question:  whether the defendants' use of a categorical approach to FOIA requests for third party law enforcement records is valid when the third party who is the subject of the request is a foreign national.[6] While plaintiff makes a point of arguing in his memorandum that Noriega and Younis are notorious criminals convicted in high-profile trials, Pl.'s MSJ at 24, and that Younis is a convicted terrorist, *id.*, Count VI does not address the validity of the policy as applied to them or to convicted criminals or terrorists in general.  Rather, the lawsuit was instituted specifically to test the legality of a categorical rule requiring that one of the three exceptions to the exemption be articulated before records concerning a foreign national would be searched for, much less, produced.  It seems to the Court that at bottom, plaintiff is asking it to declare categorically that the public interest will always outweigh privacy concerns when a foreign national is involved; plaintiff maintains that in that instance, nothing beyond the request should be required of the requester.

The resolution of this particular challenge to agency procedure hinges upon two straightforward subsidiary issues:  1) whether the use of categorical rules in general is valid; and

---

5      The Court notes that there is no indication that the government's policy for responding to such requests has been officially memorialized in writing in any regulation, manual, or set of internal procedures.  Defendants informed the Court that the applicable policy was set forth in their responses to plaintiff's FOIA requests, and they agreed that Count VI accurately characterizes their approach.  Motions Hearing Transcript ("Tr.") at 3, October 27, 2011.  Thus, there is no material dispute over the existence or the terms of the policy challenged in the complaint; plaintiff's claim is that the policy is invalid when the third party who is the subject of the request is a foreign national.

6      "Graff's challenge is specifically limited to the Defendants' application of their procedural policies at the initial stage of a FOIA request for records pertaining to third party foreign nationals."  Pl.'s MSJ at 9.

2) whether foreign nationals enjoy privacy rights under exemption 7(C).  Because there is already clear precedent answering both questions in the affirmative, the policy challenged in Count VI comports with the statute.

### A.   The government's practice does not violate FOIA

The purpose of the Freedom of Information Act, 5 U.S.C. § 552, is to require the release of government records upon request.  "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed."  *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978).  "Yet Congress realized that legitimate governmental and private interests could be harmed by release of certain types of information and provided nine specific exemptions under which disclosure could be refused."  *FBI v. Abramson*, 456 U.S. 615, 621 (1982).  These exemptions "must be narrowly construed," *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976), while still "hav[ing] meaningful reach and application," *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989).  Congress's aim with FOIA was to establish a balance between the public's right to know and the need for the government to protect sensitive information.  *See id*.

Section 7(C) exempts from FOIA all "records or information compiled for law enforcement purposes" when disclosure "could reasonably be expected to constitute an

unwarranted invasion of personal privacy[.]" 5 U.S.C. § 552(b)(7)(C).[7]   This Circuit has consistently held that where a FOIA request for law enforcement records invokes the privacy interests of any third party mentioned in those records (including investigators, suspects, witnesses and informants) the exemption applies, unless there is an overriding public interest in disclosure.  *See Schrecker v. DOJ*, 349 F.3d 657, 661 (D.C. Cir. 2003); *Lewis v. DOJ*, 609 F. Supp. 2d 80, 84 (D.D.C. 2009).

The Supreme Court and the D.C. Court of Appeals have already had occasion to address the practice of responding to FOIA requests in a categorical manner, and they made it clear that rules exempting whole groups of records from disclosure are not only permitted, but should be encouraged as a means of enabling agencies to meet their formidable FOIA obligations in a timely fashion.  *See Nation Magazine, Wash. Bureau v. U.S. Customs Serv.,* 71 F.3d 885, 893 (D.C. Cir. 1995), quoting *FTC v. Grolier, Inc.*, 462 U.S. 19, 27–28 (1983).  In *Grolier* – a case involving Exemption 5 – the Supreme Court stated that categorical balancing, "by establishing a

---

7      The letters that plaintiff received from defendants also cited FOIA Exemption 6, which covers the disclosure of "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy[.]"  5 U.S.C. §552(b)(6).  Count VI does not specify whether it is challenging defendants' procedures with respect to Exemption 6 or simply their administration of Exemption 7(C), but because all of the documents requested were law enforcement records subject to exemption 7(C), and the briefing and argument was addressed specifically to the use of a categorical rule in connection with that exemption, the Court need not consider whether it would be proper for the defendants to require a similar showing under Exemption 6 before initiating a search.  Further, this opinion does not purport to address that issue since "Exemption 7(C)'s privacy language is broader than the comparable language in Exemption 6 in two respects.  First, whereas Exemption 6 requires that the invasion of privacy be 'clearly unwarranted,' the adverb 'clearly' is omitted from Exemption 7(C)….  Second, whereas Exemption 6 refers to disclosures that 'would constitute' an invasion of privacy, Exemption 7(C) encompasses any disclosure that 'could reasonably be expected to constitute' such an invasion….  Thus, the standard for evaluating a threatened invasion of privacy interests resulting from the disclosure of records complied for law enforcement purposes is somewhat broader than the standard applicable to personnel, medical, and similar files."  *DOJ v. Reporters Comm. for Freedom of the Press,* 489 U.S. 749, 756 (1989).

discrete category of exempt information, implements the congressional intent to provide 'workable' rules…[,]" and that it expedites disclosure.  462 U.S. at 27.

In *DOJ v. Reporters Committee for Freedom of the Press,* 489 U.S. at 749, the Supreme Court also sanctioned taking a categorical approach to Exemption 7(C).  It explained that certain types of requests for law enforcement records concerning third parties will always constitute unwarranted invasions of those individuals' personal privacy because they "seek[] no 'official information' about a Government agency, but merely records that the Government happens to be storing."  *Id.* at 780.  The Court determined that a request for another private citizen's FBI criminal history record or "rap sheet" would fall within that class, and it held that the government may therefore employ a categorical rule deeming any request for a third party's rap sheet to be an unwarranted invasion of personal privacy, exempted from FOIA disclosure by section 7(C).  *Id.*; *see also SafeCard Services, Inc., v. SEC*, 926 F.2d 1197, 1206 (D.C. Cir. 1991) (agency may determine that disclosure of the identity of individuals mentioned in law enforcement files is categorically exempt as an unwarranted invasion of privacy).

The D.C. Circuit further considered when categorical rules may properly be employed in *Nation Magazine v. U.S. Customs Service*, 71 F.3d 885.  In that case*,* the FOIA requester asked for records concerning Ross Perot's offers to assist the Customs Service in the interdiction of illegal drugs.  *Id.* at 888, 895.  Invoking its categorical policy to refuse to confirm or deny the existence of any information in its law enforcement files which mentions an individual by name, the Customs Service issued a so-called "Glomar response" – a refusal to even acknowledge the existence of any records – under Exemption 7(C).  *Id.* at 892.  The Court of Appeals deemed this to be insufficient.

The court held that while categorical rules are permissible, there are limits to when they may be employed. "Only when the range of circumstances included in the category 'characteristically support[s] an inference' that the statutory requirements for exemption are satisfied is such a rule appropriate." *Id.* at 893, quoting *United States v. Landano*, 508 U.S. 165, 176–80 (1993). The court began its analysis by looking at the statute, which calls for the withholding of law enforcement records, but only to the extent that their production "could reasonably be expected to constitute and unwarranted invasion of personal privacy." 5 U.S.C. §552(b)(7)(C). It noted that implementation of this provision necessarily involves a balancing of the substantial privacy interests at stake against the public interest in disclosure. *Nation Magazine*, 71 F.3d at 893–94. The court observed that the public interest "must be assessed in light of the FOIA's central purpose, which is 'to open agency action to the light of public scrutiny,'" *id.* at 894, quoting *Dep't of the Air Force,* 425 U.S. at 372, and it reaffirmed, in light of *Reporters Committee,* that the statutory purpose is not furthered by the disclosure of information about private citizens that reveals nothing about the government's own conduct. *Id.*

Applying those principles, the court reasoned that Perot, notwithstanding his public profile, had a real interest in the non-disclosure of record of his involvement with the agency. *Id.* at 894 and n.8. But it also recognized that the request could be construed as seeking not only information about a private citizen, but also information "that would shed light on agency action." *Id* at 894–95. Based on its understanding of the public interest at stake, the court found that a categorical Glomar response was not an appropriate response to the particular request at issue; the public interest in disclosure was strong enough that the determination of which documents were exempt required an ad hoc balancing of the competing interests. *Id.* at 895. More important to the resolution of this case, the Court determined that the categorical rule

before it was overbroad because it did not accord <u>any</u> consideration to the public interest in disclosure. "Because the range of circumstances included in Customs' categorical rule do not 'characteristically support' an inference that all material in law enforcement files which names a particular individual is exempt from disclosure to third parties, a more particularized approach is required." *Id.* The court remanded the case to the district court to complete the balancing, but it noted, "[o]f course, Customs is also free to articulate a revised categorical rule regarding disclosure of law enforcement records if it can identify more narrowly tailored circumstances under which the balance of privacy and pubic interest characteristically tips in the direction of exemption." *Id.*

Here, Graff argues that the categorical rule that the EOUSA and FBI employ is similarly over-inclusive. Pl.'s MSJ at 10–11. The Court disagrees. DOJ has added precisely what was missing in *Nation Magazine.*

Neither the EOUSA nor FBI employs a policy of summarily refusing to confirm or deny the existence of records simply because the request calls for law enforcement records related to a third party individual. Instead, they accord the requester the opportunity to explain why the public interest in disclosure outweighs the third party's privacy concerns so that the government agency can perform the particularized balancing of interests that the court found lacking in *Nations Magazine.* Since the requester can overcome the inference that the materials are exempt by coming forward with either a death certificate, a waiver, <u>or</u> a showing of the public interest that would be advanced,  the policy satisfies all of the "statutory requirements for exemption," 71 F.3d at 893, and meets the *Nation Magazine* test.

Graff contends that the government cannot lawfully require the requester to bear the burden of supplying the public interest justification for disclosure to the agency. Pl.'s MSJ at 8.

It is true that generally a FOIA requester is not required to explain the reason behind a request. *Nat'l Archives and Records Admin. v. Favish*, 541 U.S. 157, 172 (2004). The premise of FOIA is that citizens are entitled to know "what their government is up to," *id.* at 171, quoting *Reporters Comm.*, 489 U.S. at 773, and so if a document falls within FOIA's disclosure provisions, any member of the public is entitled to access it, regardless of why he wants it or what he plans to do with it. *Id.* But the documents sought here fall within a class of materials that are presumptively *exempt* from disclosure: Section 552(b) provides that FOIA's disclosure obligation "does not apply" to the categories of information that are itemized in the nine exemptions. And Exemption 7(C) broadly covers all law enforcement records if their production "could reasonably be expected" to involve an unwarranted invasion of personal privacy. Thus, courts in this Circuit have consistently held that where an individual seeks law enforcement records that implicate the privacy interests of a third party, the requester bears the burden of asserting the public interest at play. *See, e.g.*, *Boyd v. Criminal Div. of the DOJ*, 475 F.3d 381, 387 (D.C. Cir. 2007); *Lewis*, 609 F. Supp. 2d at 84; *Fischer v. U.S. Dep't of Justice*, 596 F. Supp. 2d 34, 47 (D.D.C. 2009).

This requirement is fully consistent with the Supreme Court's pronouncements on the subject. In *National Archives and Records Administration v. Favish*, the Court explained that Exemption 7(C) imposes a special burden on the requester to specify the public interest justification for disclosure of the requested records.

> The statutory direction [in Section 7(C)] that the information not be released if the invasion of personal privacy could reasonably be expected to be unwarranted requires the courts to balance the competing interests in privacy and disclosure. To effect this balance and to give practical meaning to the exemption, the usual rule that the citizen need not offer a reason for requesting the information must be inapplicable.

14

*Id.* at 172.  Similarly, because the public interest justification in each case depends on how the requester plans to use the records or information, the agency must obtain that justification from the requester in order to balance it against the third party's privacy interest.  Given the agencies' statutory responsibilities to the private individuals named in their files, and the number of requests they are called upon to process, it would be inefficient and impractical, and ultimately, unfair to the requesters, to depend upon the government to guess what the requesters had in mind and to catalogue the possible public reasons for disclosure.

Graff's core argument is that the rule is over-inclusive because it covers requests for third parties who are foreign nationals.  He argues that foreign nationals have a weaker privacy interest than U.S. citizens because they are not entitled to the additional layer of protection afforded by The Privacy Act of 1974, 5 U.S.C. § 552a(a)(2).  Pl.'s MSJ at 9.  The flaw in this argument is that courts have determined – and Graff concedes – that foreign nationals are entitled to the privacy protections embodied in FOIA.  *Judicial Watch, Inc., v. U.S. Dep't of Homeland Sec.*, 514 F. Supp. 2d 7, 10 n.4 (D.D.C. 2007), quoting *Kele v. U.S. Dep't of Justice*, No. 87-0534, 1987 WL 28472, at *4 (D.D.C. Dec. 7, 1987); *see* Pl.'s MSJ at 9.  So if a sufficiently tailored categorical rule passes muster under Exemption 7(C), it is equally valid if a foreign national is involved.

Even if a third party's status as a foreign national gives rise to a privacy interest that is somewhat weaker than that of a U.S. citizen, given the structure of the statute, even a weak privacy interest will always outweigh a lack of public interest.  *See Oguaju v. United States*, 288 F.3d 448, 451 (D.C. Cir. 2002), *vacated*, 541 U.S. 970 (2004), *judgment reinstated*, 378 F.3d 1115 (D.C. Cir. 2004) ("In the absence of any public interest in disclosure, any countervailing interest in privacy defeats a FOIA request."), citing *Nat'l Ass'n of Retired Fed. Emps. v. Horner*,

15

879 F.2d 873, 879 (D.C.Cir. 1989).  So DOJ's categorical rule calling for a public interest justification is as appropriate a response to third party requests for records that name foreign nationals as it would be for requests that name U.S. citizens.

Finally, Graff challenges the point in time at which the government requires the requester to supply the public interest justification.  Pl.'s MSJ at 8.  He argues that the government should be required to institute a search as soon as it receives the FOIA request and suggests that it can then call for the requester to provide a public interest justification for each individual responsive record.  *Id.*  But this is simply another way of claiming that categorical rules are improper *per se,* and the courts have already clearly indicated that such rules are a workable and expeditious way to proceed.  When a request by its terms specifically calls for law enforcement records related to a third party, all of the responsive records will fall within the scope of the categorical exemption unless it can be shown that the invasion of privacy is "warranted."  5 U.S.C. §552(b)(7)(C).  It is more efficient and it imposes no improper burden on the requester to establish a procedure whereby the government performs the necessary balancing once for the entire class of requested records before going through the time and expense of a search.

In sum, the Court finds that defendants' challenged practice of refusing to perform a search in response to a third party request for law enforcement records involving a foreign national unless the requester produces a death certificate, privacy waiver, or showing that the public interest in disclosure outweighs the third party's privacy interest is lawful under FOIA Exemption 7(C).

B. <u>The government's practice does not constitute an irrational departure from agency policy</u>

Graff next contends that the disputed practice is not authorized by FBI, EOUSA, or DOJ regulations or policies.  While he never identifies the statutory basis for his argument, the Court

will construe the claim as one brought under Section 706(2)(A) of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A).

Under Section 706(2)(A), an agency action should be overturned as "arbitrary and capricious" if it irrationally departs from agency policy, even if it follows a reasonable interpretation of the law.  "[I]f [an agency] announces and follows – by rule or by settled course of adjudication – a general policy by which its exercise of discretion will be governed, an irrational departure from that policy (as opposed to an avowed alteration of it) could constitute action that must be overturned as 'arbitrary, capricious, [or] an abuse of discretion' within the meaning of [APA Section] 706(2)(A)." *INS v. Yueh-Shaio Yang*, 519 U.S. 26 (1996); *see also Venetian Casino Resort, LLC v. EEOC*, 530 F.3d 925, 935 (D.C. Cir. 2008) (finding that EEOC's maintenance of two irreconcilable policies was arbitrary and capricious agency action even if neither policy was necessarily contrary to law).

The first inquiry, then, is whether the agency has departed from established policy at all. *See Commc'ns Satellite Corp. v. FCC*, 836 F.2d 623, 629 (D.C. Cir. 1988).  This is tricky in this case since neither party has put its finger on a specific formal guideline.  Graff asserts that there are "no agency regulations that specifically authorize the Defendants' procedural policies," Pl.'s MSJ at 15, while the government has taken the position that the policy Graff attacks in Count VI is its operative policy.  Meanwhile, the only directive that Graff proposes to measure the FOIA responses against is a declaration from an individual who recalls hearing Melanie Pustay, the Director of the Office of Information Policy of DOJ, respond to a hypothetical question at a

conference.  *See* Pl's MSJ at 14, citing McClanahan Decl. [Dkt. #44-10].[8]  Graff asserts that

"[t]he record demonstrates that [Director Pustay] has publicly stated that FOIA personnel should

not pursue a categorical policy that would require the submission of privacy waivers prior to an

agency actually processing a FOIA request for records pertaining to a third party foreign

national." *Id.*

        This portion of plaintiff's memorandum borders on frivolous.  Plaintiff does not offer any

serious grounds for why the Court should treat a statement *of opinion*, made by a DOJ official in

response to a question at a conference after her prepared remarks were concluded, as a source of

official DOJ policy.  But even if the speaker exercised sufficient responsibility over the area that

her every word could be deemed to be a declaration of departmental fiat, what she supposedly

said was that *if* the department had a policy that required a death certificate or a waiver before it

would consider any third party request, *that* policy would be improper in her view.  McClanahan

Decl. ¶ 4 [Dkt. #44-10].  She did not opine that a policy that also embraced the concept that the

public interest could outweigh privacy concerns would be improper, and she did not articulate

any other official policy against which the policy alleged in Count VI could be measured.  Thus,

plaintiff has provided absolutely no support for his argument that the rule cited in response to his

FOIA requests was contrary to agency policy.

        Therefore, the Court finds that the government practice at issue here does not violate

FOIA or constitute an irrational departure from agency policy, and it will grant in part

---

8       The declarant indicates that he or she attended a conference at which Director Pustay was
a panelist, and that Director Pustay received questions from the audience after she completed her
prepared remarks.  The declaration recounts:  "One audience member asked Director Pustay if
agencies should be allowed to refuse to process FOIA requests pertaining to third party foreign
nationals absent submission of a privacy waiver or proof of death.  Director Pustay responded
that in her opinion such a practice would be improper and should not be permitted."
McClanahan Decl. ¶ 4 [Dkt. #44-10].

defendants' motion for summary judgment and deny plaintiff's cross-motion for summary judgment with respect to Count VI.

## II.   Whether the EOUSA and FBI properly refused to search for law enforcement records in response to Graff's Noriega and Younis Requests is not ripe for summary judgment

In FOIA cases, the district court reviews the agency's action *de novo.*   5 U.S.C. § 552(a)(4)(B); *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).   Here, the question to be determined is whether defendants properly declined to process the requests on the grounds that the requester had failed to proffer a public need for the material that would outweigh the privacy interests.

"In order to trigger the balancing of public interests against private interests, a FOIA requester must (1) 'show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake,' and (2) 'show the information is likely to advance that interest.'"  *Boyd*, 475 F.3d at 387, quoting *Favish*, 541 U.S. at 172.   Where the public interest is government malfeasance, the requester "must establish more than a bare suspicion in order to obtain disclosure.   Rather [he] must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred."  *Favish*, 541 U.S. at 174; *Boyd*, 475 F.3d at 387.   So now that the Court has determined that the policy applied in connection with the two FOIA requests was valid, it must determine how to go about reviewing defendants' implementation of that policy in these instances.

In the cases cited by the parties, *see Boyd*, 475 F.3d at 388–89; *Lewis*, 609 F. Supp. 2d at 82, the government agencies had either issued Glomar responses refusing to confirm or deny the existence of records, or refused to search for records at all, based solely on the plaintiffs' failure

to provide a death certificate or privacy waiver.  The government had not given the plaintiffs the opportunity to present a public interest justification, nor had they considered the public interest before issuing their response.  In this case, the agencies did not issue blanket Glomar responses and their policies are now appropriately designed to take the proffered public justification for disclosure into account.[9]  But the result in practice was essentially the same.  The decision to decline to process the Noriega and Younis requests was made at the outset, without any balancing of public and private concerns.  In this case though, the responsibility for that omission does not rest solely with the agency.

Both the Noriega and Younis Requests contain only summary statements of public interest:  they assert that Graff is a journalist and that the information requested is "likely to contribute significantly to public understanding of the operations or activities of the government."[10]  Plaintiff's letters of appeal are no more revealing; both the Noriega and Younis letters simply state:  "As a member of the news media, I intend to use this information to contribute significantly to the public understanding of the operations or activities of the government with regard to [Mr. Noriega's/Mr. Younis's] case."  Exs. 3, 8 to Pl.'s MSJ.

These conclusory statements identify no public interest beyond obtaining the information for its own sake, and they do not make clear that the focus of plaintiff's interest is the conduct of the government rather than the criminal activities of the subjects of the requests.  *See Boyd*, 475 F.3d at 387.  Graff did not describe the nature or purpose of his research or how it will be

---

9       Although the FBI first denied Graff's request without any consideration of public interest, it later advised him that it would consider the public interest justification if he had provided it along with his request.  Ex. G to Def.'s MSJ; Supp. Decl. of David M. Hardy [Dkt. #45-4] ¶ 7.

10       This information actually appears in both letters as support for Graff's request for fee waivers.  However, the Court will consider it for purposes of the private and public interest balancing.

advanced by the documents.  Nor did he state what he seeks to uncover through his review of the material documents.  If his aim was to explore government misconduct or wrongdoing in the prosecution of Noriega or Younis, he failed to identify what that wrongdoing might be, and he certainly did not come forward with evidence to support a conclusion that some impropriety might have occurred.  *See Favish*, 541 U.S. at 174.  Moreover, the Noriega request called for records related not only to the former foreign leader, but it specifically asked for records related to the role played by then DOJ Attorney Robert Mueller, now the Director of the FBI.  The privacy rights of investigators and prosecutors are fully protected under FOIA, *Schrecker*, 349 F.3d at 661, and plaintiff has not even attempted to make a showing as to why he is entitled to material naming this U.S. citizen.

On the other hand, how was plaintiff supposed to know that more was required of a FOIA requester at the initial stage?  As the government has acknowledged, its categorical rule for considering requests for law enforcement records concerning third parties was not memorialized in policies or procedures available to the public.  Plaintiff was not told that the onus was on him to proffer a justification until after his request had already been turned down.  At that point, though, he did very little to supplement the record with respect to the public justification in his agency appeal.

The courts in *Boyd*, *Lewis*, and *Fischer* conducted their reviews of the agency denials by considering not only the original FOIA request and appeal letters, but also material that had been provided to the court during the course of the litigation (e.g., memoranda in support of or opposition to the dispositive, affidavits by the FOIA requesters, and amicus briefs). *See e.g., Boyd*, 475 F.3d at 387–89; *Lewis*, 609 F. Supp. 2d at 84–85 and n.4; *Fischer*, 596 F. Supp. 2d at 47–48 and n.17.  In this case, though, even that would do very little to illuminate the matter.  The

parties, in particular plaintiff, have been so singularly focused on the facial attack on the government policy in Count VI, that the Court is left with a very thin record on the nature and extent of the public interest in the broad disclosures sought in Counts II and V to which privacy rights undeniably attach.  Thus defendants urge the Court to grant summary judgment in their favor, and such a ruling would be without prejudice to any future, more expansive requests.

Plaintiff, unsurprisingly, is opposed to that outcome, and he readily expressed interest in a possible alternative proposed by the Court:  a remand to the agency for further balancing based upon a fuller submission by the requester.  Tr. at 21.

In choosing between those two approaches, the Court again finds its guidance in the *Nation Magazine* opinion that is so central to this case.  There, the Court of Appeals noted that "[w]e will sustain the district court's grant of summary judgment for the agency … only if we find that the agency has met its burden of demonstrating that the requested records are exempt from disclosure."  71 F.3d at 892.  In this case, a reviewing court could not find that the agency had met its burden because the agency has not yet engaged in the balancing required by the exemption.  So, in light of unique circumstances in this case – including plaintiff's failure to supply the public interest that would justify disclosure for the Court to consider, defendants' failure to balance that justification against whatever privacy interests remain under the particular circumstances pertaining to these two publicly tried and convicted individuals, and the parties' agreement at the motions hearing that remanding to the agency would be an appropriate way to proceed – the Court will deny defendants' summary judgment motion on Counts II and V and remand to the agencies to consider a statement of public interest to be supplied by the plaintiff and conduct the balancing mandated by Exemption 7(C).

## CONCLUSION

For the foregoing reasons, the Court will grant in part defendants' motion for summary judgment as to Count VI, deny it as to Counts II and V with the possibility of reconsidering a later summary judgment motion on those counts, and deny in full plaintiff's cross-motion. A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE:  November 9, 2011